STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

CHRISTOPHER ALLMAN
Assistant United States Attorney
Chief, Civil Division
District of Kansas

ALEXANDRA MCTAGUE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch

JACKSON M. STORY
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch

*Attorneys for the United States*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF KANSAS,<br><br>Defendant. | Civil No. 5:26-cv-4066<br><br><br><br>**COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## INTRODUCTION

Federal law prohibits illegal aliens in our Nation from being eligible for in-state tuition benefits that are denied to out-of-state United States citizens. *See* 8 U.S.C. § 1623(a). There are no exceptions. Yet Kansas has ignored this Federal law for over two decades. House Bill 2145, codified at Kan. Stat. Ann. § 76-731a, extends eligibility for in-state tuition benefits at Kansas postsecondary educational institutions to illegal aliens, while United States citizens from other states must pay higher tuition rates. This is blatant unequal treatment favoring illegal aliens over United States citizens. Worse, such preferential treatment is squarely prohibited and preempted by Congressional will. Federal law mandates that "an alien who is not lawfully present in the United States *shall not be* eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). Accordingly, under the Supremacy Clause of our Nation's Constitution, Section 76-731a is unconstitutional and must yield to Federal law. This Court should declare Section 76-731a illegal and permanently enjoin its enforcement.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

2.      Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this Complaint arose from events occurring within this judicial district.

2

3.    The Court has the authority to provide the relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

4.    Plaintiff, the United States of America, regulates immigration under its inherent, constitutional, statutory authorities, and it takes care over Federal immigration laws through its Executive agencies, including the Department of Justice, Department of Homeland Security ("DHS"), and DHS component agencies, U.S. Immigration and Customs Enforcement, U.S. Citizenship and Immigration Services, and U.S. Customs and Border Protection.

5.    Defendant, State of Kansas, is a state of the United States.

## FEDERAL LAW

6.    The Constitution empowers Congress to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

7.    The Constitution also vests the President of the United States with "[t]he executive Power," U.S. Const. art. II, § 1 and authorizes the President to "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3.

8.    The United States has inherent, well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the Constitution, numerous acts of Congressional will, and binding Supreme Court precedent. *See, e.g.*, *Fong Yue Ting v. United States*, 149 U.S. 698, 711 (1893) ("The right to exclude or to expel all aliens, or any class of aliens, absolutely or upon certain conditions, in war or in peace, [is] an inherent and inalienable right of every sovereign and independent nation, essential to its safety, its independence, and its

3

welfare . . . ."); *Ping v. United States*, 130 U.S. 581, 603–04 (1889) ("Jurisdiction over its own territory to that extent is an incident of every independent nation. It is a part of its independence. If it could not exclude aliens it would be to that extent subject to the control of another power."); *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation. When Congress prescribes a procedure concerning the admissibility of aliens, it is not dealing alone with a legislative power. It is implementing an inherent executive power.").

9.     Based on its enumerated constitutional and sovereign powers to control and conduct relations with foreign nations, the Federal Government has broad authority to establish immigration laws. *See Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (explaining matters of immigration concern "policy questions entrusted exclusively to the political branches of our Government," leaving "no judicial authority" for courts "to substitute [their] political judgment for that of the Congress").

10.    In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* PRWORA, Pub. L. No. 104-193, 110 Stat. 2268 (1996); IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009-546 (1996). A key aim of these Acts was to encourage self-sufficiency among immigrants, limit their dependence on public assistance, and prevent public benefits from serving as an incentive for illegal immigration. *See id*.; *see also* 8 U.S.C. § 1601 ("Self-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes.").

11.     Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations[.]" *Id*. § 1601(2)(A).

12.     Congress also emphasized that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id*. § 1601(2)(B).

13.     Moreover, Congress determined that "[i]t is a compelling government interest to enact new rules for eligibility and sponsorship agreements in order to assure that aliens be self-reliant in accordance with national immigration policy" and "to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(5), (6).

14.     As relevant here, PRWORA states: "A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible . . . only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d).

15.     But even in such cases, a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, if those same benefits are denied to American citizens from other states. *See* 8 U.S.C. § 1623. IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on the basis of residence for higher education benefits." *Id*. Section 1623(a) provides that:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.[1]

---

[1] Section 1623 evidences that Congress contemplated Federal enforcement of the statutory prohibition on providing illegal aliens in-state tuition. *See Day v. Bond*, 500 F.3d 1127, 1139 (10th Cir. 2007) ("the language of § 1623, in

16.     Accordingly, under 8 U.S.C. § 1623(a), illegal aliens present in the United States are not eligible for postsecondary education benefits based on state residency unless those same benefits are available to all American citizens, regardless of their state of residence.

17.     On February 19, 2025, President Trump issued Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*,[2] ordering Federal Departments and Agencies to "ensure, to the maximum extent permitted by law, that no taxpayer-funded benefits go to unqualified aliens[.]"

18.     On April 28, 2025, President Trump issued Executive Order 14287, *Protecting American Communities From Criminal Aliens*,[3] ordering relevant officials to ensure the "[e]qual [t]reatment of Americans" and to "take appropriate action to stop the enforcement of State and local laws, regulations, policies, and practices favoring aliens over any groups of American citizens that are unlawful, preempted by Federal law, or otherwise unenforceable, including State laws that provide in-State higher education tuition to aliens but not to out-of-State American citizens."

19.     These Orders emphasize that Federal and state governments must not grant greater benefits to illegal aliens present in the United States than to American citizens. They also reflect Congress's end—expressed in PRWORA and IIRIRA—to reduce incentives for illegal immigration by limiting access to certain public benefits intended for our Nation's citizens.

---

combination with [8 U.S.C.] § 1103(a)(1), provides further evidence that federal, not private, enforcement of § 1623 was contemplated by Congress."

[2] Executive Order 14218, *Ending Taxpayer Subsidization of Open Borders*, 90 Fed. Reg. 10581 (Feb. 19, 2025), *available at* https://www.federalregister.gov/documents/2025/02/25/2025-03137/ending-taxpayer-subsidization-of-open-borders [https://perma.cc/FLY2-2UMY] (last visited June 10, 2026).

[3] Executive Order 14287, *Protecting American Communities From Criminal Aliens*, 90 Fed. Reg. 18761 (Apr. 28, 2025), *available at* https://www.federalregister.gov/documents/2025/05/02/2025-07789/protecting-american-communities-from-criminal-aliens [https://perma.cc/2R2M-WDSR] (last visited June 10, 2026).

**THE KANSAS LAW**

20.     In direct conflict with Federal law, Kansas law rewards an illegal alien present in our Nation to qualify for in-state tuition based on residence within the state, while explicitly denying resident tuition rates to United States citizens who do not qualify as Kansas residents. *See* Kan. Stat. Ann § 76-731a.

21.     On May 20, 2004, Governor Kathleen Sebelius signed into law Kansas Bill 2145, *see* Kan. Stat. Ann § 76-731a, titled "Certain persons without lawful immigration status deemed residents for purpose of tuition and fees," rewarding illegal aliens who violate Federal law with eligibility for in-state tuition in Kansas while denying that same benefit to United States citizens who are not residents of Kansas.

22.     Section 76-731a became effective July 1, 2004.

23.     In the twelve-year period between 2010 and 2021, at least 5,140 illegal aliens relied on Section 76-731a to enroll at Kansas postsecondary educational institutions.[4]

24.     Eligibility for in-state tuition for a Kansas postsecondary educational institution constitutes a higher education benefit given its reduced cost.

25.     For example, for the 2025-2026 school year, the per-semester tuition rates for undergraduate Kansas residents were $5,649.00 at University of Kansas; $5,300.55 at Kansas State University; $3,249.00 at Pittsburg State University; $2,770.95 at Emporia State University; $2,446.20 at Fort Hays State University; and $3,896.25 at Wichita State University.[5]

---

[4] *See* Fred Logan, *Kansas is Leading the Way with Educating Undocumented Students*, The Wichita Eagle (Jan. 1, 2023), https://www.kansas.com/opinion/guest-commentary/article270589572.html [https://perma.cc/8C2W-A4P5] (last visited June 10, 2026).

[5] *See State University Comprehensive Fee Schedule Academic Year 2026*, Kansas Board of Regents, *available at* https://www.kansasregents.gov/resources/AY_26_Comprehensive_Fee_Schedule_FULL_revd_10_07_25.pdf [https://perma.cc/9MHB-Q6X2] (last visited June 10, 2026).

26.     The per semester tuition rates for non-resident undergraduate students for the 2025-2026 academic year were much higher: $15,088.50 at University of Kansas; $14,277.60 at Kansas State University; $8,921.00 at Pittsburg State University; $6,927.45 at Emporia State University; $8,607.30 at Fort Hays State University; and $9,229.05 at Wichita State University.[6]

27.     Section 76-731a unequivocally makes illegal aliens eligible for resident tuition in Kansas. Under Section 76-731a(a), "any individual who is enrolled or has been accepted for admission at a postsecondary educational institution [in Kansas] shall be deemed to be a resident of Kansas."

28.     Section 76-731a(b) defines "individual" as any person who

A) has attended an accredited Kansas high school for three or more years,

B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and

C) in the case of a person without lawful immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so or, in the case of a person with a legal, nonpermanent immigration status, has filed with the postsecondary educational institution an affidavit stating that such person has filed an application to begin the process for citizenship of the United States or will file such application as soon as such person is eligible to do so.

Kan. Stat. Ann § 76-731a(b).

29.     Additionally, Section 76-731a disqualifies "any individual who . . . at the time of enrollment, is eligible to enroll in a public postsecondary educational institution located in another

---

[6] *Id.*

8

state upon payment of fees and tuition required of residents of such state." Kan. Stat. Ann. § 76-731a(c)(2).

30.    Individuals with valid student visas are also not eligible for resident tuition under Section 76-731a(c)(1).

31.    Put differently, an illegal alien is eligible for in-state tuition in Kansas so long as he 1) enrolled or was accepted for admission to a Kansas postsecondary educational institution; 2) attended a Kansas high school for at least three years; 3) graduated from a Kansas high school or received a GED in Kansas; 4) filed an affidavit affirming past or future steps to obtain legal status with the postsecondary educational institution he has enrolled at or was accepted to; 5) is not eligible for resident tuition in another state; and 6) does not hold a valid student visa.

32.    Section 76-731a's requirements are conditioned on residency in Kansas.

33.    By requiring students to be ineligible for resident tuition in another state, Section 76-731a(c)(2) requires a student to reside in Kansas to be eligible for resident tuition in Kansas.

34.    In order for students to qualify for resident tuition, Section 76-731a(b) provides an additional residence-based requirement by requiring three years of attendance at a Kansas accredited high school.

35.    Section 76-731a(b)'s requirement for graduation from a Kansas high school or receipt of a GED within Kansas provides yet another residence-based requirement for in-state tuition eligibility.

36.    Notably, students between the ages of seven and seventeen, including those not lawfully present in the United States, must attend school in the district in which they reside. *See* Kan. Stat. Ann. §§ 72-3118, 72-3120.

9

37.    Accordingly, under Kansas law, the tuition rate for an illegal alien in Kansas who satisfies Section 76-731a's criteria is the same tuition rate as other Kansas residents. But a United States citizen who is not eligible for in-state tuition under Section 76-731a, due to residency requirements, is required to pay higher, nonresident tuition.

38.    Put simply, Section 76-731a's requirements grant preferential treatment to illegal aliens within our Nation over United States citizens on the basis of residence. That clearly contravenes Congress's command in Section 1623.

## THE KANSAS LAW IS PREEMPTED

39.    The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

40.    Express preemption occurs when Congress, through statutory language, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983).

41.    Federal statutes may preempt state laws and render them ineffective. They may do this expressly, by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S. 387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."); *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007) ("Express pre-emption occurs when Congress 'define[s] explicitly the extent to which its enactments pre-empt state law.'" (quoting *Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000)).

10

42.     "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with Federal law are "without effect"); *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (same).

43.     When the Federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted). Further, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Nat'l Ass'n of Indus. Bankers v. Weiser*, 159 F.4th 694, 711 (10th Cir. 2025) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).

44.     Here, Section 1623(a), contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

45.     As evidenced by its title—'Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits'—Section 1623(a) mandates that United States citizens must be eligible for a benefit regardless of residency before any illegal alien can be eligible for that benefit based on residency.

46.    Kansas Attorney General Kris W. Kobach issued Opinion 2026-5 on February 10, 2026, in which he considered Section 76-731a in view of Section 1623, and concluded that the Kansas law is preempted and invalid—though it remains in effect. Attorney General Kobach relied on three separate bases for that opinion. First, because the statute "deems" illegal aliens to be Kansas residents for tuition purposes if they meet certain requirements. Second, the requirements to attend and graduate from an accredited Kansas high school or GED program are based upon residency. Third, illegal aliens cannot be deemed residents of Kansas if they meet the residency requirements of another state for in-state tuition purposes. *See* Opinion 2026-5 at 2-3. Attorney General Kobach's opinion is consistent with multiple court opinions. Despite his opinion, however, Section 76-731a remains in force. Illegal aliens in Kansas who meet the requirements of Section 76-731a are eligible for in-state tuition while U.S. Citizens who are residents of other states are not so eligible.

47.    At least three courts have stated that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312–13 (5th Cir. 2023); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . . .").

48.    Moreover, since 2025 four other courts have enjoined laws similar to those challenged here. The United States District Court for the Northern District of Texas held that 8

U.S.C. § 1623(a) expressly preempted Texas Education Code §§ 54.051(m) and 54.052(a), which permitted illegal aliens to qualify for in-state tuition, even though out-of-state American citizens were not afforded the same benefit. *See United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025); *see also United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025) (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because the challenged provisions violated the Supremacy Clause). In so doing, the court found that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens *cannot* be eligible." *Texas*, 350 F.R.D. at 79 (citation and internal citations omitted).

49.    Similarly, the United States District Court for the Eastern District of Oklahoma found that Oklahoma in-state tuition provisions "as applied to aliens who are not lawfully present in the United States, violate[] the Supremacy Clause and are unconstitutional and invalid." *See United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES, ECF 23 at 1 (E.D. Okla. Aug. 29, 2025) (Order and Final Consent Judgment); *see also United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES, ECF 11 at 1 (E.D. Okla. Aug. 7, 2025) (Report and Recommendation) (holding that 8 U.S.C. § 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria").

50.    The United States District Court for the Eastern District of Kentucky entered a consent judgement between Plaintiff United States of America and Defendant Kentucky Council on Postsecondary Education ("CPE") permanently enjoining the Kentucky CPE from enforcing Kentucky regulation 13 KAR 2:045, Section 8(4)(a) (eff. 6-22-2022), the Tuition Assessment

13

Regulation. *See* ECF 57, Opinion & Order, *United States v. Kentucky Council on Postsecondary Educ., et al.*, No. 3:25-cv-00028-GFVT (E.D. Ky. Mar. 31, 2026). The Kentucky regulation allowed illegal aliens who graduated from a Kentucky high school, among other criteria, to be considered Kentucky residents for purposes of in-state tuition. The court found that the Kentucky regulation violated federal law, 8 U.S.C. § 1621(d), because it was promulgated and enforced by the Kentucky CPE and therefore was not a valid *State* law, which Section 1621(d) requires, but a regulation instead. *see id.* at 21. The court noted its subject matter jurisdiction per 28 U.S.C. §§ 1331, 1345 (*see id.* at 6, 7), and found that although both parties agreed on the merits of the consent judgement, a "justiciable controversy remains present[,]" as the Kentucky CPE continued to enforce the regulation. *id.* at 8. The court determined that it had jurisdiction and adopted the consent decree "[h]aving determined that the proposed consent decree is necessary to remedy a violation of federal law, the Court must approve it…" *Id* at 21.

51.    On June 3, 2026, the United States District Court for the District of Nebraska entered a consent judgement between Plaintiff United States of America and Defendant the State of Nebraska permanently enjoining the Nebraska from enforcing Neb. Rev. Stat. §§ 85-502, 85-1907(3), 85-2102(6), and 85-3202(6). *United States v. Nebraska*, ---F.Supp.3d--- 2026 WL 1584862 (2026). The now preempted Nebraska laws "allow[ed] aliens unlawfully present in the United States who me[]t certain Nebraska residency requirements to pay in-state tuition rather than out-of-state tuition," and made illegal aliens eligible for "state educational grant or scholarship programs" on the same basis. *Id*. at *1. The court held that the Nebraska laws were preempted by Section 1623(a) because "they allow aliens unlawfully present in the United States to qualify as 'residents' of Nebraska for the purpose of post-secondary education benefits but deny such benefits to United States citizens of other states." *Id.* at *27. Additionally, the court found that a "Case or

14

Controversy" remained despite the "[f]riendly" nature of the lawsuit because "[t]he Nebraska Attorney General's position—agreeing with the legal contention of the United States but refusing to give it effect—means that there is a justiciable controversy between the parties, despite the apparent inconsistency in the Nebraska Attorney general's position." *Id.* at *20 (citing *United States v. Windsor*, 570 U.S. 744, 756 (2013)).

52.     Here, Section 76-731a conflicts with and is preempted by Section 1623(a) because Section 76-731a confers eligibility for in-state tuition benefits to illegally present aliens on the basis of residence but not to American citizens on the same terms, regardless of residency.

53.     As a result, Section 1623(a), expressly preempts Section 76-731a because it bestows greater postsecondary education benefits on illegal aliens than on United States citizens on the basis of residency. Section 76-731a is therefore unconstitutional.

54.     The fact that Section 76-731a uses, *inter alia*, high school attendance and graduation in Kansas as a proxy for residence does not change the analysis.[7] *First*, Section 76-731a(c)(2) requires students to be ineligible for resident tuition in another state in order to be eligible for resident tuition in Kansas. This is simply a residency requirement defined negatively rather positively: the statute states that the student can't reside *outside* of Kansas rather than requiring the student to reside *in* Kansas. This is a distinction without a difference.

55.     *Second*, even setting aside the residence requirement in Section 76-731a(c)(2), Section 76-731a(b) requires that the student attend a Kansas high school for three or more years. But a student's high school attendance for three or more years *within a state* is a near-perfect proxy for residence. Plus, the school a student may attend in Kansas turns on the district in which the

---

[7] *But see United States v. Walz,* No. 25-cv-2668, 2026 WL 851231 at *7-11 (D. Minn. Mar. 27, 2026) (holding that challenged Minnesota laws were not preempted by Section 1623(a) because they did not determine eligibility for resident tuition on the basis of residence and because non-residents can qualify for resident tuition.).

15

student resides. *See* Kan. Stat. Ann. § 72-3122. Therefore, the challenged Kansas law features multiple residence-based requirements for in-state tuition eligibility.

56.    *Third*, States and courts cannot do indirectly what they are barred from doing directly. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024); *see also Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024) ("As these cases make clear, States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*. EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings. So Berkeley can't evade preemption by merely moving up one step in the energy chain and banning natural gas piping within those buildings." (emphases in original)). Allocating lower tuition rates on the basis of high school attendance is a proxy for residence. *See Texas*, 350 F.R.D. at 81 (holding, as to a similar Texas law that basing residency on various factors including high school attendance did not place the challenged law "outside the purview of Section 1623(a)'s express preemption clause").

## CLAIM FOR RELIEF

### VIOLATION OF THE SUPREMACY CLAUSE
### (PREEMPTION)

57.    Plaintiff hereby incorporates the preceding paragraphs of the Complaint as if fully stated herein.

58.    8 U.S.C. § 1623 prohibits states from making illegal aliens eligible for post-secondary education benefits on the basis of residence if U.S. Citizens are not also eligible for those same benefits without regard to residence.

59.    Section 76-731a violates Federal immigration law because it makes illegal aliens eligible for post-secondary education benefits on the basis of residence but does not make U.S. citizens eligible for those same benefits without regard to residence.

60.     Thus Section 76-731a directly conflicts with 8 U.S.C. § 1623(a).

61.     Accordingly, Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623 and unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, the United States respectfully requests the following relief:

62.     That this Court enter a judgment declaring that Section 76-731a is preempted by 8 U.S.C. § 1623 and is therefore unconstitutional and invalid;

63.     That this Court issue a permanent injunction that prohibits Defendant as well as its officers, agents, servants, employees, and attorneys, and those in active concert or participation with them, from enforcing Section 76-731a;

64.     That this Court award the United States its costs and fees in this action; and

65.     That this Court award any other relief it deems just and proper.

DATED: June 24, 2026

Respectfully Submitted,

s/ Jackson M. Story

STANLEY E. WOODWARD, JR.
Associate Attorney General

JACKSON M. STORY (FL 1032001)
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Phone: (202) 451-7304
Fax: (202) 514-8742
Email: jackson.m.story@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

ALEXANDRA MCTAGUE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch

CHRISTOPHER ALLMAN
Assistant United States Attorney
Chief, Civil Division
District of Kansas

*Attorneys for the United States*

17