**IN THE DISTRICT COURT FOR
THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 5:26-cv-04066 |
| v. | |
| STATE OF KANSAS, | |
| Defendant. | |

**MOTION TO INTERVENE**

Under Federal Rule of Civil Procedure 24, Governor Kelly respectfully moves to intervene as a defendant in this case because the Kansas Attorney General fails to adequately represent the State of Kansas' interests. On the very same day the United States, through the Department of Justice (DOJ), sued the State of Kansas, the Kansas Attorney General and DOJ filed a Joint Motion for Entry of Consent Judgment [ECF No. 3]. "Plaintiff and Defendant request that the Court enter a final judgment declaring that Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623 and is therefore invalid." *Id.* at ¶ 8. This litigation seeks an outcome consistent with the Kansas Attorney General's opinion no. 2026-05, but contrary to the will of the Kansas Legislature and Governor. Without any substantive briefing, this is a collaborative attempt by DOJ and Attorney General Kobach to backdoor-legislate through non-adversarial litigation. Because the Kansas Attorney General and DOJ share the same desired outcome and legal outlook, this calls into question whether there is sufficient controversy between the parties under current representation. A consent judgment at this time is inappropriate and disregards the democratic process by which the Kansas state law was enacted.

1

## I.    Background

K.S.A. 76-731a permits certain people without lawful immigration status to be deemed residents for purposes of tuition and fees. In the 2026 legislative session, members of the Kansas Legislature through Senate Bill 254 unsuccessfully sought to void K.S.A. 76-731a. Governor Kelly vetoed SB 254 and the Legislature failed to reconsider the bill. https://kslegislature.gov/b2025_26/bills/SB254/. Attorney General Kobach disagrees with the Kansas Legislature and Kansas law, publicly expressing that: "For more than 20 years, Kansas has been violating federal law with impunity" by passing and keeping K.S.A. 76-731a on the statute books. *Federal government challenged in-state tuition for immigrants living in U.S. illegally*, Sunflower State Journal, June 24, 2026.

DOJ has attempted to undermine states' abilities to permit in-state tuition for students unlawfully in the United States. Notably, a judge for the District of Minnesota recently disagreed with DOJ in concluding that 8 U.S.C. 1623(a), the same statute DOJ relies on in this matter, *does not* preempt Minnesota law. *United States v. Walz,* No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026). DOJ has appealed that decision to the Eighth Circuit.

## II.    The Attorney General has not adequately represented the State of Kansas.

While there may be controversy between the state and federal law at issue in this case, there appears to be an abdication of the Kansas Attorney General's responsibility to defend state law. In the absence of the Kansas Attorney General or where he is interested adversely to the State of Kansas, Governor Kelly will act. She may "employ counsel" to act in Attorney General Kobach's "stead" since he is "interested adversely to the state" in this action. K.S.A. 75-108. The Kansas Attorney General's adverse interest is reflected not only in his signature on the Joint Motion for Entry of Consent Judgment, but it is also acknowledged by DOJ in its complaint.

2

[ECF No. 1, ¶ 46 ] (acknowledging Kansas Attorney General Opinion 2026-5 "conclude[s] that the Kansas law is preempted and invalid.").

At this time, Plaintiff *and* Defendant want this Court, without any substantive briefing needed for adequate consideration by this court, to approve a consent judgment that: a lawfully enacted Kansas State law which has been in effect for over two decades is preempted by federal law. [ECF No. 3, ¶ 8] ("Plaintiff and Defendant request that the Court enter a final judgment declaring that Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623 and is therefore invalid.").

A consent judgment at this time is inappropriate and disregards the democratic process by which the Kansas state law was enacted. Plaintiff and Defendant may prove to be right, but that is something that must be decided by this Court after full merits briefing and after consideration of similar litigation in *United States v. Walz,* No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026) (concluding that 8 U.S.C. 1623(a), the same statute DOJ relies on in this matter, *does not* preempt Minnesota law). A backdoor consent judgment negotiated by parties—before litigation commenced—which there appears to be no controversy, is improper.

## III.    Argument

### A.  Legal Standard

Governor Kelly must meet the requirements of Federal Rule of Civil Procedure 24 to become a defendant-intervenor. *Day v. Sebelius*, 227 F.R.D. 668, 672 (D. Kan. 2005). "'Intervention of right pursuant to Rule 24(a)(2) should be allowed 'where no one would be hurt and greater justice could be attained.'" *Day*, 227 F.R.D. at 673. The 10th Circuit follows "a somewhat liberal line in allowing intervention." *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1250 (10th Cir. 2001). As shown below, Governor Kelly meets the requirements to

intervene. And by permitting her to intervene, justice would be greater served than simply allowing a colluded lawsuit and consent judgment between DOJ and Attorney General Kobach to stand without objection.

### B.  Governor Kelly has Article III standing.

"For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *but see Day v. Sebelius*, 227 F.R.D. 668, 675-76 (D. Kan. 2005) (questioning whether standing is required for defendant-intervenors). Article III standing is established through: injury-in-fact, causation, and redressability. *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F.Supp.3d 1086, 1092 (D. Kan. 2015).

Governor Kelly meets all three of these requirements. K.S.A. 76-731a, the Kansas statute DOJ and Attorney General Kobach agree is federally preempted, is at risk of being permanently enjoined from enforcement and found to be illegal. [ECF No. 1, Introduction]. Governor Laura Kelly, by the Kansas Constitution, is "responsible for the enforcement of the laws of this state." Kan. Const. art. 1, § 3. Governor Kelly, as the constitutional enforcer of Kansas' laws and the statutorily designated officer to act when the Attorney General of Kansas is adversely interested to Kansas, must represent Kansas' interests or even the State of Kansas since both would be injured if K.S.A. 76-731a is ruled illegal. The Attorney General fails to account for injury to the State when the State fails to represent the public interest as determined by the public's duly-elected representatives. When the government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (citation omitted); *see also Veasey v. Abbott*, 870 F.3d 387,

391 (5th Cir. 2017) (per curiam) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.").

Governor Kelly's veto statement of Senate Bill 254, a bill from the 2026 legislative session that unsuccessfully sought to void K.S.A. 76-731a, succinctly states the injury that invalidating the statute would cause:

> "America's immigration system is broken, but this is not the way to fix it. This bill targets Kansans who were brought to the United States as children. To punish these kids for decisions their parents made years ago is not only cruel, but also not in the best interest of the state. Kansas needs these young people to be educated and trained so they can enter our workforce and contribute to our state's economy." Governor Kelly Vetoes Eight Bills, https://www.governor.ks.gov/Home/Components/News/News/996/56.

The Kansas Legislature agrees. It chose not to override Governor Kelly's veto and kept the statute intact. SB 254, https://kslegislature.gov/b2025_26/bills/SB254/. K.S.A. 76-731a remains good law and is threatened by DOJ's lawsuit and Attorney General Kobach's failure to defend Kansas law. An injury has occurred to Kansas law, and this Court can redress that threat by denying DOJ and Attorney General Kobach's motion for consent judgment. The State's injury is traceable to DOJ's complaint requesting this Court find K.S.A. 76-731a illegal.

### C. Governor Kelly is entitled to intervention as a matter of right.

Federal Rule of Civil Procedure 24(a)(2) requires four factors to be satisfied for an applicant to be granted intervention as of right: 1) timeliness of the application to intervene; 2) a legally protected interest; 3) the action, as a practical matter, impairs or impeded that interest; and 4) no party to the action can adequately represent the potential intervenor's interests. *See Coal. of Arizona/New Mexico Cntys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 840 (10th Cir. 1996). Governor Kelly meets all four requirements under Rule 24(a), as shown below and is therefore entitled to intervene as a matter of right.

5

### 1.  Governor Kelly's motion is timely.

This court reviews timeliness of an intervention motion "in length of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and existence of any unusual circumstances." *Sanguine, Ltd. v. United States Dep't of Interior,* 736 F.2d 1416, 1418 (10th Cir.1984). Governor Kelly seeks to intervene the same day as this matter and the motion for consent judgment was filed. The Governor's motion to intervene is immediate and timely.

### 2.  Governor Kelly has a significant interest in this action.

Federal Rule of Civil Procedure 24(a)(2) requires Governor Kelly to establish that she has a significant interest in the subject of this litigation. To satisfy an interest in the action, standing to sue is sufficient. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998). Governor Kelly has established that she has standing to intervene in this action.

To the extent, this Court questions Governor Kelly's standing as a proper party in interest, it need not be worried for at least three reasons. First, the Kansas Constitution vests the Governor with the "supreme executive power of this state." And she "shall be responsible for the enforcement of the laws of this state" Kan. Const. art. I, § 3. The Governor's constitutional power to enforce laws is unique: it is one of the only, if not the only, state constitutional provision among the states that expressly imposes on the State's chief executive the responsibility of *enforcing* its promulgated laws, not just overseeing faithful execution of said laws. *See* Kevin S. Marshall, Free Enterprise and the Rule of Law: The Political Economy of Executive Discretion, 1 Wm. & Mary Bus. L. Rev. 235, 239, n. 11 (2010) (listing the 49 state constitutional provisions which empower governors to faithfully execute laws). "Enforce," according to Black's Law Dictionary (12th ed. 2024), means "[t]o give force or

effect to (a law, etc.); to compel obedience to." This is the power explicitly granted to the Kansas Governor.

The Kansas Constitution's enforcement provision is a grant of authority to the Governor; it is not a limitation. It is not prescriptive, nor a constraint. It empowers her. This constitutional power "requires the governor to use his or her own judgment and opinion based on the varying facts of each case." *Merryfield v. Kansas Social and Rehabilitation Services*, No. 104,328, 2011 WL 2555662, at *9 (Kan. App. 2011) (unpublished opinion). Although Governor Kelly concedes that she largely cannot represent the State of Kansas as an entity, she can represent the Office of the Governor as the supreme executive in charge of enforcing Kansas' laws. Here, she is constitutionally responsible for "to give force or effect to" K.S.A. 76-731a. *Kelly v. Kobach*, 322 Kan. 85, 93-95 (2026).

Second, in a recent quo warranto original action in the Kansas Supreme Court, the State's highest court recognized a critical concession made by Attorney General Kobach. He agrees she can sue on behalf of her office, her executive interests, and the executive agencies that she oversees. *See generally Kelly v. Kobach*, 322 Kan. 85 (2026).

The Kansas Hispanic and Latino American Affairs Commission (KHLAAC) is within the Office of Governor Laura Kelly. K.S.A. 74-6501 creates KHLAAC and designates the commission as "advisory to the governor and shall be within the office of the governor and a part thereof." Commission members are appointed by Governor Kelly. K.S.A. 74-6502. Governor Kelly reviews proposals and evaluations for KHLAAC. K.S.A. 74-6508. And Governor Kelly also approves KHLAAC technical advisors and assistants. KHLAAC's mission is to:

"[S]erve[] as the state's leading seven member advisory body on matters affecting Kansas' Hispanic and Latino communities. Working directly under the Governor's office, KHLAAC provides expert guidance on policies impacting Latino and Hispanic Kansans, while building meaningful relationships between state government and communities across Kansas. Through advocacy and community partnerships, KHLAAC ensures that Latino and Hispanic perspectives inform policies, legislative decisions, and initiatives in vital areas including education, health care, economic development, civic engagement, cultural affairs, and immigration. By supporting the well-being of the Hispanic and Latino communities, KHLAAC contributes to the prosperity of all Kansans."

KHLAAC statutorily falls under Governor Kelly's purview. And it is therefore within Governor Kelly's powers to represent the interests of that executive commission in litigation. KHLAAC is directly impacted by DOJ and Attorney General Kobach's motion to enter a consent judgment, as the State of Kansas' leading advisory body on Kansas' Hispanic and Latino communities. In its testimony in opposition to SB 254, KHLAAC succinctly described how harmful the bill was. Certain legislators unavailingly sought to void K.S.A. 76-731a, through SB 254. KHLAAC strongly responded, describing the harm the bill posed to Kansas:

"Senate Bill 254, which seeks to prohibit individuals who are unlawfully present in the United States from receiving any state or local public benefit, fails to account for the economic and workforce realities of Kansas. Immigrant and refugee labor is vital to our state's economy, particularly in Southwest Kansas, where industries such as agriculture, food production, and manufacturing rely heavily on immigrant workers. By imposing unnecessary and restrictive barriers, this bill would destabilize critical industries, leading to labor shortages, reduced economic output, and increased hardship for businesses that sustain Kansas communities." Testimony of Irma Faudoa on SB 254, Senate Federal and State Affairs Committee, February 27, 2025.

KHLAAC's interests are impacted by this suit and Governor Kelly is therefore permitted to represent those executive interests in litigation.

Lastly and alternatively, if this court believes the Office of the Governor or Governor Kelly's executive interests are not impaired by this suit, Governor Kelly's motion to intervene should still be granted. This is true under K.S.A. 75-108, which reads:

8

"Whenever the governor shall receive notice of the commencement of any action or proceedings, by which the rights, interests or property of the state shall be liable to be affected, the governor shall inform the attorney general thereof, and require the attorney general to act in conjunction with the counsel of the proper party to protect the interests of the state; and in any such case, or in any action prosecuted or defended in behalf of the state, he or she may, if the public interests require it, employ such counsel as he or she shall deem proper to assist in any such action or proceeding; *and in case of the absence or sickness of the attorney general, or if he or she shall be in any way interested adversely to the state in any action or proceeding, the governor may employ counsel to act in his or her stead*." (emphasis added).

Put as plainly as possible: Attorney General Kobach is interested adversely to the State of Kansas in this proceeding. As unquestionably evidenced by his swift willingness to enter a joint motion for a consent judgment, Attorney General Kobach refuses to defend Kansas law. *See* Kansas Attorney General Opinion 2026-5. Given that he is interested adversely to the State of Kansas because he wants a Kansas law ruled illegal consistent with his view of the law, which is advisory not judicial or binding, the Governor is statutorily empowered to employ counsel to represent the State of Kansas.

Governor Kelly has a significant interest in this suit and must be involved so she can defend Kansas law.

3. **Governor Kelly's interests will be impaired if the court grants the joint motion for consent judgment without full briefing on the merits.**

To satisfy the third prong of the intervention test, "'a would be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. The burden is minimal.'" *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1253 (10th Cir. 2001). The Governor's executive interests and the State of Kansas' interests will be unrepresented and potentially injured but-for this court permitting her to intervene and defend a Kansas law that currently, both parties in the lawsuit agree should be void. Governor Kelly's interests cannot be adequately represented by existing parties.

9

Governor Kelly would be the only party defending K.S.A. 76-731a. There is a "'presumption of adequate representation [] when an applicant for intervention and an existing party have the same ultimate objective in the litigation." *Day v. Sebelius*, 227 F.R.D. 668, 675 (D. Kan. 2005). No presumption is applicable here because Governor Kelly disagrees with the Department of Justice and Attorney General Kobach that a consent judgment is warranted without substantive briefing of the issues. And "[a]lthough an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the minimal one of showing that representation may be inadequate." *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1254 (10th Cir. 2001). As the case's sole defender of Kansas law, Governor Kelly meets her minimal burden to show her, and alternatively the State of Kansas', interests are inadequately represented.

In *Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179 (2022), the United States Supreme Court permitted legislators to intervene in a federal lawsuit under Rule 24 despite the district court applying a presumption that the legislative leaders' interests would be adequately represented by the Governor. Despite Attorney General Kobach's decision to unilaterally act against Kansas law, the Kansas Legislature, and Governor Kelly, all relevant and appropriate voices on this matter deserve their day in court:

> "[W]hen a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge . . . . Appropriate respect for these realities suggests that federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law. To hold otherwise would . . . evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials." *Berger*, 597 U.S. at 191.

10

In short, under Supreme Court precedent, this Court should not and cannot solely rely on Attorney General Kobach's opinion and voice in this matter.

  **D. Governor Kelly, alternatively, should be granted permissive intervention.**

  If this Court does not grant Governor Kelly's intervention as a matter of right, the Court should permit her permissive intervention. Federal Rule of Civil Procedure 24(b)(1)(B) states "[o]n a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." This Court should permit Governor Kelly to intervene because the focal point of this case concerns 8 U.S.C. 1623(a) and K.S.A. 76-731a. She seeks participation in this suit in defense of K.S.A. 76-731a. The defenses raised by Governor Kelly in her forthcoming pleading involve the same issues of law that DOJ has raised.

  Permissive intervention would not cause undue delay or prejudice adjudication of the existing parties' rights. Federal Rule of Civil Procedure 24(b)(3). Governor Kelly has promptly filed a motion to intervene and therefore, will not cause delay or prejudice.

## IV. Conclusion

  Governor Kelly respectfully requests this Court grant her motion to intervene under Federal Rule of Civil Procedure 24. Because of the exigency of the circumstances, and opposing counsels joint motion for consent judgment, Governor Kelly has not conferred with opposing counsel before filing this motion.

Respectfully submitted this 24th day of June, 2024.

s/ Justin Whitten
Justin Whitten
Bar #28344
Attorney for Governor Kelly
Office of the Governor
300 SW 10th Ave., Suite 541-E
Topeka, KS 66612
Phone: (785) 296-3930
Fax: (785) 296-7973
Email: Justin.h.whitten@ks.gov


s/ Ashley Stites-Hubbard
Ashley Stites-Hubbard
Bar #27629
Attorney for Governor Kelly
Office of the Governor
300 SW 10th Ave., Suite 541-E
Topeka, KS 66612
Phone: (785) 581-44001
Fax: (785) 296-7973
Email: ashley.stiteshubbard@ks.gov

s/ Emily Depew
Emily Depew
Bar #30147
Attorney for Governor Kelly
Office of the Governor
300 SW 10th Ave., Suite 541-E
Topeka, KS 66612
Phone: (785) 368-8763
Fax: (785) 296-7973
Email: Emily.Depew@ks.gov