**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | |
| STATE OF KANSAS, | Case No.: 5:26-cv-04066-HLT-BGS |
| Defendant, | **KANSAS STUDENTS FOR AFFORDABLE TUITION'S MOTION TO INTERVENE** |
| and | |
| KANSAS STUDENTS FOR AFFORDABLE TUITION, | |
| Defendant-Intervenor. | |

**KANSAS STUDENTS FOR AFFORDABLE TUITION'S MOTION TO INTERVENE**

Kansas Students for Affordable Tuition moves to intervene in this action under Federal Rule of Civil Procedure 24 to protect and represent the interests of its members.

## I.    INTRODUCTION

Plaintiff United States of America and Defendant State of Kansas (collectively, "the Parties") ask this Court—in an expedited fashion—to invalidate Kan. Stat. Ann. § 76-731a, (the "challenged provision")—a long-standing, duly-enacted state law that allows eligible students without lawful immigration status to pay tuition equivalent to the rate paid by most students ("regular tuition rates") at public colleges and universities in Kansas. In doing so, they ask the Court to upend the lives of students in Kansas who have been seeking higher education in Kansas based on a legislated promise that they would pay regular tuition rates. Those students are not parties to proposed consent judgment, yet they are the individuals who will bear its immediate and substantial consequences. The Parties did not fully apprise the Court of the irreparable

1

consequences to third parties, nor did they provide adversarial briefing that would ensure a fully informed decision by this Court.

For nearly a quarter century, no other administration of either political party has challenged this law or the similar laws enacted across the country. The current administration has broken with that consensus, mounting a campaign to invalidate them. Indeed, since last summer, the United States has filed suits to end longstanding tuition laws in California, Illinois, Kentucky, Minnesota, Nebraska, New Jersey, Oklahoma, Texas, and Virginia. Although some of those states have defended their laws, others, like Kansas, have capitulated, resulting in immediate and dire consequences for the many students attending their public colleges and universities.

Kansas Students for Affordable Tuition (hereinafter, "KanSAT" or "Movant") is a group of students that will be affected by the outcome of this lawsuit. It is an unincorporated association comprised of college students without lawful immigration status who are united for the purpose of advocating for access to affordable higher education in Kansas, including maintaining the state's regular tuition rates for immigrant students in Kansas under the challenged provision.

Movant seeks intervention as a matter of right under Federal Rule of Civil Procedure 24(a) to defend the validity of the challenged state-law provision. In the alternative, Movant respectfully requests permissive intervention under Fed. R. Civ. P. 24(b), as its claims and defenses share common questions of law and fact with the main action, and its intervention on behalf of third parties affected by this litigation will significantly contribute to the just and equitable resolution of the important issues at stake.

Accordingly, Movant respectfully requests that the Court grant its motion to intervene.

///

///

## II.    BACKGROUND

### A.  Statutory History

In 1996, the United States Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act.  Among numerous other provisions, the Act states in relevant part:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).  Previously in 1996, Congress enacted 8 U.S.C. § 1621(d), which required states to provide eligibility for any state or local public benefit to persons without lawful immigration status "only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility."  Congress therefore left states free to determine whether and how to extend postsecondary education access to individuals without lawful immigration status, subject to the limitations contained in § 1623.

Eight years later, in 2004—and presumably aware of the 1996 federal law—Kansas enacted House Bill 2145, which amended the Kansas Statutes, Article 7, to include Section 76-731a. *See* Kan. Stat. Ann. § 76-731a.  Specifically, Section 76-31a(a) states that "[a]ny individual who is enrolled or has been accepted for admission at a postsecondary educational institution as a postsecondary student shall be deemed to be a resident of Kansas for the purpose of tuition and fees for attendance at such postsecondary educational institution."  Section 76-731a(b)(2) further states:

> "Individual" means a person who (A) has attended an accredited Kansas high school for three or more years, (B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and (C) in the case of a person without lawful

3

immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so . . . .

In sum, students without lawful immigration status are eligible to pay regular tuition rates in Kansas colleges if they (1) attended a high school in Kansas for three years, (2) graduated from a high school in Kansas, or obtained a GED from Kansas, and (3) submit an affidavit stating that they will file an application to legalize their immigration status when eligible.[1]  Section 76-731a has allowed students to afford a higher education in Kansas for more than two decades regardless of their immigration status.[2]

### B.  This Action

On June 24, 2026, the United States filed this action against the State of Kansas seeking to prohibit students without lawful immigration status from paying regular tuition rates at public colleges and universities in Kansas. *See* Dkt. 1.  Specifically, the United States alleges that the challenged provision is expressly preempted by 8 U.S.C. § 1623(a). *See id.* at 10–11.  That same day—instead of defending its own law—the Kansas Attorney General joined the United States in filing a Joint Motion for Entry of Consent Judgment. *See* Dkt. 3.  The Parties ask the Court to "enter a final judgment declaring that Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C § 1623 and is therefore invalid." *Id.* at 2.  The Parties further request that the Court "enter a permanent injunction prohibiting the State of Kansas . . . from enforcing Kan. Stat. Ann. § 76-731a." *Id.*

---

[1] Section 76-731a(c) states that a person is not eligible if they (1) have a valid student visa, or "at the time of enrollment, is eligible to enroll in a public postsecondary educational institution located in another state upon payment of fees and tuition required of residents of such state."

[2] Kansas recently declined to repeal Section 76-731a. *See* Matthew Kelly, *Kansas governor vetoes bill revoking in-state tuition for undocumented students,* THE KANSAS CITY STAR (April 7, 2026, at 3:33 PM) https://www.kansascity.com/news/politics-government/article315330094.html.

Later that day, the Governor of Kansas filed a motion to intervene along with a motion for an extension of time. *See* Dkts. 4, 5.

### C. Movant Kansas Students for Affordable Tuition

Movant Kansas Students for Affordable Tuition is an unincorporated association whose members reside in and attend public colleges and universities in Kansas. It is comprised of students without lawful immigration status who have lived in Kansas since childhood and rely on paying regular tuition rates to afford college in the state. KanSAT exists for the purpose of promoting, advocating for, and ensuring access to affordable higher education in Kansas, including maintaining regular tuition rates for certain students without lawful immigration status. KanSAT's members decided to pursue higher education in Kansas in reliance on decades-long guarantees from the State of Kansas that they would qualify for regular tuition rates. This lawsuit seeks to eliminate those guarantees and threatens to subject KanSAT's members to substantial increases of their education costs, which makes completing their programs prohibitively difficult.

For example, one of KanSAT's members is a student without lawful immigration status pursuing a Bachelor of Science in mechanical engineering at Wichita State University. He is in his third year and plans to pursue an advanced degree in engineering in Kansas after graduation. He has lived in Kansas for more than a decade and relied on paying regular tuition rates when he decided to attend Wichita State University. He has paid for his education through personal funds and private scholarships. If the challenged provision is enjoined, his per-semester tuition will increase from approximately $3,896.25 to $9,229.05. *See, e.g.,* Dkt. 1 at 7–8. He cannot afford such an increase and will almost certainly drop out of his program if he is forced to pay out-of-state tuition.

Another KanSAT member is a fourth-year student without lawful immigration status pursuing a Bachelor of Arts in education at Wichita State University. She has lived in Kansas since she was ten and relied on paying regular tuition rates when she decided to attend college at Wichita State. She plans to pursue an advanced degree upon graduation. She pays for her education through personal funds and private scholarships. If the challenged provision is enjoined, her per-semester tuition will similarly increase from approximately $3,896.25 to $9,229.05. *See, e.g.,* Dkt. 1 at 7–8. She cannot afford to pay the additional amount and will likely have to transfer to a program outside Kansas or defer completing her program.

A third KanSAT member is a second-year student without lawful immigration status pursuing a Bachelor of Science in biology at Hutchinson Community College. She plans to transfer to Kansas State University and then pursue an advanced degree upon graduation. She relied on paying regular tuition rates when she decided to attend college in Kansas. She has been paying for her tuition through personal funds and private scholarships. She cannot afford an increase to her tuition and will likely have to drop out of her program of she is forced to pay out-of-state tuition rates. These examples are illustrative only. Additional KanSAT members face similar financial and educational consequences should the challenged provision be invalidated.

## III.    ARGUMENT

KanSAT seeks intervention as a matter of right under Fed. R. Civ. P. 24(a) or, in the alternative, permissive intervention under Fed. R. Civ. P. 24(b). *See Lamb v. Daimler Trucks N. Am.*, LLC, No. 22-CV-2037-KHV-KGG, 2023 WL 4623821, at *1 (D. Kan. July 19, 2023) ("Federal Rule of Civil Procedure 24 allows two types of intervention: intervention as a matter of right under Rule 24(a) and permissive intervention under Rule 24(b)."). KanSAT seeks

intervention to protect its members' interests in maintaining the regular tuition rates promised by Kansas for more than two decades.

### A.  KanSAT Is Entitled to Intervene as of Right

The Tenth Circuit has summarized the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2) as follows: "(1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is [not] adequately represented by existing parties." *United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (internal quotation marks and citations omitted).  Upon such a showing, the Court 'must' permit intervention." *Beckham v. Monarch Cement Co.*, No. 23-1235-DDC-BGS, 2024 WL 4381213, at *1 (D. Kan. Oct. 2, 2024) (quoting Fed. R. Civ. P. 24(a)).  The Tenth Circuit has "historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017) (internal quotation marks omitted).  KanSAT satisfies each of these requirements, and the unique circumstances of this action warrant granting intervention as of right.

### 1.  KanSAT's Motion to Intervene is Timely

Courts weigh various factors "in light of all of the circumstances" in evaluating the timeliness of a motion to intervene. *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001).  Three non-exhaustive factors that are "particularly important" are (1) the length of time since the movant knew of its interest in the case, (2) prejudice to the existing parties, and (3) prejudice to the movant. *See Okla. ex. rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (citation omitted).  Courts should also consider any unusual circumstances. *See*

7

*id.* "The analysis is contextual; absolute measures of timeliness should be ignored." *Utah Ass'n of Ctys.*, 255 F.3d at 1250 (citation omitted).

Regarding the first factor, KanSAT acted diligently and promptly to protect its interests by retaining counsel and seeking intervention within a week after the case was filed. Indeed, KanSAT moved before any substantive proceedings had occurred. There is no undue delay, gamesmanship, or strategic maneuvering that would render KanSAT's motion to intervene untimely. Thus, the short period between filing of the complaint and KanSAT's motion to intervene strongly supports a finding of timeliness.

Regarding the second factor, the inquiry "measures prejudice caused by the intervenors' delay—not the intervention itself." *Utah Ass'n of Ctys.*, 255 F.3d at 1251 (internal quotations and citation omitted). There is no prejudice to the Plaintiff United States or Defendant State of Kansas by KanSAT filing this motion to intervene just one week after Plaintiff filed this suit. The Parties cannot reasonably claim any prejudice regarding the *timing* of the intervention in this case after they decided to seek the invalidation of long-standing Kansas laws the same day the complaint was filed through an agreed judgment. Again, the prejudice must be judged based on the delay, "not the practical prejudice that inevitably comes from the addition of a new party." *Beckham v. Monarch Cement Co.*, No. 23-1235-DDC-BGS, 2024 WL 4381213, at *2 (D. Kan. Oct. 2, 2024) (citations omitted). Any additional briefing required by intervention reflects the ordinary adversarial process—not prejudice attributable to delay.

Third, KanSAT will be significantly prejudiced if the Court denies intervention. If the Court denies KanSAT intervention, there will be no party in the case that will represent KanSAT's unique interests or present the Court with necessary adversarial briefing on important legal issues presented by the Parties' request for consent judgment. If the Court enters judgment according to

the Parties' joint request (Dkt. 3), KanSAT's members will be required to pay substantially higher out-of-state tuition rates instead of the regular tuition rates they relied upon when they decided to attend college in Kansas.

Finally, the circumstances of this action are unusual and strongly support a finding of timeliness. As previously noted, the Parties asked this Court to enter a final consent judgment to invalidate a long-standing Kansas provision the same day the case was filed and without the benefit of a hearing or adversarial briefing on important legal issues. *See* Dkts. 1, 3. Further, this case was filed as part of Plaintiff's campaign to file similar lawsuits across the country to invalidate state laws that allow certain students without lawful immigration status to pay regular tuition rates. *See, e.g., United States v. Texas*, No. 7:25-cv-00055 (N.D. Tex.); *United States v. Walz et al.*, No. 0:25-cv-02668 (D. Minn.); *United States v. Beshear et al.*, No. 3:25-cv-00028 (E.D. Ky.); *United States v. State of Oklahoma*, No. 6:25-cv-00265-RAW-DES (E.D. Okla.). The procedural posture is likewise unusual because the Parties jointly request immediate merits relief without presenting competing legal arguments on the dispositive statutory interpretation questions before the Court. The importance of the constitutional issue being determined by courts in different jurisdictions warrants a finding of timeliness so that the Court can benefit from adversarial briefing to further inform its decision.

### 2. KanSAT Has a Strong Interest in This Action

To satisfy the second requirement under Rule 24(a), a movant must claim "an interest relating to the property or transaction which is the subject of the action." *Utah Ass'n of Ctys.*, 255 F.3d at 1250 (internal quotation marks omitted). The movant must demonstrate a "direct, substantial and legally protectable interest in the subject matter of the action." *Coal. of Arizona/New Mexico Ctys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 839 (10th

9

Cir. 1996).  The Tenth Circuit has noted that this inquiry is "highly fact-specific," and that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Utah Ass'n of Ctys.*, 255 F.3d at 1251–52 (citing *Coal. of Arizona/New Mexico Ctys. For Stable Econ. Growth*, 100 F.3d at 841).  "The threshold for finding the requisite protectable interest is not high, and the mere threat of economic injury is sufficient for granting intervention." *SF Overland Park, LLC v. Johnson Controls Fire Prot., L.P.*, No. 2:24-CV-02601-JWL-TJJ, 2025 WL 2461305, at *2 (D. Kan. Aug. 26, 2025) (internal quotation marks and citation omitted).

Here, KanSAT is comprised of students who are currently paying regular tuition rates based on the challenged provision.  As such, they have a strong interest in the continued validity of the state law.  That is an interest that has been deemed sufficient for intervention in this jurisdiction. *See Day v. Sebelius*, 227 F.R.D. 668, 673–74 (D. Kan. 2005) (undocumented students had protected interest in in-state tuition as proposed intervenors under HB 2145).  KanSAT's members, like many students without lawful immigration status, come from low-income backgrounds and are not eligible for federal financial aid.  That makes paying out-of-state tuition rates particularly difficult. If they are forced to pay out-of-state tuition rates, KanSAT members may be forced to drop out of their educational programs after investing years of study and substantial financial resources. *See Supra* Section II.C.  These injuries will be directly attributed to this case.  The Tenth Circuit has held that "[a]n interest in preventing an economic injury is certainly sufficient for intervention as of right." *Albert Inv. Co., Inc.*, 585 F.3d at 1398; *see also Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) ("The threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest.").  Accordingly, KanSAT has a direct and substantial interest in this action to support intervention.

### 3.  Disposition of the Case Will Impair KanSAT's Interests

To satisfy the third requirement, a movant must demonstrate that disposition of the action may impair its ability to protect its interest.  *See Albert Inv. Co., Inc.*, 585 F.3d at 1391.  "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied."  *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (emphasis added) (internal quotations marks omitted).  This burden is minimal.  *See id.*; *see also Zinke*, 877 F.3d at 1167 (discussing that the movant need only show that it is "possible" that its interests will be impaired). The advisory committee notes to Rule 24(a) are also instructive: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."  Fed. R. Civ. P. 24 Advisory Comm. Note to 1996 Amend.

KanSAT's members are the precise targets of this lawsuit.  A judgment declaring K.S.A. 76-731a invalid would eliminate the very statutory protection upon which KanSAT's members currently rely to afford their education in Kansas higher education institutions.  Students without lawful immigration status in Kansas—such as KanSAT's members—face severe financial hardship if required to pay out-of-state tuition rates after relying on regular tuition rates for years.  *See Supra* Section II.C.  The Parties' pending request would impose exactly that harm, directly impairing the interests KanSAT exists to protect.  Accordingly, KanSAT satisfies the third prong for intervention as of right.

### 4.  The Existing Parties Do Not Adequately Represent KanSAT's Interests

In seeking intervention, the movant has the burden of demonstrating inadequate representation, but this burden is minimal; "[t]he possibility of divergence of interest need not be great in order to satisfy the burden of the applicants."  *WildEarth Guardians*, 573 F.3d at 996

(internal quotation marks omitted). When a prospective intervenor shows that the "public interest the government is obligated to represent may differ from the would-be intervenor's particular interest," the burden of demonstrating inadequate representation is met. *Utah Ass'n of Ctys.*, 255 F.3d at 1255

Here, Defendant State of Kansas—through its Attorney General—failed to adequately represent KanSAT's interests when it willingly entered into an expedited agreement to have its own law declared unconstitutional and to be enjoined from enforcing it—a failure underscored by the Governor of Kansas's own motion to intervene, alleging inadequate representation of the State's interests. *See* Dkt. 4 at 9–10. Defendant also has done nothing to inform this Court of the devastating effect on third parties, such as KanSAT's members, or the federalism issues that the final judgment would present. Defendant cannot represent KanSAT's interests because its interests are directly contrary to KanSAT's interests. While Defendant willingly agreed to have its own law declared unconstitutional, KanSAT seeks to defend the challenged provision. Accordingly, KanSAT's interests are not adequately represented by the existing parties.

Regarding the Governor's pending motion to intervene, KanSAT shares the Governor's objective of defending the challenged provision and welcomes her intervention, but a shared objective is not an identical interest, and her participation would not displace KanSAT's distinct stake in this litigation. Because this suit specifically targets Kansas students without lawful immigration status, those students hold a personal interest that no other party can adequately represent. The Tenth Circuit has held that a showing of inadequate representation "is easily made when the party upon which the intervenor must rely is the government" because "the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the

12

same posture in litigation." *Utah Ass'n of Ctys.*, 255 F.3d at 1255–56 (citation omitted). The Tenth Circuit specified that this conflict exists "even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest." *Id.* at 1256. Such is the case here.

Further, because the State of Kansas is set to have gubernatorial elections in November, and Governor Kelly is term-limited, the state will have a new governor by January 11, 2027. *See* Kan. Const. Article 1, § 1. And a new governor can reverse course. In fact, a change in leadership has already produced such a reversal in a similar case. In *United States v. Commonwealth of Virginia*, No. 3:25-cv-01067-REP (E.D. Va.), the outgoing attorney general joined the United States in a consent judgment to invalidate Virginia's tuition statute, only for his successor to withdraw that consent weeks later. That case illustrates that governmental litigation positions may change rapidly following changes in elected leadership, underscoring why Rule 24 permits directly affected parties to protect their own interests. Whoever occupies the Governor's office after January 2027 will owe no obligation to preserve the litigation choices of her predecessor, and KanSAT's members should not have to depend on the outcome of an election to preserve their interests. *See WildEarth Guardians*, 573 F.3d at 997 (granting intervention because "government policy may shift").

Because KanSAT has met each requirement under Fed. R. Civ. P. 24(a), KanSAT respectfully requests that the Court grant intervention as of right.

**B. Permissive Intervention**

Should the Court determine that KanSAT is not entitled to intervene as a matter of right, KanSAT asks the Court to exercise its discretion to allow permissive intervention under Fed. R. Civ. P. 24(b). To intervene permissively, a proposed-intervenor must establish that "(i) the

application to intervene is timely; (ii) the applicant's claim or defense and the main action have a question of law or fact in common; and (iii) intervention will not unduly delay or prejudice the adjudication of the original parties' rights." *Forest Guardians*, 2004 WL 3426413, at *10–11.

KanSAT's claims and defenses share many questions of law and fact with the action as a whole. Indeed, KanSAT seeks to litigate the precise legal question presented by the Complaint— whether K.S.A. 76-731a is preempted by 8 U.S.C. § 1623. KanSAT seeks to defend the challenged provision in a case in which the defendant has refused to provide adversarial briefing. Movant's interests in this action directly align with the ultimate question of law the Court must answer in this case. Further, intervention in this context will not unduly delay or prejudice the adjudication of the Parties' rights because the case is only a few days old. No scheduling order has been entered, no discovery has occurred, and intervention at this early stage will not disrupt the orderly progression of the litigation. Therefore, any prejudice claimed by the Parties pertaining to lengthening the case is of their own creation by hurrying forward a consent judgment without providing an opportunity for consideration of the interests of third parties, such as KanSAT members.

Accordingly, KanSAT requests that the Court allow permissive intervention under Fed. R. Civ. P. 24(b).

## IV.    CONCLUSION

For the foregoing reasons, KanSAT respectfully requests that the Court grant its motion to intervene as of right under Rule 24(a). Alternatively, because KanSAT's defenses present common questions of law and fact, and its participation will assist the Court in resolving this important question of federal law, the Court should grant permissive intervention under Rule 24(b).

///

14

Dated: July 1, 2026

Respectfully submitted,

_/s/ Jessica Swonger_
Jessica Swonger
Staff Attorney
**American Civil Liberties Union Foundation of Kansas**
Jessica Swonger #31215
P.O. Box 13048
Overland Park, KS 66282
Phone: (913) 314-2161
jswonger@aclukansas.org


/s/ Fernando Nuñez
Thomas A. Saenz (California Bar No. 159430)*
Fernando Nuñez (California Bar No. 327390)*
Luis L. Lozada (California Bar No. 344357)*
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
　　　fnunez@maldef.org
　　　llozada@maldef.org

*Attorneys for Kansas Students for Affordable Tuition*

*\*Pro Hac Vice Forthcoming*

15

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to registered participants as identified in the Notice of Electronic Filing.

*/s/ Jessica Swonger*

Jessica Swonger