**IN THE DISTRICT COURT FOR**
**THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

    Plaintiff,

      v.

STATE OF KANSAS,

    Defendant.

Case No. 5:26-cv-04066

**BRIEF IN SUPPORT OF MOTION TO DISMISS**

Federal law prohibits a state from offering a postsecondary education benefit to an unlawful immigrant on the basis of residence in the state, unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident. 8 U.S.C. § 1623. Two things are clear: 1) a state cannot provide a postsecondary education benefit to an unlawful immigrant "on the basis of residence" in the state; 2) unless, if a state does provide such a benefit, it must also be available to a United States citizen or national who is not a resident of that state. DOJ claims Kansas law, K.S.A. 76-731a, regarding the provision of in-state tuition to certain individuals violates this federal law.

DOJ is wrong twice-over. First, K.S.A. 76-731a confers an in-state tuition benefit on certain individuals on the basis of education requirements, not Kansas residency. The State statute requires Kansas high school attendance and either graduation from a Kansas high school or GED certificate issued in Kansas, and completing some paperwork. There is simply no residency requirement. Second, under Kansas law, it is possible for "a citizen or national of the

1

United States" to be eligible for in-state tuition "without regard to whether the citizen or national is" a Kansas resident. As a result, K.S.A. 76-731a is not conflict with Section 1623, and DOJ's claim of federal preemption fails as a matter of law. DOJ's complaint should be dismissed with prejudice.

## I.    DOJ's legal conclusions should not be accepted.

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A court must accept as true all well-pleaded allegations in the complaint, but it does not accept legal conclusions or conclusory statements. *Id.* at 678-79.

Indeed, "[a]llegations that are legal conclusions and therefore need not be accepted as true are those that allege no facts but instead allege the ultimate legal conclusion necessary for the plaintiff to recover on its claim." *Rezac Livestock Commission Company, Inc. v. Pinnacle Bank*, 255 F. Supp.3d 1150, 1161 (D. Kan. 2017). DOJ's sole claim for relief is purely legal, alleging that 8 U.S.C. § 1623 preempts K.S.A. 76-731a. (ECF 1, ¶ 57-61). This Court need not, and should not, accept DOJ's legal conclusions on this claim.

## II.    Background

In 2004, the Kansas Legislature passed Substitute for House Bill No. 2145, L. 2004, ch. 172, § 1, codified at K.S.A. 76-731a. That law remains unchanged. Congress likewise has not amended 8 U.S.C. § 1623 since Kansas enacted K.S.A. 76-731a.

After K.S.A. 76-731a took effect, now-Kansas Attorney General Kobach, acting as then-plaintiffs' private counsel, filed a complaint in *Day v. Sebelius*, No. 5:04-CV-4085, 376 F. Supp. 2d 1022, ECF 1, ¶ 57 (D. Kan. July 19, 2004), similarly alleging HB 2145 (K.S.A. 76-731a)

2

violates Section 1623. The court ultimately found that plaintiffs lacked standing to bring their equal protection and statutory preemption claims. *Day v. Bond*, 500 F.3d 1127, 1130 (10th Cir. 2007). *Day* is significant here because the defendants raised arguments regarding lack of preemption and presented facts highlighting how a nonresident American citizen or national could receive in-state tuition, to Kobach and the court:

> "Another example involves a student who, after high school, lives in California for several years. She then moves to Colorado to start a business. After being there several months, the student decided to attend Kansas State University. California no longer treats the student as a resident, because she moved to Colorado. Because she has been in Colorado for less than a year, however, Colorado will not classify her as a resident for tuition purposes. Under this scenario, assuming the student graduated from a high school in Kansas and attended a Kansas high school three years or more, I would classify this person as a Kansas resident for tuition purposes because of HB 2145 [K.S.A. 76-731a]. Prior to HB 2145, this student would have paid out-of-state-tuition" [1] *Day*, No. 5:04-CV-4085, ECF 44-2, ¶ 7.

These factual circumstances remain possible today because neither the federal nor state statutes have changed since *Day*. Kansas Attorney General Kobach knows this and should utilize it to defend Kansas law and defeat DOJ's case. His failure to mount a good-faith defense is an inexcusable abdication of his responsibility to defend a duly enacted Kansas law.[2] In 2004 and still in 2026, Kansas residency is not the touchstone for a student to qualify for in-state tuition under K.S.A. 76-731a. Educational requirements are.

---

[1] In *Day*, the Kansas State University Director of Admissions wrote a declaration that stated, "based on my experience, HB 2145 will benefit United States citizens in the same way it benefits undocumented alien students." *Day*, No. 5:04-CV-4085, ECF 44-2, ¶ 5. The Director noted K.S.A. 76-731a "regularly" grants resident tuition to nonresident American citizens or nationals, not on the basis of residency, but rather on the basis of meeting K.S.A. 76-731a's high school attendance and graduation requirements. *Id*.

[2] Jason Alatidd, *Laura Kelly wants to defend Kansas law vs. DOJ after Kris Kobach won't*, The Topeka-Capital Journal (June 25, 2026) ("Playing defense is the number one job of the attorney general's office . . . You defend every single statute, no matter what, that the Legislature passes, Kobach said.").

**III.    K.S.A. 76-731a is not preempted by 8 U.S.C. § 1623.**

The Federal District Court for the District of Minnesota recently addressed the issue of whether Section 1623 preempts a similar Minnesota in-state tuition statute in *United States v. Walz,* No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026). The court noted Section 1623's plain text requires two things to be true for the federal law to preempt the state's in-state tuition law: [3]

> "[I]t must conflict with both clauses of federal law by providing for eligibility on the basis of residence in Minnesota *and* by excluding non-Minnesotans on the same grounds. So, if either of the clauses do not preempt the Resident Tuition Statute, then the Minnesota law is not preempted, and dismissal of the action is required." *Walz,* 2026 WL 851231 at *7.

DOJ agrees that both clauses must be satisfied in the present matter for preemption to occur. [4] "On the basis" of residency in this context means "but for" residency. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 335 (2020) (noting that "on the basis of" is "strongly suggestive of a but-for causation standard"); *Walz*, 2026 WL 851231, at *8 (interpreting "on the basis" of residence in Section 1623 as a "but for" residency test).

Thus, there are two very simple tests to determine whether Section 1623 preempts K.S.A. 76-731a. First, could a student qualify for in-state tuition if they met every statutory requirement while living outside of Kansas? If yes, Kansas residency is not a but-for cause of receiving in-state tuition ("on the basis of residence") and there is no preemption. Here, the answer is yes; Kansas residency is neither necessary nor sufficient under K.S.A. 76-731a to receive in-state tuition.

---

[3] DOJ conceded in *Walz* litigation that a plain text analysis of "on the basis of residence" is appropriate in this context. 2026 WL 851231, at *8 ("The Court starts with the statutory interpretation of 'on the basis of residence,' which *both parties agree* can be interpreted based on its plain language.") (emphasis added).
[4] DOJ asserts, "a state may not offer in-state tuition (or "resident tuition") benefits to illegal aliens present in the United States based on their residence in the state, *if* those same benefits are denied to American citizens or nationals from other states." ECF 1, ¶ 15 (emphasis added).

Second, can any nonresident American citizen or national qualify for the same benefit if they meet the education requirements? If yes, Kansas law does not deny in-state tuition to American citizens or nationals based solely on their non-residency. The answer here is also yes; nonresident American citizens or nationals can meet K.S.A. 76-731a's eligibility standards to receive in-state tuition. Only one test needs to be met for the Kansas law to be constitutional since Section 1623's two clauses must both be satisfied. Accordingly, Section 1623 does not preempt it, and DOJ's case fails as matter of law.

### A. K.S.A. 76-731a does not require students to hold Kansas residency to qualify for in-state tuition.

The operative test of whether an "individual" qualifies for in-state tuition requires a student who:

> (A) has attended an accredited Kansas high school for three or more years,
> (B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and
> (C) in the case of a person without lawful immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so
> . . . .
> or, in the case of a person with a legal, nonpermanent immigration status, has filed with the postsecondary educational institution an affidavit stating that such person has filed an application to begin the process for citizenship of the United States or will file such application as soon as such person is eligible to do so. K.S.A. 76-731a(b)(2).

There is no mention in this operative test of a residency requirement. What matters under Kansas law is where the student learned and graduated, not where the student lived. The statutory language is plain and unambiguous. Courts should not read words into a statute that are not there. *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020); *State v. Ayers*, 309 Kan. 162, 163-64 (2019). This Court should not read "residency" into K.S.A. 76-731a's operative test.

There is a key distinction between *qualifying* for in-state tuition "on the basis of" residency and *receiving* resident tuition. DOJ and Attorney General Kobach conflate this difference. (ECF, 1, ¶ 46). K.S.A. 76-731a's operative test—the requirements that must be met for an "individual" to qualify for in-state tuition eligibility—is distinct from the effect of completing the test: "shall be deemed to be a resident of Kansas for the purpose of tuition and fees for attendance . . ." K.S.A. 76-731a(a). This "deem[ing]" is not actual residency sufficient to satisfy the required "but for" test for preemption. This is because being "deemed to be a resident" is a legal fiction, where the actual "but for" conditions are completion of education requirements. The operative eligibility criteria, not the resulting legal designation, controls the preemption analysis.

And similarly, the statute's title—"Certain persons without lawful immigration status deemed residents for purpose of tuition and fees"—is of no legal importance to whether the in-state tuition operative test requires Kansas residency. *Bhd. of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29 (1947) ("the title of a statute and the heading of a section cannot limit the plain meaning of the text," and "cannot undo or limit what the text makes plain."); ( ECF 1, ¶ 45).

### 1. K.S.A. 76-731a's operative test is not a proxy for residency.

The cornerstone of DOJ's residency argument is that "high school attendance and graduation in Kansas [i]s a proxy for residence." (ECF 1, ¶ 54). What it wrongly *assumes* is that attending/graduating from a high school in Kansas always = Kansas residency. That is an untrue extratextual assumption. *See Bostock v. Clayton County, Georgia*, 590 U.S. 644, 653 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its

benefit."). The Court's inquiry therefore ends with the statutory text. Indeed, DOJ's argument is legally wrong because K.S.A. 72-3128 and K.S.A. 72-3125 permit non-Kansas students to attend a public Kansas high school. *See also* Kansas City Kansas Public Schools, *Open Enrollment*, https://www.kckschools.org/register/open-enrollment (showing Kansas City, Kansas public schools accept nonresident students).

Despite the plain statutory text not mentioning residency, DOJ made the same assumption or "proxy" argument in *Walz*, and the court rejected it under a but-for test. *Walz*, 2026 WL 851231, at *16-17 (noting DOJ "agrees" Section 1623's "on the basis" language requires a but-for test); (ECF 1, ¶ 54-55).

For residency purposes, K.S.A. 76-731a does not ask students classic residency inquiries: Where is your principal dwelling? Where are your parents domiciled? What is your permanent address? Rather, the statute turns on whether students have met high school educational requirements. If a student is established as an "individual," that student is later deemed a "resident" solely for the benefit of in-state tuition. Students are not legally considered Kansas residents (or, domiciled) for purposes like taxes, driver's licenses, concealed firearm permits, hunting, and fishing permits, etc. *See* K.S.A. 79-32,109(b); K.A.R. 92-12-4a(b)(7) (listing 19 factors deciding whether an individual is a "Kansas resident"); K.S.A. 8-234a(a)(2); K.S.A. 75-7c04; K.S.A. 32-701(p). Some—but not all—require a form of residency.

> **2. Outcomes in Texas, Nebraska, Kentucky, and Oklahoma regarding federal preemption of in-state tuition statutes are irrelevant here.**

DOJ touts hastily rushed "wins" in four other states where "similar" laws were enjoined. (ECF 1, ¶ 48-51). It is correct Texas, Oklahoma, Kentucky, and Nebraska courts have entered

consent judgements based on respective state statutes, but those laws are far different from

K.S.A. 76-731a. In Texas, the statute expressly requires residency:

> "Section 54.051(m) provides that '[u]nless the *student establishes residency* or is entitled or permitted to pay resident tuition as provided by this subchapter, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students.'" *United States v. Texas*, 350 F.R.D. 74, 79-81 (N.D. Tex. 2025) (emphasis added).

In Kentucky, regulation 13 KAR 2:045, Section 8 *repeatedly* states Kentucky "residency" or

"domicile" is required for an unlawful immigrant to be eligible for in-state tuition. *See* 13 KAR

2:045, Section 8(4). In Nebraska, the district court judge stated the dispositive statute "expressly

makes eligibility for in-state tuition depend on *residence* in the state rather than citizenship."

*United States v. Nebraska*, ---F.Supp.3d--- 2026 WL 1584862, at *22 (2026) (emphasis added);

Neb. Rev. Stat. § 85-502(1) ("bona fide intention of making this state his or her permanent

residence.")

And in Oklahoma, to be eligible for in-state tuition, the student must have graduated from

an Oklahoma high school and "[r]esided in the state." Okla. Stat., T. 70, § 3242. Oklahoma State

Regents for Higher Education Policy § 3.18.6 also required undocumented students to "[r]eside[]

in this state with a parent or legal guardian while attending classes at an Oklahoma public or

private high school in this state for at least two (2) years prior to graduation." The decisions in

these states turned on materially different statutory language expressly conditioning eligibility on

residence or domicile. K.S.A. 76-731a does not require residency like these states do. The

statutes and outcomes in these other states are not as helpful as Minnesota's pertinent statute,

where there is greater similarity to Kansas law.

8

### 3. K.S.A. 76-731a(c)(2) does not require an eligible student to hold Kansas <u>residency</u> simply because they do not qualify for <u>resident</u> tuition in another state.

DOJ argues that "[b]y requiring students to be ineligible for resident tuition in another state," Subsection (c)(2) "requires a student to reside in Kansas to be eligible for resident tuition in Kansas." (ECF 1, ¶ 33). This is wrong. K.S.A. 76-731a(c)(2) provides that the section affording in-state tuition to individuals who meet the educational requirements does not apply to "any individual who . . . at the time of enrollment, is eligible to enroll in a public postsecondary educational institution located in another state upon payment of fees and tuition required of residents of such state." This subsection makes no claim that Kansas residency is necessary. It solely mandates that the student cannot be eligible for Kansas in-state tuition if they are eligible for in-state tuition in another state.

DOJ's argument is that a student must live somewhere so they must qualify for in-state tuition somewhere "on the basis of" residency. Thus, if they are ineligible for in-state tuition in another state, they must be a Kansas resident to qualify for in-state tuition in Kansas. Wrong. There are circumstances where students are ineligible for in-state tuition anywhere. This reality must be acknowledged.

K.S.A. 76-731a affects both traditional and nontraditional students. That is, there are students who go straight from attending and graduating from a Kansas high school to a Kansas higher education institution, but there are also students who attend and graduate from a Kansas high school and then join the military, move out-of-state, or have other life circumstances such that they meet K.S.A. 76-731a's education requirements, but are not Kansas residents. While a person may possess a residency/domicile for purposes of taxes, personal jurisdiction, etc., that does not

9

unequivocally mean that same person inherently holds residency for in-state tuition purposes. For example:

- A student living in Kansas City, Missouri, could attend a private, but accredited Kansas high school for three years, graduate from that high school, apply to a Kansas post-secondary educational institution, and complete the required affidavit. If the student is undocumented and has no student visa, that student, although a resident of Missouri, would not be eligible to enroll in any Missouri, or other, public post-secondary educational institution because Missouri has no statute comparable to K.S.A. 76-731a.

- A student could attend a Kansas high school for four years, graduate, move to Colorado two weeks after graduation, and then enroll at Kansas State University. Colorado generally requires approximately one year of residency before granting resident tuition. So the student would not qualify for Colorado resident tuition, and the student is no longer a Kansas resident or holds Kansas residency. Colo. Rev. Stat. Ann. 23-7-103(2)(m)(I).

- A student, living with non-resident military parents in Kansas, could attend a Kansas high school for three years and graduate. The parents then leave Kansas to live elsewhere. The student is not eligible for resident tuition elsewhere. The student has no intent to establish Kansas residency. Despite not being a resident of Kansas or holding Kansas residency, the student would be eligible under K.S.A. 76-731a to attend a Kansas public post-secondary institution.

These examples continue to demonstrate that education—not residence—drives eligibility. The existence of even one circumstance in which a student qualifies without Kansas residency demonstrates that residence is not a necessary statutory prerequisite.

### B. Non-Kansas residents—who are not immigrants—qualify for in-state tuition under K.S.A. 76-731a.

The second hurdle DOJ and Attorney General Kobach must overcome to successfully argue Section 1623 preempts K.S.A. 76-731a is whether "a citizen or national of the United States is eligible for such a benefit (if no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a); *Walz*, 2026 WL 851231, at *7, 10-11 ("So, if either of the clauses do not preempt the Resident Tuition Statute, then the Minnesota law is not preempted, and dismissal of the action is required."). So even if this Court

10

agrees with DOJ and Attorney General Kobach that high school educational requirements presumptively require residency, their claims still fail because a non-Kansas resident can qualify for in-state tuition under K.S.A. 76-731a and other statutes and regulations. (ECF, 1, ¶ 46).

Critically, Section 1623's "*a* citizen or national of the United States" means one or any nonresident may qualify for in-state tuition. The word "a" is "used before a noun to refer to a single thing or person that has not been mentioned before, especially when you are not referring to a particular thing or person." Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/a. This means that so long as "a [nonresident] citizen or national"—not all nonresident citizens or nationals—can qualify under K.S.A. 76-731a, then Section 1623 does not preempt.

The plain meaning of "a citizen or national of the United States" is "any citizen or national of the United States." The Eleventh Circuit has noted, "[i]n common terms, when 'a' or 'an' is followed by a restrictive clause or modifier, this typically signals that the article is being used as a synonym for either 'any' or 'one.'" *U.S. v. Alabama*, 778 F.3d 926 (11th Cir. 2015); *Johnson v. Barr*, 967 F.3d 1103, 1110 (10th Cir. 2020) ("Use of the indefinite article 'a,' however, refers to non-specific nouns."). Congress meant any or one U.S. citizen must be eligible for Section 1623's preclusive effect, not all U.S. citizens. Congress knows how to use "all" when it intends universality. *See e.g.*, *U.S. v. Monsanto*, 491 U.S. 600, 607 (1989) (describing Congress's use of "all" in 21 U.S.C. 853, a criminal forfeiture statute, as a strong word that broadly defines the scope of what property is to be forfeited); *Edwards v. McMahon*, 834 F.2d 796, 799 (9th Cir. 1987) ("'All' means every"). The complaint, therefore, is wrong to state Section 1623 requires "all American citizens or nationals" to be eligible for in-state tuition if Kansas offers in-state tuition to certain unlawful immigrants. (ECF 1, ¶ 16). Reading "a

11

citizen" to mean "all citizens" would impermissibly rewrite the statute and eliminate Congress's deliberate choice of the indefinite article.

As described in the examples listed previously, K.S.A. 76-731a can provide in-state tuition to those who hold residency in another state but simultaneously do not qualify for in-state tuition in another state. It rewards these students who attended and either graduated from a Kansas high school or received a GED certificate issued in Kansas, and it does not displace them to an out-of-state tuition category simply because they do not presently possess Kansas residency.

Putting aside K.S.A. 76-731a, there's a plethora of ways a nonresident may qualify for in-state tuition in Kansas. If a state offers in-state tuition eligibility to an unlawful immigrant, "a" nonresident American citizen or national must still be eligible for the same benefit, which is in-state tuition. Section 1623 does not require that nonresident American citizens or nationals receiving the in-state tuition "benefit" be derived from the same law that grants in-state tuition to certain qualifying unlawful immigrants. In other words, although K.S.A. 76-731a permits nonresident American citizens or nationals, unlawful immigrants, and lawful immigrants to be eligible for in-state tuition under educational requirements, other Kansas statutory and regulatory law may do the same, conferring "such a benefit." Both would independently satisfy Section 1623's requirement that a nonresident American citizen or national may be eligible for in-state tuition.

K.S.A. 76-730 mandates the state board of regents to "adopt rules and regulations prescribing criteria or guidelines for determination of residence of persons enrolling at the state educational institutions." The Kansas Board of Regents (KBOR) grants in-state tuition to nonresidents in a variety of circumstances. In 2025 alone, Kansas granted 4,363 students

"Resident by Exception" tuition status because "[t]he student is not a domiciliary resident of Kansas at the beginning of the reporting term but is classified as such due to an allowable exception per statute." https://data.kansasregents.gov/ (Kansas Higher Education Statistics (KHEStats/Enrollment/Residency; Glossary and Notes).

For example, K.S.A. 76-719c provides a nonresident fellow may receive in-state tuition at chancellor/president's discretion. K.A.R. 88-3-8a, a KBOR regulation, permits a nonresident student enrolled at a state educational institution to be in-state tuition eligible if they are "currently serving in the armed forces." These provisions independently demonstrate that Kansas has long provided resident tuition classifications to certain nonresidents, confirming that "resident tuition" and "Kansas residency" are not synonymous under Kansas law.

In other circumstances, the Kansas Legislature has granted in-state tuition status to nonresidents. For example, it enacted a provision to allow certain nonresident tribal members eligibility for in-state tuition. Senate Bill No. 125, Sec. 188(e)(1), L. 2026. Students who have previously attended or are attending Haskell Indian Nations University qualify for in-state tuition. K.S.A. 76-731.

The University of Kansas's architecture and architectural engineering programs have an in-state tuition reciprocity agreement with the School of Dentistry at the University of Missouri-Kansas City and the College of Optometry at the University of Missouri-St. Louis. Kansas-Missouri Reciprocal Tuition Agreement, https://services.ku.edu/TDClient/818/Portal/KB/Article/21273/Kansas-Missouri-Reciprocal-Tuition-Agreement. *See Walz*, 2026 WL 851231, ECF 1 at p. 9 (DOJ admitting that Minnesota permits nonresidents to qualify for in-state tuition under reciprocity agreements); K.S.A. 74-3221.

13

In sum, there are numerous examples where a state statute, KBOR regulation, or colleges and universities in Kansas offer nonresidents in-state tuition rates. Certainly, not all Americans will qualify for the Haskell University exception or a reciprocal agreement. But that does not matter. Kansas law need not grant in-state tuition status to all U.S. citizens for it to offer in-state tuition to certain unlawful immigrants. Such a reading of Section 1623 would extinguish the distinction between resident/nonresident tuition rates, leading to an absurd result.

### C. This Court must reject the DOJ's complaint and its proposed consent judgment, at least in part, because K.S.A. 76-731a permits in-state tuition for students with "*legal*, nonpermanent immigration status."

DOJ's complaint never meaningfully addresses the statute's separate treatment of individuals with lawful, nonpermanent immigration status. That omission is significant because Section 1623 applies only to those "not lawfully present in the United States." But K.S.A. 76-731a(b)(2)(C) mentions two types of immigrants: "a person without lawful immigration status" and "a person with a legal, nonpermanent immigrant status." A person with a legal, nonpermanent immigrant status as described by K.S.A. 76-731a(b)(2)(C) ≠ a person who is unlawfully present in the United States under Section 1623. And DOJ dangerously seeks to invalidate an entire Kansas law where only a part of it is alleged by DOJ to be in conflict with federal law.

The crux of DOJ's preemption argument is that: "Section 76-731a violates Federal immigration law because it makes *illegal aliens* eligible for post-secondary education benefits on the basis of residence but does not make U.S. citizens eligible for those same benefits without regard to residence." (ECF 1, ¶ 59). Yet a portion of K.S.A. 76-731a(b)(2)(C) plainly and unambiguously applies to those lawfully present. Lawful presence is a distinct classification that "has significant legal consequences," including, for example, Social Security and Medicare

14

benefits eligibility. *Texas v. United States*, 809 F.3d 134, 148 (5th Cir. 2015), *aff'd by an equally divided Court*, 579 U.S. 547 (2016).

It is wrong for DOJ and Attorney General Kobach to seek preemption of the entirety of K.S.A. 76-731a. (ECF 1, ¶ 60-62; 3,¶ 7-9). Seeking complete preemption consciously disregards an important group of immigrants—with a *legal*, nonpermanent immigration status—and treats them with irrelevancy. If not granted in full, this Court should grant in part this motion to dismiss because a portion of K.S.A. 76-731a applies to <u>lawful</u> immigrants.

Intervenor Governor Kelly respectfully asks this Court grant her Motion to Dismiss.


Respectfully submitted this 2nd day of July, 2026.

*/s/ Justin H. Whitten*
Justin H. Whitten, SC#28344
*Chief Counsel*
Ashley Stites-Hubbard, SC#27629
*Deputy Chief Counsel*
Emily Depew, SC#30147
*Associate Counsel*
Kansas Office of the Governor
Statehouse, 300 SW 10th Ave Room 541-E
Topeka, KS 66612
Phone: (785) 368-8763
Justin.H.Whitten@ks.gov
Ashley.stiteshubbard@ks.gov
Emily.Depew@ks.gov
*Attorneys for Proposed Intervenor, Laura*
*Kelly, Governor State of Kansas*

15