**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>STATE OF KANSAS,<br><br>*Defendant.* | No. 5:26-cv-4066 |

**RESPONSE TO GOVERNOR KELLY'S MOTION TO INTERVENE**

It is well-established that Kansas law expressly vests the Attorney General with exclusive control over the State's litigation in federal court. Governor Kelly is not authorized by law to second-guess the Attorney General's legal judgment as the basis for intervention. In fact, recently in Kansas state supreme court litigation, the Governor conceded that she was not the constitutional officer with standing to speak for the State in federal court. Because Governor Kelly is not authorized to represent the State in this Court and has no interest in this case by virtue of her office, and because this court previously held as much when Governor Sebelius asked to be dismissed from a case on the very same issue, her motion to intervene should be denied.

**I.     The Governor is not entitled to represent the State's legal interests in federal court.**

Intervention as of right should be denied because Governor Kelly lacks a direct, substantial, and legally protected interest that would be impaired or impeded by this action. *See* Fed. R. Civ. P. 24(a)(2); *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019).

Governor Kelly asserts two distinct interests: (1) the State of Kansas has an interest in defending its statutes, and she can represent the State; and (2) in her capacity as governor, she

1

has an interest in this case because the Kansas Hispanic and Latino American Affairs

Commission verbally supports the statute. Neither one establishes the direct, substantial, and

legally protected interest that could justify intervention.

### A. Governor Kelly lacks an interest because she cannot represent the State of Kansas.

The interests Governor Kelly asserts in her motion to intervene are the interests of the

State as a whole. Despite her claims to "supreme executive authority," K.S.A. 75-702

unequivocally provides exclusive authority to the attorney general to represent the State in

federal court:

> (a) The attorney general shall appear for the state, and prosecute and defend any and all actions and proceedings, civil or criminal, in the Kansas supreme court, the Kansas court of appeals *and in all federal courts*, in which the state shall be interested or a party, *and shall, when so appearing, control the state's prosecution or defense*.

(Emphases added).

If the text of K.S.A. 75-702 were not already clear, its legislative history confirms the

Attorney General's exclusive authority. The statute was amended in 2013 at the request of then-

Attorney General Derek Schmidt, who explained that the changes:

> codify the longstanding law and practice that designate the Attorney General as the state's chief legal representative in appellate and in federal proceedings and also would clarify that the Legislature intends the Attorney General to serve as the state's chief attorney *controlling the state's litigation and legal positions taken in appellate and federal court matters*.

(Emphasis added).[1] He noted the risk of the State taking conflicting positions and testified that

the "policy that the State of Kansas speaks with a single voice, through its Attorney General, in

---

[1] This testimony is available at:
https://kslegislature.gov/li_2014/b2013_14/committees/misc/ctte_s_jud_1_20130311_05_other.pdf

the federal courts, and in the state appellate courts, is wise policy and should be reaffirmed clearly in statute."

Even before the 2013 statutory amendments, it was already well-established that "[t]he attorney-general is the state's attorney in all the state's litigation in the supreme court and in the federal courts." *See, e.g.*, S.M. Brewster, *Nineteenth Biennial Report of the Attorney-General of Kansas* 3 (Sept. 1, 1914).[2] Under the Kansas Constitution, the Attorney General's "powers are as broad as the common law unless restricted or modified by statute." *State v. Finch*, 128 Kan. 665, 671, 280 P. 910 (1929). "At common law the attorney-general was the chief representative of the sovereign in the courts, and it was his duty to appear for and prosecute in behalf of the crown any matters—criminal as well as civil." *Id.* at 668 (quoting 2 Thornton on Attorneys at Law, 1131). As the chief legal representative, the attorney general "was intrusted with the management of all legal affairs and the prosecution of all suits, civil and criminal, in which the crown was interested." *Id.* at 669 (quoting 2 R.C.L. 913, 915); *see also Barati v. State*, 198 So.3d 69, 84-85 (Fla. Dist. Ct. App. 2016) ("Conducting and terminating legal actions brought in the name of and for the benefit of the State is the *sine qua non* of the State's chief legal officer. A State's chief legal officer without the authority to conduct the State's litigation would be no legal officer at all."). This included the authority to "make any disposition of the state's litigation that he deems for its best interest." *Finch*, 128 Kan. at 669 (quoting 2 Thornton on Attorneys at Law, 1160-61).

This common law authority has not been "restricted or modified by statute." *Finch*, 128 Kan. at 671. Rather, the Kansas Legislature has affirmed this authority in statute by vesting the Attorney General with exclusive control over the State's federal litigation, consistent with the Kansas Constitution.

---

[2] Available at: https://kgi.contentdm.oclc.org/digital/collection/p16884coll31/id/459/rec/1.

Governor Kelly recently attempted to dispute the Attorney General's litigation authority in an original action before the Kansas Supreme Court, but she ultimately withdrew her initial claim and acknowledged that only the attorney general may represent the State of Kansas. In fact, the Governor conceded that "she was not in fact the constitutional officer with standing to speak for the State in court" and "that role belongs to the Attorney General of Kansas." *Kelly v. Kobach*, 322 Kan. 85, 93, 586 P.3d 739 (2026).

Governor Kelly's only argument to represent the State in the case at bar is based on K.S.A. 75-108, which provides that "in case of the absence or sickness of the attorney general, or if he or she shall be in any way interested adversely to the state in any action or proceeding, the governor may employ counsel to act in his or her stead." But this argument fails as well because the Attorney General does not have an adverse interest that would implicate the statute.

The phrase "interested adversely to the state" clearly refers to a personal conflict of interest on the part of the Attorney General that would prevent him from representing the State,[3] not situations where the Attorney General represents the State and the Governor merely disagrees with his legal judgment. After all, K.S.A. 75-702 provides that the Attorney General controls the State's legal position in federal court. A legal position he asserts on behalf of the State cannot be adverse to the State—it is the State's position. Reading K.S.A. 75-108 as Governor Kelly suggests would allow her to assume control of the State's litigation anytime she has different legal views than the Attorney General, rendering K.S.A. 75-702 a nullity.

---

[3] K.S.A. 75-108's references to the attorney general's "absence or sickness" clarifies that the clause concerns situations where the attorney general is incapable of representing the State (*i.e.*, he is sick or absent, or has a conflict of interest, and thus cannot litigate).

4

The Illinois Supreme Court addressed a very similarly-worded statute in *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 372 N.E.2d 50 (1977). The statute there provided:

> Whenever the attorney general or state's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal which it is or may be his duty to prosecute or defend, the court . . . may appoint some competent attorney to prosecute or defend such cause . . . .

*Id.* at 400. The court held that the reference to the attorney general being "interested" in a case only applies to situations "where the Attorney General is interested as a private individual" or "where the Attorney General is an actual party to the action," *i.e.*, a conflict of interest. *Id.* at 400-01. Rejecting a broader reading of the term "interested," the court reasoned that the attorney general "must be able to direct the legal affairs of the State and its agencies" and that "[t]o allow the numerous State agencies the liberty to employ private counsel without the approval of the Attorney General would be to invite chaos into the area of legal representation of the State." *Id.* at 402.

Finally, Governor Kelly mistakenly conflates Article III standing with a legally-protected interest that is direct and substantial. Her purported standing does not establish a Rule 24 interest. In fact, she lacks Article III standing to intervene as a defendant. The federal government suffers an injury-in-fact because K.S.A. 76-731a is preempted by federal law. But that injury is not traceable to Governor Kelly—she has nothing to do with K.S.A. 76-731a. She does not administer or enforce it in any respect. Nor would the injury be redressable by any judgment against Governor Kelly.

This case is unlike *Berger v. N.C. State Conf. of NAACP*, 597 U.S. 179 (2022), in which North Carolina law "expressly authorized the legislative leaders to defend the State's practical interests in litigation." *Id.* at 193. The Supreme Court held that a State *may* authorize officials

other than the Attorney General to speak for the State in federal court. *Id.* at 192-93. But that

"choice belongs to the sovereign State." *Id.*  Ultimately, the question is what state law provides.

*See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663-64 (2019) (noting that "Virginia

has . . . chosen to speak as a sovereign entity with a single voice" through its attorney general, a

"choice [that] belongs to Virginia"). In Kansas, the law does the opposite of what the North

Carolina law did. Kansas law vests the power to litigate in federal court *exclusively* in the

attorney general.

Here, K.S.A. 75-702 is clear. The Attorney General has exclusive authority to represent

the State of Kansas and its interests in federal court. Governor Kelly has no authority that

justifies her intervening and asserting State interests as her own.

### B. Governor Kelly lacks any legal interest of her own—as distinguished from the interests of the State —that entitle her to intervene.

Attorney General Kobach has always recognized that in certain situations, the Governor

may litigate on her own behalf when a case concerns a narrow injury that is specific to her

constitutional office.[4] But those injuries must be distinguished from injuries to the State at large.

Merely citing her "supreme executive power" and responsibility for the enforcement of some

state laws (but not this one) is insufficient, as that would make her the proper legal representative

whenever *any* state law or policy is at issue, a role assigned to the Attorney General.

While Governor Kelly "concedes that she largely cannot represent the State," Motion to

Intervene at 7, that is precisely what she is trying to do. In her recent original action before the

---

[4] Governor Kelly's claim that the Attorney General "agrees she can sue on behalf of her office, her executive interests, and the executive agencies that she oversees," Motion to Intervene at 7, overstates the Attorney General's concession. As the Kansas Supreme Court noted, the Attorney General objected to any "characterization of the legal interests of the Office of Governor that is so broad it swallows the interests of Kansas as a whole," *Kelly*, 322 Kan. at 94, which is what Governor Kelly is attempting to do here.

Kansas Supreme Court, "Governor Kelly agree[d] that if the real party in interest in any litigation is the State of Kansas, the Attorney General is the constitutional officer charged with the authority and responsibility to represent the State." *Kelly*, 322 Kan. at 96; *see also id.* at 95 ("[T]he parties agree that, in Kansas, the Attorney General controls litigation when the State of Kansas is the real party in interest."). Just because Governor Kelly is using her own name and title, rather than the name of the State, does not make the interests she asserts her own. They remain the interests of the State.

Indeed, Governor Kelly's own briefing betrays the fact that she is attempting to represent the State. To support her asserted interests, she cites *Maryland v. King*, 567 U.S. 1301, 1303 (2012), which held that "anytime a State" (a term Governor Kelly misleadingly omits in favor of the more generic term "government") "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Motion to Intervene at 4. On the next page, she refers to "[t]he State's injury." *Id.* at 5. She argues that intervention should be allowed because otherwise "the State of Kansas' interests will be unrepresented and potentially injured," *id.* at 9, and claims that the State of Kansas's interests are inadequately represented. *Id.* at 10. Governor Kelly cannot get around the fact that she is trying to represent the State and its interests by recharacterizing the State's interests as her own.

Governor Kelly, in her capacity as governor, has no interest in K.S.A. 76-731a. She plays no role in administering its provisions. That statute governs residency classifications for purposes of tuition at "postsecondary educational institution[s]." But the Kansas Constitution vests the Kansas Board of Regents—not the Governor—with control and supervision of public institutions of higher education. *See* Kan. Const. art. VI, § 2. The Governor also does not oversee non-Regents postsecondary institutions. And the Governor plays absolutely no role in setting or

7

administering tuition rates. The Governor's only interest in K.S.A. 76-731a is the fact that it is a state law being challenged, which is the interest of the State itself.

Governor Kelly argues that she has a legally cognizable interest because the Kansas Hispanic and Latino American Affairs Commission, which is part of her office, submitted testimony in opposition to a bill that would have repealed K.S.A. 76-731a. But that Commission has nothing to do with K.S.A. 76-731a and does not in any way administer tuition at postsecondary educational institutions. Just because the Commission has an opinion on the law, that does not create a legally protected interest, any more than a private individual's opinion on a law establishes a legally protected interest.

## II. Governor Kelly has not demonstrated that the State is inadequately represented.

Intervention should also be denied because the Attorney General adequately represents the State's interests in this case. The Governor should not be allowed to intervene to represent those same interests. There is no basis for providing a "state—or any party for that matter—the right to have two separate, independent representatives within the same suit." *See Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 799-803 (7th Cir. 2019) (declining to allow intervention by the Wisconsin Legislature on behalf of the State of Wisconsin, which was already adequately represented by its Attorney General); *Cooper v. Newsom*, 13 F.4th 857, 865 (9th Cir. 2021) (declining to allow district attorneys to intervene in order to represent the interests of the State of California when the State was already represented). The Governor's disagreement with the Attorney General is insufficient to conclude that Kansas is not adequately represented. *See Saldano v. Roach*, 363 F.3d 545, 553-56 (5th Cir. 2004) (holding that the Attorney General adequately represented the State of Texas "even though the Attorney General and the District Attorney might choose to vindicate the State's interest in different ways").

Attorney General Kobach acted in the State's interests in signing the joint motion for a consent judgment. Litigants frequently settle cases when doing so is legally or factually necessary and is therefore in their best interests. The decision whether to resolve a case on behalf of the State of Kansas (or to seek further review in the event of an unfavorable decision) is a strategic decision that calls for the exercise of the Attorney General's legal judgment. Here, Attorney General Kobach has determined that K.S.A. 76-731a is in direct conflict with federal law and is legally indefensible. Thus, to attempt to defend it would be a waste of the State's resources and contrary to the State's interests. Further, as an officer of the court and a state official who has sworn to uphold the U.S. Constitution, it is entirely proper for the Attorney General to decline to defend a law that so blatantly violates the Supremacy Clause.

The Attorney General's decision to settle this lawsuit does not result in a lack of standing, as the Governor argues. There is an injury-in-fact to the federal government because K.S.A. 76-731a is preempted by federal law. That injury is traceable to the State of Kansas, and it is redressable by this Court through the proposed consent judgment. Attorney General Kobach's decision to redress the constitutional injury—rather than futilely fight to continue committing it—does not deprive this Court of jurisdiction or create a springing right to action by the Governor.

Governor Kelly attempts to second-guess the Attorney General's legal conclusion that K.S.A. 76-731a is unconstitutional by pointing to the district court decision in *United States v. Walz*, No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026), which rejected a preemption challenge to Minnesota's in-state tuition law. The Governor ignores several other recent cases where statutes similar to Kansas in other states have been ruled unconstitutional. *See* Report and Recommendation, *United States v. Oklahoma*, No. 25-cv-265 (E.D. Okla. Aug. 7, 2025), Dkt.

9

No. 11; Order and Final Judgment, *United States v. Texas*, No. 7:25-cv-55 (N.D. Tex., June 4, 2025), Dkt. No. 8; Consent Order and Final Judgment, *United States v. Nebraska*, No. 26-cv-172 (D. Neb., June 3, 2026), Dkt. No. 50; Opinion & Order, *United States v. Kentucky Council on Postsecondary Education, et al.*, No. 25-cv-28 (E.D. Ken. March 31, 2026), Dkt. No. 57.

Governor Kelly is not authorized to usurp the Attorney General's role as the chief law enforcement officer of the State by questioning his good-faith (and correct) legal analysis. In any event, the Governor is evidently unaware that the Minnesota law at issue in *Walz* was decisively different than Kansas's in at least two ways. First, K.S.A. 76-731a(a) "deem[s]" illegal aliens "to be . . . resident[s] of Kansas" solely for making them eligible for postsecondary education benefits. Second, under K.S.A. 76-731a(c)(2), an alien who is eligible for fees and tuition for "residents" of another State is ineligible for in-state tuition in Kansas. These provisions directly contravene 8 U.S.C. § 1623 by operating on the basis of residence. Minnesota's law lacks both of these provisions, *Walz*, 2026 WL 851231 at *1-2, so the district court's decision in *Walz* that the Minnesota law does not determine in-state tuition eligibility on the basis of "residence" is not on point.

For the reasons explained in the federal government's complaint and in Attorney General Opinion 2026-5, any attempt to defend K.S.A. 76-731a would be futile. The statute clearly violates federal law. This Court has previously recognized the futility of a proposed intervenor's arguments as a basis for denying intervention, *Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, 2008 WL 2066993 at *4 & n.28 (D. Kan. 2008) (unpublished), and it should reject Governor Kelly's attempt to intervene here for that reason too.

### III.     The Court should deny permissive intervention.

Governor Kelly's request for permissive intervention should be denied because she lacks a common claim or defense under Rule 24, and her intervention delays the administration of justice. "The grant of permissive intervention lies within the discretion of the district court," *Kane Cnty., Utah v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010), and that discretion should not be used to allow individuals to speak for the State who lack authority to do so. Of particular importance here is the fact that the Governor is completely contradicting the statements made to this Court by the governor's office 22 years ago regarding the same statute.

Permissive intervention requires that an intervenor have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). While Governor Kelly wishes to defend K.S.A. 76-731a, she is not a proper party to do so. Indeed, this Court has already held as much. In *Day v. Sebelius*, 376 F. Supp. 2d 1022 (D. Kan. 2005), plaintiffs challenging K.S.A. 76-731a named Governor Sebelius as one of the defendants. Governor Sebelius moved to dismiss, claiming that she was not a proper party because "the Governor has no connection with the enforcement of [K.S.A. 75-731a]." *See* Memorandum in Support of Defendants' Motion to Dismiss, *Day v. Sebelius*, No. 5:04-cv-04085, 2005 WL 1130507 at 40-44. She explained:

> The Board of Regents, not the Governor, is responsible to "fix tuition, fees and charges to be collected by each state educational institution." K.S.A. 76-719. . . .
>
> Nowhere does Kansas law assign responsibility to the Governor for any of these tasks, and nowhere in HB 2145 is the Governor mentioned. To be properly included as a defendant, the Governor *"must have some connection with the enforcement of the act."* [*Ex parte* Young, 209 U.S. 123, 157 (1908)]. Because she does not have such a connection, the Court should dismiss the Governor from this case.

*Id.* ("Including the Governor in this case is apparently only designed to target the State of Kansas . . . ."). This Court agreed, noting that "[u]nder Kansas law, the Governor has no involvement with the enforcement of K.S.A. 76-731a." *Day*, 376 F. Supp. 2d at 1031. Governor Kelly should not be allowed to inflict whiplash on the Court by now claiming that she is a proper defendant.

The Court in *Day* recognized that when a state officer has no connection with the enforcement of a challenged law, making that officer a party defendant "is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157). Governor Kelly's attempt to insert herself into this case, when she has no connection with the administration of K.S.A. 76-731a and is not authorized by Kansas law, is nothing more than an impermissible attempt to appear on behalf of the State.

Governor Kelly does not mention Rule 24(b)(2), which allows permissive intervention by a governmental officer or agency *only* when the statute or executive order at issue is "administered by the officer or agency." K.S.A. 76-731a is not administered by Governor Kelly, so she is not entitled to intervene under Rule 24(b)(2)—as she apparently recognizes in declining to rely on that provision. Given that subsection (b)(2) of Fed. R. Civ. P. 24 specifically governs intervention by a government officer or agency, subsection (b)(1) should not be read to authorize intervention by state officers who have no connection to the challenged statute unless that officer represents the State itself, which Governor Kelly concedes she cannot do.

Permissive intervention should also be denied because intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The existing parties have agreed to a consent judgment ensuring that Kansas law confirms to the U.S. Constitution, and intervention would unduly delay entry of that judgment. Intervention would

12

also prejudice the Attorney General's authority to represent the State and resolve cases on its behalf, an authority that is well-enshrined in Kansas law.

## Conclusion

This Court should deny Governor Kelly's motion to intervene and sign the proposed consent judgment.

Respectfully submitted,

*/s/ Kris W. Kobach*
KRIS W. KOBACH, #17280
Kansas Attorney General

DWIGHT R. CARSWELL, #25111
Deputy Solicitor General

JAMES R. RODRIGUEZ, #29172
Deputy Attorney General

Office of the Kansas Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Tel: (785) 296-2215
Fax: (785) 296-6296
Kris.Kobach@ag.ks.gov
Dwight.Carswell@ag.ks.gov
Jay.Rodriguez@ag.ks.gov

*Counsel for Defendant State of Kansas*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.


*/s/ James R. Rodriguez*
James R. Rodriguez