**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. STATE OF KANSAS, *Defendant.* | No. 5:26-cv-4066 |

**STATE OF KANSAS'S RESPONSE TO KANSAS STUDENTS
FOR AFFORDABLE TUITION'S MOTION TO INTERVENE**

Kansas Students for Affordable Tuition seeks to intervene in this case to defend an indefensible law. This Court should deny its motion on the basis of futility.

This Court has previously recognized the futility of a proposed intervenor's arguments as a basis for denying intervention. *Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, 2008 WL 2066993 at \*4 & n.28 (D. Kan. 2008) (unpublished). Although it does not appear the Tenth Circuit has addressed this issue, several other circuits are in agreement, including the Fifth Circuit, which recently held that the district court properly denied intervention in a nearly-identical lawsuit challenging Texas's similar in-state tuition law due to futility. *See United States v. Texas*, ___ F.4th ___, 2026 WL 1983151 at \*3 & n.8 (5th Cir. 2026) (citing decisions from the First, Second, and D.C. Circuits that recognize the futility of a proposed intervenor-defendant's defense as grounds for denying intervention). A "claim need not be frivolous to be futile." *Id.* Rather, the standards of Rule 12(b)(6) are used to assess the futility of intervention. *Id.*

Kansas Students for Affordable Tuition's intervention would be futile because K.S.A. 76-731a is expressly preempted by federal law. 8 U.S.C. § 1623(a) provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a

1

State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident."

K.S.A. 76-731a provides tuition benefits to illegal aliens "on the basis of residence" in three ways, and so it violates 8 U.S.C. § 1623. First, under K.S.A. 76-731a(a), certain illegal aliens are "deemed to be . . . resident[s] of Kansas." Such deeming is solely for the purpose of making such illegal aliens eligible for *resident* tuition rates. Thus, K.S.A. 76- 731 contravenes the plain language of 8 U.S.C. § 1623 by providing a postsecondary education benefit to illegal aliens on the basis of residency.

Second, under K.S.A. 76-731a(b)(2)(A), Kansas postsecondary educational institutions are required to offer the postsecondary education benefit to illegal aliens who have attended accredited Kansas high schools for three or more years. Eligibility to attend an accredited Kansas high school is based on residency within the State of Kansas. Residency in Kansas triggers a constitutional and statutory right "to attend the public schools." *See Nutt v. Bd. of Educ. of City of Goodland, Sherman Cnty.*, 128 Kan. 507, 508, 278 P. 1065 (1929). Thus, it is an illegal alien's Kansas residency that entitles him to attend a Kansas high school, which in turn entitles him to postsecondary education benefits.

Third, under K.S.A. 76-731a(c)(2), an alien who is eligible for resident-based fees and tuition in another state is deemed ineligible for the postsecondary education benefit offered by the State of Kansas. Thus, being a resident of another State disqualifies an illegal alien from obtaining this education benefit. Therefore, only an illegal alien who is a resident of Kansas is eligible to receive resident tuition. This eligibility violates 8 U.S.C. § 1623.

The combination of these provisions makes clear that K.S.A. 76-731a is designed to provide in-state tuition to illegal aliens who are residents of Kansas. These illegal aliens are "deemed to be . . . resident[s] of Kansas" and are entitled to resident tuition rates on the basis of that residency classification. K.S.A. 76-731a(a).

K.S.A. 76-731a is therefore preempted by 8 U.S.C. § 1623 unless all U.S. citizens are eligible for in-state tuition without regard to residence, which they are not. The Fifth Circuit, in its decision regarding the denial of intervention on futility grounds, recently rejected an argument that isolated exceptions allowing non-residents to pay in-state tuition are sufficient to satisfy 8 U.S.C. § 1623(a). Rather, § 1623(a)'s reference to "a citizen or national of the United States" being eligible for post-secondary benefits without regard to residency "naturally reads to include the plural," and thus "[e]ligibility for one U.S. citizen or national in a discrete circumstance cannot unlock preferential in-state tuition for all illegal aliens when other citizens or nationals are excluded from consideration." *United States v. Texas*, 2026 WL 1983151 at \*7. And so "if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal aliens must be ineligible to receive the same benefit based on residency." *Id.* The bottom line is that "U.S. citizens or nationals must be treated no worse than illegal aliens." *Id.*

The legislative history of 8 U.S.C. § 1623 confirms this interpretation. Section 1623 was part of a larger package of reforms designed to strengthen immigration law enforcement. Illegal Immigrant Reform and Immigrant Responsibility Act (IIRAIRA), Pub. L. 104-208, Title V, § 505, 110 Stat. 3009-672 (Sept. 30, 1996). The legislative objective of Congress in passing § 1623 was twofold: to remove public benefits offered by federal, state, and local governments that reward and encourage illegal immigration and to reduce the burden such benefits impose on American taxpayers. The congressional intent to remove the incentive for

3

illegal immigration created by such benefits was present throughout recorded deliberations on the bill (H.R. 2202). Rep. Frank Riggs, an outspoken proponent of the bill, explained the need to remove incentives for illegal immigration: "The task force [on immigration reform] concluded that the continued access of federal and state benefits to illegal aliens encourages illegal immigrations in the United States. Any comprehensive effort . . . must include efforts to remove this incentive." House Appropriations on Labor, Health & Human Services, *Congressional Hearing Transcripts,* June 20, 1996. As Rep. Ron Packard put it, "By eliminating benefits to illegal aliens, we eliminate the incentive for illegals to cross." *Packard Says Immigration Law is in Need of Time Up*, Press Release, U.S. Rep. Ron Packard, March 20, 1996.

In enacting 8 U.S.C. § 1623, specifically, Congress intended to force States to choose between preserving a state system of preferential public postsecondary education funding based on bona fide state legal residence, and offering in-state tuition to illegal aliens in defiance of federal law and policy. The consequence of choosing the latter course would be the virtual elimination of out-of-state tuition rates at state universities—something no State could afford. The House Conference Report accompanying H.R. 2202 explained this intent of Section 505 clearly: "This section provides that *illegal aliens are not eligible for in-state tuition rates* at public institutions of higher education." Conference Report 104-828, H.R. 2202 (Sept. 24, 1996) (emphasis added).

Numerous members of Congress expressed this intent. Rep. Christopher Cox, one of the leading proponents of the measure, explained that it "says illegal aliens are not eligible for in-State tuition at public colleges, universities, technical and vocational schools." 142 Cong. Rec. H 11377 (1996). Senator Alan Simpson, sponsor of the Senate version of the bill, summarized the provision in the same way: "Illegal aliens will *no longer be eligible* for reduced in-State college

tuition." 142 Cong. Rec. S11713 (1996). Senator Paul Coverdell reiterated the same unambiguous legislative intent: "Without the prohibition on States treating illegal aliens more favorably than U.S. citizens, States [would] be able to make illegals eligible for reduced in-State tuition at taxpayer-funded State colleges." 142 Cong Rec S11508 (1996).

The text of 8 U.S.C. § 1623 is perfectly clear, and it preempts K.S.A. 76-731a. But if this Court were to find any ambiguity in the statute, legislative intent would confirm its plain meaning—a State cannot offer resident tuition rates to illegal immigrants unless it offers those same rates to all U.S. citizens regardless of residency.

As explained above, the Fifth Circuit recently reached this same conclusion as part of its futility analysis in *United States v. Texas*. 2026 WL 1983151 at \*4-8. Several federal district courts have also ruled that statutes similar to Kansas's are preempted by federal law. *See* Dkt. No. 8; Report and Recommendation, *United States v. Oklahoma*, No. 25-cv-265 (E.D. Okla. Aug. 7, 2025), Dkt. No. 11; Consent Order and Final Judgment, *United States v. Nebraska*, __ F.Supp.3d __, 2026 WL 1584862 (D. Neb., June 3, 2026), Dkt. No. 50; Opinion & Order, *United States v. Kentucky Council on Postsecondary Education, et al.*, No. 25-cv-28 (E.D. Ken. March 31, 2026), Dkt. No. 57.

Kansas Students for Affordable Tuition may attempt to rely on the isolated district court decision in *United States v. Walz*, No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026), which is the only case in which a federal district court rejected a preemption challenge to a law offering in-state tuition to illegal aliens. But the Minnesota law at issue in *Walz* is decisively different than Kansas's in at least two ways. First, it has no provision like K.S.A. 76-731a(a) "deem[ing]" illegal aliens "to be . . . resident[s]" solely for making them eligible for resident tuition rates. *Walz*, 2026 WL 851231 at \*1-2. Second, it has no provision like K.S.A. 76-

5

731a(c)(2) that renders an alien who is eligible for fees and tuition for "residents" of another State ineligible for in-state tuition in Minnesota. Because Minnesota's law lacks both of these residency provisions, the district court's decision in *Walz* that the Minnesota law does not determine in-state tuition eligibility on the basis of "residence" is not on point.

Moreover, the court in *Walz* erred by interpreting § 1623's phrase "a citizen or national of the United States" so that illegal aliens are eligible for in-state tuition if "any" U.S. citizen is eligible. In other words, the *Walz* court supposed, if only one U.S. citizen from out of State were to get in-state tuition rates, then the State would be free to provide in-state tuition rates to all illegal aliens. As discussed above, that interpretation is inconsistent with the ordinary meaning of the statutory terms and the legislative history, both of which establish that § 1623 denies state education benefits to illegal aliens unless they are available to *all* U.S. citizens. The Fifth Circuit squarely rejected this erroneous interpretation when litigants attempted to make the same argument to support the Texas tuition law:

> Section 1623(a) is a categorical prohibition, whose reference to "a citizen or national" naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the "unless" condition by identifying a single U.S. citizen or national somewhere who can obtain the benefit vis-à-vis a limited exception.

*United States v. Texas*, 2026 WL 1983151 at *7.  On this point, the Court should likewise decline to follow *Walz*'s incorrect and unpersuasive reading of the statute.

Finally, Kansas Students for Affordable Tuition's Proposed Answer asserts a defense based on the Tenth Amendment. That argument also lacks merit, for the reasons given by the Fifth Circuit in *United States v. Texas*. Section 1623 "is ordinary preemption legislation that 'denies permission,' not a command to, or direct regulation of, the states." 2026 WL 1983151 at *8. It imposes no affirmative obligation that might run afoul of the anti-commandeering doctrine.

6

*Id.* By would-be intervenors' strained reasoning, virtually every express preemption provision in federal law would violate the Tenth Amendment, thereby rendering the Supremacy Clause of Article VI, Clause 2, of the U.S. Constitution a nullity. This argument, too, fails to pass the blush test.

### Conclusion

Because Kansas Students for Affordable Tuition can offer no plausible defense of K.S.A. 76-731a in the face of clearly preemptive federal law, its motion to intervene should be denied based on futility.

Respectfully submitted,

*/s/ Kris W. Kobach*
KRIS W. KOBACH, #17280
Kansas Attorney General

KURTIS K. WIARD, #26373
Senior Counsel

DWIGHT R. CARSWELL, #25111
Acting Solicitor General

JAMES R. RODRIGUEZ, #29172
Deputy Attorney General

Office of the Kansas Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Tel: (785) 296-2215
Fax: (785) 296-6296
Kris.Kobach@ag.ks.gov
Kurtis.Wiard@ag.ks.gov
Dwight.Carswell@ag.ks.gov
James.Rodriguez@ag.ks.gov

*Counsel for Defendant State of Kansas*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of July, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have entered an appearance.

*/s/ James R. Rodriguez*
James R. Rodriguez
