**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. 5:26-cv-04066 |
| Plaintiff, | |
| v. | **RESPONSE BRIEF IN OPPOSITION TO GOVERNOR KELLY'S MOTION TO INTERVENE** |
| STATE OF KANSAS, | |
| Defendant. | |

Plaintiff United States of America submits this response brief in opposition to Governor Kelly's Motion to Intervene (Dkt. No. 4) ("Motion").

## INTRODUCTION

Federal law unequivocally preempts state laws that provide in-state tuition benefits to illegal aliens on the basis of their residence within a state when such benefits are not available to all U.S. citizens. *See* 8 U.S.C. § 1623(a). Yet, Kansas law does exactly that by making illegal aliens eligible for in-state tuition benefits based on their residence in Kansas without providing the same benefits to U.S. citizens. *See* Kan. Stat. Ann. § 76-731a ("Section 76-731a"). Accordingly, Section 76-731a is preempted, unconstitutional, and invalid. Since Section 76-731a is invalid, the Governor's purported defenses of that statute are legally futile. As the Fifth Circuit just held in a case that is on all fours with this litigation, "[f]utility analyses are 'threshold matter[s that a] district judge must [conduct] . . . before . . . turn[ing] to a consideration of the factors listed in Rule 24(a) and (b).'" *United States v. Texas*, --- F.4th ---, No. 25-10898, 2026 WL 1983151, at *3 (5th Cir. July 9, 2026).

Given the plainly preempted Kansas law, the Parties filed the Joint Motion for Entry of Consent Judgment, Dkt. No. 3 ("Joint Motion" or "Joint Mot."), requesting that this Court (i) "enter a final judgment declaring that Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623 and is therefore invalid[,]" Joint Motion at ¶ 8; and (ii) "enter a permanent injunction prohibiting the State of Kansas . . . from enforcing Kan. Stat. Ann. § 76-731a[,]" *Id.* at ¶ 9. This Court should grant the Parties' Joint Motion because the consent judgment sought is fair, reasonable, adequate, and not contrary to law or the product of collusion. *See Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 528 (1986); *United*

1

*States v. State of Colo.*, 937 F.2d 505, 509 (10th Cir. 1991). After denying the Governor's Motion, this Court should then grant the Parties' Joint Motion.

## BACKGROUND

On June 24, 2026, Plaintiff the United States of America filed its Complaint against Defendant State of Kansas. In the Complaint, the United States challenged Section 76-731a, which extends eligibility for in-state tuition benefits to aliens who are not lawfully present in the United States. Compl. ¶¶ 20–38. The United States alleged that 8 U.S.C. § 1623(a) ("Section 1623(a)")[1] expressly preempts Section 76-731a because Section 1623(a) prohibits illegal aliens from being eligible for in-state tuition benefits that are not available to United States citizens. *See* Compl. ¶¶ 15–20, 37, 38, 52, 53. To remedy the ongoing harm suffered as a direct result of this contravention of federal law, the United States asserted one claim for preemption and sought a "judgment declaring that Section 76-731a is preempted by 8 U.S.C. § 1623" and entry of "a permanent injunction that prohibits Defendant … from enforcing Section 76-731a[.]" *Id.* ¶¶ 56–63.

Defendant, having identified no meritorious argument against the United States's position, "agree[d] that Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623." Joint Mot. ¶ 7. To effectuate their agreement as to the unconstitutionality of Kan. Stat. Ann. § 76-731a, and to bring to an end the ongoing injury to the United States caused by Section 76-731a, the Parties filed their Joint Motion, requesting "that the Court enter a final judgment declaring that Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623 and is therefore invalid." *See Id.* ¶ 8.

On June 24, 2026, Kansas Governor Laura Kelly filed her Motion, seeking to intervene in this matter under Rule 24 of the Federal Rules of Civil Procedure. The Court, acknowledging that

---

[1] Section 1623(a) is part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009–546 (1996), passed by Congress and signed by President Clinton in 1996.

"the motion d[id] not include the pleading required under FRCP 24(c)," ordered the Governor to file a pleading on or before July 2, 2026. *See* Dkt. No. 6. On July 2, 2026, the Governor filed her Motion to Dismiss and Brief in Support, arguing principally that Section 76-731a is not preempted because it purportedly confers in-state tuition benefits on illegal aliens on a basis other than residency in Kansas. *See* Dkt. Nos. 11, 12. The Governor's arguments are futile and do not rebut that Section 76-731a is expressly preempted by Section 1623(a).

## ARGUMENT

The Court should deny the Governor's Motion because Section 76-731a is preempted by 8 U.S.C. § 1623 and enjoin the enforcement of Section 76-731a.

### I.      Intervention is futile because Kan. Stat. Ann. § 76-731a is preempted by 8 U.S.C. § 1623.

The Governor's defenses cannot overcome the reality that Section 76-731a is expressly preempted by Section 1623(a). On its face, Section 76-731a is residency-based and makes illegal aliens eligible for postsecondary education benefits while excluding United States citizens who have not resided in Kansas. As a result, it is expressly preempted by Section 1623(a). The Governor's proposed defenses are thus legally futile and do not justify intervention.

While the Tenth Circuit has not explicitly recognized a legal futility defense to intervention, courts in this District have denied intervention where a "motion to intervene would be futile, as those claims could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *E.E.O.C. v. Century I, L.C.*, 142 F.R.D. 494, 496 (D. Kan. 1992); *see Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, No. 07-cv-2418-DJW, 2008 WL 2066993, at *4 (D. Kan. May 14, 2008) ("Several courts in other jurisdictions have also recognized that the futility of the proposed claim or defense in intervention may be considered in determining whether intervention is proper."); *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983) (upholding district court's denial of motion

3

to intervene on futility grounds where proposed claims were barred by statute of limitations); *In re Fine Paper Antitrust Litig*, 695 F.2d 494, 501 (3d Cir.1982) (upholding district court's denial of motion to intervene where it would have been futile to allow intervention); *Kirby v. Coastal Sales Assoc.*, 199 F.R.D. 111, 118 (S.D.N.Y.2001) (noting that legal futility is a basis for rejecting a proposed intervention under Rule 24); *Am. White Cross, Inc. v. Orentzel*, 269 B.R. 555, 559 (D. Del. 2001) (upholding bankruptcy court decision denying motion to intervene as futile where proposed claim on intervention was without merit); *see also* 7C Charles Alan Wright et al., Federal Practice and Procedure § 1914, at 523-24 (3d ed. 2007) ("The proposed pleading must state a good claim for relief or a good defense."). "An application to intervene should be viewed on the tendered pleadings, that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *Williams & Humbert, Ltd. v. W. & H. Trade Marks, Ltd.*, 840 F.2d 72, 75 (D.C.Cir.1988); *see also Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir.1983) (court must accept as true the non-conclusory allegations of the proposed intervenor's pleading). The Governor's pleading cannot survive the applicable standard.

Last week, the Fifth Circuit affirmed the denial of motions to intervene in circumstances very similar to those present here. *See United States v. Texas*, --- F.4th ---, No. 25-10898, 2026 WL 1983151 (5th Cir. July 9, 2026). The Fifth Circuit explained that the futility analysis is a "threshold matter[]" to be addressed under the "Rule 12(b)" standard before an analysis of the other intervention factors. *Id.* at *3.[2] The Fifth Circuit affirmed the district court's denial of intervention, stating that "[i]ntervention is futile because [Section 1623(a)] preempt[ed]" the Texas statutes at issue which awarded in-state tuition benefits to illegal aliens. *Id.* at *3; *see also United States v.*

---

[2] The Fifth Circuit adopted the rule already in place in the First, Second, and D.C. Circuits that "futility rules apply to both plaintiff- and defense-side intervenors." *Id.* at *3.

*Texas*, 350 F.R.D. 74, 78 (N.D. Tex. 2025) ("'[A] proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim.'") (quoting *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991) (modification in original)). The Fifth Circuit found that Section 1623(a) expressly preempted the challenged Texas in-state tuition statutes, and deemed the proposed intervenors' motion to intervene legally futile. *Id.* at *3–*9 ("Under the Challenged Provisions '[s]o long as [illegal aliens] satisfy the statute's residency requirements, illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not.' . . . We agree with the district court that § 1623 'bars such a disparity.'") (quoting *Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 308 (5th Cir. 2023)). Like the Northern District of Texas, as affirmed by the Fifth Circuit, this Court should deny the Motion because any defenses the Governor might raise to Section 1623's express preemption of the challenged Kansas statute would be legally futile. *See Texas*, 2026 WL 1983151, at *9 ("Thus, we begin and end with the futility analysis and need not address whether Appellants can satisfy Rule 24 (a)'s or (b)'s intervention requirements."). The challenged Kansas provisions are plainly preempted by federal immigration law under Section 1623(a) no matter what "defenses" the Governor might raise. None of the Governor's defenses contained in her Motion to Dismiss, *see* Dkt. Nos. 11, 12, is legally cognizable.

Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). When a federal statute contains an express preemption provision, state law must give way to federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Federal statutes may expressly preempt state laws by declaring that intent on the face of the statute. *Id.* When the federal statute contains an express preemption clause, the court does not

indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted). Because "[p]reemption fundamentally is a question of congressional intent," "when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) (citations omitted); *see also Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000). The federal statute at issue here, Section 1623(a), unambiguously states:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a). The plain language of Section 1623(a) reflects Congress's intent to prohibit illegal aliens from being eligible for any postsecondary education benefit, such as reduced tuition expenses, on the basis of residence within a state unless a United States citizen is eligible for that benefit as well, regardless of residency.[3] And "the '[n]othwithstanding any other provision of law' language means that 'Section 1623(a) contains an express preemption clause.'" *United States v. Nebraska*, No. 8:26CV172, --- F.Supp.3d ---- , 2026 WL 1584862, at *26 (D. Neb. June 3, 2026) ("*Nebraska*") (quoting *Young Conservatives*, 73 F.4th at 312); *see Texas*, 350 F.R.D. at 79–81 (construing Section 1623(a) as an express preemption provision).

Section 76-731a conflicts with 8 U.S.C. § 1623(a) because it confers eligibility for in-state tuition benefits to illegal aliens that are not available to U.S. citizens on the same terms, regardless

---

[3] In addition to the plain language of Section 1623(a), the title of 8 U.S.C. § 1623, "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," as well as other provisions of IIRIRA puts Congress's intent beyond doubt. *Cf. id.* §§ 1601, 1601(2)(A), (B), (5), (6).

of residency. Eligibility for substantially reduced in-state college tuition is indisputably a postsecondary education benefit. The per semester tuition rates for non-resident undergraduate students are significantly higher than those for resident students. Thus, recipients of in-state tuition pay less to attend Kansas undergraduate institutions. *See* Compl. ¶¶ 25, 26.

Kansas provides this benefit to illegal aliens while denying them to United States citizens and nationals who are not state residents. As the Governor concedes, Section 76-731a "permits certain people without lawful immigration status to be deemed residents for purposes of tuition and fees." Mot. at 2. Indeed, Section 76-731a makes an illegal alien eligible for in-state tuition so long as that alien 1) enrolled or was accepted for admission to a Kansas postsecondary educational institution; 2) attended a Kansas high school for at least three years; 3) graduated from a Kansas high school or received a GED in Kansas; 4) filed an affidavit affirming past or future steps to obtain legal status with the postsecondary educational institution he has enrolled at or was accepted to; 5) is not eligible for resident tuition in another state; and 6) does not hold a valid student visa. *See* Compl. ¶¶ 27–36. Despite the Governor's contention that these are "educational requirements" that somehow render Section 1623(a) inapplicable, Dkt. No. 12 at 7, these requirements are either residence requirements or proxies for residence in Kansas. Criteria (1) through (3), are each conditioned upon residency in Kansas. *Texas*, 2026 WL 1983151, at *9 ("Subsection (A) is a proxy for residence (*i.e.*, graduating from a high school in Texas)"). Students between the ages of seven and seventeen, including those not lawfully present in the United States, must attend school in the district in which they reside. *See* Kan. Stat. Ann. §§ 72-3118, 72-3120, 72-3122. Requirement (5) is a straightforward residence requirement, only stated negatively rather than affirmatively. *See Texas*, 2026 WL 1983151, at *6 ("Section 1623(a) does not limit its preemptive effect to state-law residency determinations based on a single factor."); *Texas*, 350 F.R.D. at 81 ("the fact that Texas

7

law evaluates different factors to determine residency does not place Sections 54.051(m) and 54.052(a) outside the purview of Section 1623(a)'s express preemption clause."). Thus, Kansas makes illegal aliens eligible for in-state tuition benefits based on their residency in Kansas, while denying that same benefit to U.S. citizens residing outside of Kansas. *See* Compl. ¶ 37. But "Section 1623(a)'s express federal preemption provision displaces any state-law tuition disparity benefiting illegal aliens." *Texas*, 2026 WL 1983151, at *8. As a result, Section 76-731a is preempted.

The Fifth Circuit has already held as much in *Texas*, as well as in *Young Conservatives*, stating that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th at 312–13; *see* No. 25-10898, 2026 WL 1983151, at *1. And two other courts have said the same. *See Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (stating, in the context of reduced in-state tuition, that under Section 1623(a) "public post-secondary institutions need not admit illegal aliens at all, but if they do, these aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at institutional practices, curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . .").

Moreover, since 2025 five other courts have enjoined or upheld injunctions against states with laws similar to Section 76-731a. *See Texas*, 350 F.R.D. at 79–81; *Texas*, 2025 WL 1583869, at *1 (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because they violated the Supremacy Clause); *United States v. Oklahoma*, ECF No. 23, Order and Final Consent Judgment (E.D. Okla. Aug. 29, 2025); *see also id.* ECF 11 at 1 (Report and Recommendation) (holding that 8 U.S.C. § 1623(a) expressly preempts

8

Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria"); *United States v. Ky. Council on Postsecondary Educ.*, No. 3:25-cv-00028-GFVT, 2026 WL 880597, ECF 57, Opinion & Order, at 21 (E.D. Ky. Mar. 31, 2026) ("*Kentucky*"); *Nebraska*, at *26 (holding that similar "statutes unquestionably conflict with § 1623(a) to the extent that they permit aliens unlawfully present in the United States to qualify for in-state tuition and state financial assistance 'on the basis of residence' in Nebraska while at the same time denying those postsecondary education benefits to United States citizens who do not meet the residency-based requirements of those statutes.").

Kansas does not provide the same benefit to U.S. citizens who are not Kansas residents. The Governor's argument concerning Section 1623(a)'s reference to "a citizen or national," and in particular on the use of the word "a," which "refer[s] to a single thing[,]" and "means 'one' or 'any'" is similarly misplaced and has been rejected. Dkt. No. 12 at 11; *see Texas*, 2026 WL 1983151, at *7 ("Section 1623(a) is a categorical prohibition whose reference to 'a citizen or national' naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the 'unless' condition by identifying a single U.S. citizen or national somewhere who can obtain the benefit *vis-à-vis* a limited exception.").

> Read naturally, the "unless" clause describes a condition precedent that must be satisfied before states may bestow residence-based postsecondary education benefits on illegal aliens. *See* § 1623(a). Put another way, if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal aliens must be ineligible to receive the same benefit based on residency. U.S. citizens or nationals must be treated no worse than illegal aliens.

*Texas*, 2026 WL 1983151, at *7. The Governor's reading—that the mere existence of one U.S. citizen or national anywhere in the country who is not a state resident but nonetheless is eligible for the same benefit means that Section 1623(a) has no application—has no textual basis and would

9

produce a number of nonsensical results that would almost completely neuter Section 1623(a), as Congress could not have on the one hand wanted to make unlawful aliens ineligible for state postsecondary education benefits on the basis of state residence, but on the other hand wished to restore that eligibility if a single nonresident U.S. citizen or national were made eligible for that benefit. Because the Governor's defenses are futile, the Court should deny her Motion and enter the consent decree declaring that Section 76-731a is preempted and enjoining its enforcement.

## II.      The Court Should Enter the Consent Decree

This litigation presents a case or controversy because the United States suffers—and will continue to suffer—a sovereign injury by the operation of Kansas' unconstitutional law. Because a live controversy exists, this Court has jurisdiction. Further, because the consent judgment proposed in the Joint Motion is fair, reasonable, adequate, not the product of collusion, and consistent with the law, it should be entered by this Court.

### A.      The Court has subject matter jurisdiction over a justiciable controversy between the Parties.

Despite the Parties' agreement that Section 76-731a is preempted by Section 1673(a), Section 76-731a remains in force. As a result, the United States continues to suffer an injury, which creates a case-or-controversy under Article III.

First, this case presents a justiciable controversy. Although a "friendly, non-adversary proceeding" in which a governmental entity does not defend its own enactment "introduce[s] a complication," a controversy exists so long as that government, despite its agreement on the "legal contention," does not give it effect. *United States v. Windsor*, 570 U.S. 744, 756 (2013); *see also Immigr. & Naturalization Serv. v. Chadha*, 462 U.S. 919, 940 n.12 (1983) ("Even though the government largely agreed with the opposing party on the merits of the controversy, we found an

10

adequate basis for jurisdiction in the fact that the government intended to enforce the challenged law against that party.").

Despite the Governor's contention that because the Parties agree as to the illegality of Section 76-731a, there may not be a "sufficient controversy between the parties," Motion at 1; *see id.* at 3 ("there appears to be no controversy"), a controversy exists here because the United States continues to be injured by Section 76-731a, which remains in effect. This case is on all fours with the Supreme Court's decision in *Windsor*. There, the Court held that the parties' agreement that the Defense of Marriage Act was unconstitutional did not deprive the district court of jurisdiction where, among other things, the United States continued to comply with the statute and would not pay money to plaintiff absent a court order requiring it to do so. *Windsor*, 570 U.S. at 758–59. There the Court "retain[ed] a stake sufficient to support Article III jurisdiction" because the United States refused to give the plaintiff—whose legal positions the United States agreed with—the relief she sought, similar to how Kansas, in this case, despite the Joint Motion, has not "taken the further step" of giving the United States the relief it seeks by rendering Section 76-731a ineffective. *Id.* at 758. Indeed, not even the dissenters in *Windsor* doubted that the district court had jurisdiction notwithstanding the parties' agreement on the unconstitutionality of the Defense of Marriage Act; the dissent merely urged that there was no jurisdiction over the appeal once the parties got what they wanted. *Id.* at 781 (Scalia, J., dissenting).

Four other federal district courts have issued consent judgments under similar circumstances with regard to similar state laws. In those cases, the United States was the plaintiff, a state (or executive branch agency of a state) was the defendant, and the parties agreed that state laws that conferred eligibility for postsecondary education benefits upon illegal aliens were preempted pursuant to Section 1623(a). In each case, the parties jointly moved for entry of consent

11

judgment, and the court entered the consent judgement without modification (or in one case with only non-substantive modifications). *See Nebraska*, at \*28; *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at \*1 (N.D. Tex. June 4, 2025); *Oklahoma*, No. 6:25-cv-00265-RAW-DES, ECF No. 23, Order and Final Consent Judgment (E.D. Okla. Aug. 29, 2025); *Kentucky*, ECF 57.[4] For example, in *Kentucky*, after permitting intervention and holding a hearing on the parties' joint motion, the court granted the joint motion for entry of consent judgment and adopted the proposed consent decree without modification. *See* Order, No. 3:25-cv-00028-GFVT, ECF No. 52 (quoting *Lexington Ins. Co. v. Ambassador Grp., LLC*, 581 F. Supp. 3d 863 (W.D. Ky. 2021)). *Kentucky*, at \*11.[5] The court addressed arguments that it lacked "Article III jurisdiction to enter the proposed consent decree[,]" but ruled that "even if the government agrees that its law is unconstitutional, so long as the government refuses to give that position effect, there is still a justiciable controversy between the parties." *Id.* at \*4 (citing *Chadha*, 462 U.S. at 940 n.12). For the same reason, this Court should reach the same result.

**B.      Entry of the consent judgment is fair, reasonable, and consistent with the law.**

Considering the futility of the Governor's defenses, the Court should grant the Joint Motion and enter the consent judgment to effectuate the Parties' agreement to resolve this dispute. "The law favors agreements to settle disputes." *U.S. Energy Expl. Corp. v. Directional Drilling Sys., LLC*, No. 21-1055-EFM, 2022 WL 4547452, at \*3 (D. Kan. Sept. 29, 2022) (citing *Lowery v. Cnty. of Riley*, 738 F.Supp.2d 1159, 1168 (D. Kan. 2010)). Consent decrees are common and "primarily

---

[4] One federal district court denied a motion similar to the Joint Motion because the state, after initially joining the motion, later submitted a Notice of Withdrawal of Consent to Entry of Consent Judgment. The court therefore denied the Joint Motion as moot. *See United States v. Virginia*, No. 3:25-cv-1067-REP, ECF No. 74, Memorandum Order (E.D. Va. 2026). No similar withdrawal of consent has occurred, or is expected to occur, in the instant case.

[5] While the Eastern District of Kentucky ruled that the challenged Kentucky regulation was invalid under 8 U.S.C. § 1621(d) instead of 8 U.S.C. § 1623(a), it still entered the consent judgment sought by the parties after having determined that "despite the Council's agreement with the United States that its regulation is preempted" "a justiciable controversy remains present" because the Council "continue[d] to enforce the regulation." *Kentucky*, at \*4.

12

a means by which parties settle their disputes without having to bear the financial and other costs of litigating." *Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S. at 528. "Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." *Id.* at 522. When reviewing a consent decree, "the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest" and also must "decide whether the decree is fair, adequate, and reasonable before it is approved." *State of Colo.*, 937 F.2d at 509 (citing *United States v. City of Miami, Fla.*, 664 F.2d 435, 440–41 (5th Cir. 1981) (en banc)); *see Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S. at 525 (A consent decree must: (1) "spring from and serve to resolve a dispute within the court's subject-matter jurisdiction;" (2) "come within the general scope of the case made by the pleadings;" and (3) "further the objectives of the law upon which the complaint was based.").

First, the consent judgment sought by the Parties is fair and reasonable. Two sovereigns reached an agreement memorialized in the Joint Motion. Both Parties, represented by counsel, were free to evaluate the merits of the legal theories and causes of action set forth in the Complaint and to observe how similar litigation under 8 U.S.C. § 1623(a) has played out across the country. In so doing, the Parties balanced the likelihood of success against the potential duration and costs of litigation and understood the relative strength of the United States's position.[6] *See United States v. Weiss*, No. 11-CV-02244-RM-MJW, 2013 WL 5937912, at *4 (D. Colo. Nov. 6, 2013) ("[T]he Proposed Consent Decree reflects the strength of the Government's case."). Given the arm's length negotiations by two represented Parties and their mutual understanding that Section 76-731a is preempted by Section 1623(a), and the Governor's concession that the consent judgment was "negotiated by the parties," the Court should thus find that the consent judgment is fair and

---

[6] *See* Kansas Attorney General Opinion 2026-5 at 2–3.

13

reasonable and not the product of collusion. Mot. at 3; *see, e.g.*, *Weiss*, 2013 WL 5937912, at *3 ("I find the Proposed Consent Decree is both procedurally and substantively fair. The decree resulted from extensive arms-length negotiation between two represented parties."); *Nebraska*, at *28 ("Although there was agreement between the Parties promptly on the heels of the filing of the Complaint, that does not establish that the Consent Judgment is the product of 'collusion' or other 'misconduct.' . . . As the Court has explained, this 'friendly' litigation was not improper.").

Second, entry of the proposed consent judgment would "adequate[ly] resol[ve] . . . the claims raised in this action." *Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S. at 512. The Joint Motion addresses the sole cause of action raised in the Complaint and disposes of it entirely. Compl. ¶¶ 58–61; Joint Mot. ¶¶ 3–9. No further relief is sought by either party with respect to the issues raised in the Complaint. *See Nebraska*, at *29 (entering consent judgment based, in part, on "the relationship between the claims made and the Consent Judgment" which was "clear from a comparison of the Complaint and the Consent Judgment"). Thus, the consent judgment is adequate. *See, e.g.*, *Directional Drilling*, 2022 WL 4547452, at *4 ("The Court finds that the Consent Judgment submitted by Defendant should be entered, as this gives Plaintiff relief on all the claims it has advanced in the action[.]"); *Wolf Res., LLC v. Derner*, No. 19-CV-00515-CMA-MEH, 2019 WL 3550912, at *2 (D. Colo. Aug. 5, 2019) ("It is adequate in that it accomplishes the goals of the parties to finally and completely resolve their dispute.").

Third, entry of the Joint Motion vindicates, rather than violates, the law and is "directed to protecting federal interests." *Frew ex rel. Frew v. Haskins*, 540 U.S. 431, 437 (2004). As set forth more fully above, *see supra* § I, Section76-731a is expressly preempted by federal law. 8 U.S.C. § 1623(a). *See, e.g.*, *Nebraska*, at *29 (determining that consent judgment did not violate the law and furthered the law where "the Consent Judgment is based on clear preemption of the challenged

parts of the state statutes by § 1623(a).”). Nothing about the relief sought by the Joint Motion is contrary to law. Moreover, entry of the consent judgment would vindicate a longstanding wrong whereby the sovereignty of the United States is injured by the enforcement of preempted state law.

Finally, the United States is authorized by law to enter into the proposed consent judgment. The Department of Justice derives its authority to enter consent decrees from the Attorney General and the Code of Federal Regulations. Specifically, the Federal Government, through its attorneys, may enter into consent agreements with prior authorization by the Assistant Attorney General. *See, e.g.*, 28 C.F.R. § 0.160(a). If the Assistant Attorney General believes a proposed consent decree, due to questions of law or policy, or any other reason, should receive the attention of the Deputy Attorney General, or Associate Attorney General, it must be referred as such. *See id.* § 0.160(d)(2). The offices of both Associate Attorney General Stanley E. Woodward, Jr., and Assistant Attorney General for the Civil Division, Brett A. Shumate, reviewed the Joint Motion. *See* Joint Mot. at 3 (appending the signature block of both the Associate and Assistant Attorneys General).

Since the Joint Motion seeks entry of a consent judgment that is fair, reasonable, and adequate, and not contrary to law, the court should grant the Joint Motion.

### CONCLUSION

The United States respectfully requests that this Court deny the Motion to Intervene (Dkt. No. 4), and grant the Joint Motion for Entry of Consent Judgment (Dkt. No. 3) and enter the specific relief sought therein.

DATED: July 15, 2026

Respectfully Submitted,

s/ Jackson M. Story
JACKSON M. STORY (FL 1032001)
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Phone: (202) 451-7304
Fax: (202) 514-8742
Email: jackson.m.story@usdoj.gov

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

RYAN A. KRIEGSHAUSER
United States Attorney
District of Kansas

ALEXANDRA MCTAGUE
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch

*Attorneys for the United States*

16