**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. 5:26-cv-04066 |
| Plaintiff, | |
| v. | **RESPONSE BRIEF IN OPPOSITION TO KANSAS STUDENTS FOR AFFORDABLE TUITION'S MOTION TO INTERVENE** |
| STATE OF KANSAS, | |
| Defendant. | |

Plaintiff United States of America submits this response brief in opposition to Kansas Students for Affordable Tuition's ("KSAT") Motion to Intervene (Dkt. No. 7) ("Motion" or "Mot.").

**INTRODUCTION**

Just like Governor Kelly's Motion to Intervene, Dkt. No. 4, KSAT's intervention would be legally futile. The outcome of this litigation is foregone regardless of the arguments intervenors might raise because Federal law unequivocally preempts state laws that provide in-state tuition benefits to illegal aliens on the basis of their residence within a state when such benefits are not available to all U.S. citizens. *See* 8 U.S.C. § 1623(a). Kansas law does exactly that. *See* Kan. Stat. Ann. § 76-731a ("Section 76-731a"). That dooms KSAT's intervention from the start. KSAT wants to intervene to "to defend the validity" of the constitutionally *invalid* Section 76-731a. Mot. at 2. Intervention cannot alter the fundamental constitutional impairment of the challenged statute. Since Section 76-731a is invalid, KSAT's conclusory defenses of that statute are legally futile. As the Fifth Circuit just held in a case that is on all fours with this litigation, "[f]utility analyses are 'threshold matter[s that a] district judge must [conduct] . . . before . . . turn[ing] to a consideration of the factors listed in Rule 24(a) and (b).'" *United States v. Texas*, --- F.4th ---, No. 25-10898, 2026 WL 1983151, at *3 (5th Cir. July 9, 2026).

But KSAT's Motion should be denied for three additional independent reasons. KSAT lacks standing to intervene, has no legal capacity to sue or be sued, and lacks a legally protected interest that would justify intervention as of right. Given these deficiencies, permissive intervention is not warranted. Thus, KSAT's Motion should be denied.[1]

## LEGAL STANDARD

As explained in Plaintiff's Response to the Governor's Motion, Dkt. No. 17 ("Plaintiff's Response" or "Response"), which is incorporated by reference herein, while the Tenth Circuit standard does not require a consideration of legal futility, courts in this District have denied intervention where a "motion to intervene would be futile, as [it] could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *E.E.O.C. v. Century I, L.C.*, 142 F.R.D. 494, 496 (D. Kan. 1992); *see* Response at 4–6 (Argument § I). And the 12(b) motion to dismiss standard is applied to intervenor-defendants in exactly this context. *Texas*, 2026 WL 1983151, at *3.

"An application to intervene should be viewed on the tendered pleadings—that is, whether those pleadings allege a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *Williams & Humbert, Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988); *see also Lake Invs. Dev. Grp., Inc. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983) (court must accept as true the non-conclusory allegations of the proposed intervenor's pleading); *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 651–52 (D. Kan. 2009) ("Based on a review of the affirmative defenses set forth in Defendant's Answer, the Court finds that [the] affirmative defenses . . . are insufficient under the *Twombly* standard so as to warrant striking them. These defenses are too conclusory to give Plaintiffs fair notice of the grounds upon which they rest.").

---

[1] See the Response to Governor's Motion (Dkt. No. 17), at pages 2 through 4 for the United States' position on the background of the case.

## ARGUMENT

### I.    KSAT's Intervention is Legally Futile and Should be Denied.

KSAT offers only two affirmative defenses. First, that Plaintiff fails to state a claim. *See* KSAT's Proposed Answer to Complaint, Dkt. No. 7-1 at 13 ("Answer"). Second, that the Tenth Amendment of the United States Constitution prohibits the relief Plaintiff seeks. *Id.* Both bare bones defenses are meritless and cannot survive the applicable standard for intervention. Section 76-731a is expressly preempted by Section 1623(a) and nothing in the relief Plaintiff seeks implicates the anti-commandeering doctrine. Since neither of KSAT's proffered defenses has merit, its proposed intervention is futile.

### A.    The Complaint States a Viable Express Preemption Claim.

KSAT's conclusory defenses are legally deficient. First, contrary to KSAT's assertion, the Complaint does not fail to state a claim. *See* Answer at 13.[2] As previously explained in pages 4 through 11 of Plaintiff's Response (Argument § I), which is incorporated by reference herein, Section 76-731a is expressly preempted by Section 1623(a), rendering intervention legally futile. Last week, the Fifth Circuit, in affirming the denial of motions to intervene in circumstances very similar to those present here, explained that, in addressing futility as a "threshold" matter before addressing the Rule 24 factors, "[i]ntervention is futile because [Section 1623(a)] preempt[ed]" the challenged Texas in-state tuition statutes. *Texas*, 2026 WL 1983151, at *3, *4 ("Under the Challenged Provisions '[s]o long as [illegal aliens] satisfy the statute's residency requirements,

---

[2] Indeed, since 2025, five other courts have enjoined or upheld injunctions against states with laws similar to Section 76-731a. *See United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025); *United States v. Texas*, No. 7:25-CV-00055, 2025 WL 1583869, at *1 (N.D. Tex. June 4, 2025); *United States v. Oklahoma*, No. 6:25-cv-00265-RAW-DES, ECF No. 23 at 1 (E.D. Okla. Aug. 29, 2025); *see also id.* ECF 11 at 1; *United States v. Ky. Council on Postsecondary Educ., et al.*, No. 3:25-cv-00028-GFVT, 2026 WL 880597 (E.D. Ky. Mar. 31, 2026), ECF 57, Opinion & Order, at 21; *United States v. Nebraska*, No. 8:26CV172, --- F. Supp. 3d ----, 2026 WL 1584862, at *26 (D. Neb. June 3, 2026). *See* Response to the Governor's Motion, at 12–13.

illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not.' . . . We agree with the district court that § 1623 'bars such a disparity.'") (quoting *Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 308 (5th Cir. 2023)). For all the reasons already explained in Plaintiff's Response, the challenged Kansas statute is similar to statutes already enjoined in four other states and affirmed by the Fifth Circuit. *See* Response at 4–11.

B.   **Section 1623(a) Does Not Commandeer State Resources or Violate the Tenth Amendment.**

KSAT cannot demonstrate that effects of Section 1623(a) constitute commandeering or violate the Tenth Amendment. *See* Answer at 13. Section 1623(a), on any plausible reading, does not violate the Tenth Amendment. Section 1623(a) does not require Kansas to do anything, much less enforce a federal regulatory scheme. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). It simply provides a substantive rule of law, preempting Kansas law to the contrary. Every valid exercise of federal preemption necessarily constrains state legislative freedom; that is the very definition of preemption under the Supremacy Clause. When Congress, acting within an enumerated or plenary power, enacts a law that occupies a field or directly conflicts with state law, the inevitable and intended result is that states may no longer legislate in the manner they otherwise could have. The Supreme Court has never treated this ordinary consequence as "commandeering." To the contrary, it has repeatedly upheld federal statutes that left states with no choice but to alter or abandon their own legislative schemes. A federal statute within Congress's enumerated powers is the supreme law of the land, and state statutes must yield. *Murphy*, 584 U.S. at 471.

Under *Murphy*, if the Federal Government regulates private actors in a domain that Congress is empowered to regulate by the Constitution, principles of federalism dictate that state law must yield. *Id.* at 470. More specifically, to preempt state law, a federal provision must (1)

"represent the exercise of a power conferred on Congress by the Constitution; pointing to the Supremacy Clause will not do"; and (2) "be best read as one that regulates private actors." *Murphy*, 584 U.S. at 455. Section 1623(a) meets both of these requirements.

*First*, the regulation of aliens unlawfully present in the United States is a domain well within Congress's broad power conferred by the Constitution to regulate immigration. *Arizona v. United States*, 567 U.S. 387, 395 (2012) (immigration belongs to the "national sovereign, not the 50 separate [s]tates"); *see Hines v. Davidowitz*, 312 U.S. 52, 62–67 (1941). The United States Constitution affords Congress the power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4. Congress exercises this authority through the INA and related laws, *see* 8 U.S.C. § 1101 *et seq.*, which together make up the framework for the "governance of immigration and alien status[.]" *Arizona*, 567 U.S. at 395; *id.* at 416 ("The National Government has significant power to regulate immigration."). There is thus no doubt that Section 1623(a) "represent[s] the exercise of a power conferred on Congress by the Constitution." *Murphy*, 584 U.S. at 477. Pursuant to its broad powers over immigration and foreign affairs, Congress may direct that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State. Section 1623(a) reflects a proper exercise of Congress' plenary authority over immigration.

*Second*, in exercising this Constitutional power, Congress implemented the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") to specifically regulate private actors, not states. Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996). Section 1623(a) does not issue an order to the states to do anything or refrain from doing anything. Instead, Section 1623(a) regulates illegal aliens:

> Notwithstanding any other provision of law, an ***alien*** who is not lawfully present in the United States ***shall not be eligible on the basis of residence within a State*** (or

a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a) (emphasis added). This statute has an unmistakable meaning, and in ascertaining a statute's plain meaning, federal courts "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). The plain language of Section 1623(a) regulates private individuals, specifically illegal aliens. Had Congress wished to regulate someone (or something) else, it could have done so. It did not. "It is elementary that, where no ambiguity exists, there is no room for construction." *United States v. Missouri Pac. R. Co.*, 278 U.S. 269, 277 (1929). No amount of squinting at a statute that applies to "aliens" will make it regulate states where the statute's text simply does not do so. Section 1623(a) explicitly names the private actor regulated by the statute—"an alien who is not lawfully present in the United States"—even though there is no requirement for a valid preemptive provision to explicitly name the regulated private actor. *CoreCivic, Inc. v. Murphy*, 690 F. Supp. 3d 467, 490 (D.N.J. 2023), *aff'd sub nom. CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025) ("[T]he Court does not read these cases to require that federal law must explicitly name a private actor in order to have preemptive effect"). Thus, Section 1623(a) goes beyond what is required to have preemptive effect.

That Section 1623(a) deters other private actors, such as postsecondary education institutions or the states themselves, from interfering with the Federal Government's ability to regulate aliens, further proves that Section 1623(a) regulates private individuals. As the Fifth Circuit just held, "§ 1623(a) 'declare[s] a limitation on illegal eligibility itself' and does not 'regulate[] states directly.'" *Texas*, 2026 WL 1983151 at *8 (quoting *Young Conservatives*, 73 F.4th at 312–13). Rather, "Section 1623(a) is ordinary preemption legislation that 'denies permission,'

6

not a command to, or direct regulation of, the states." *Id.* (quoting *Young Conservatives*, 73 F.4th at 312–13). Section 1623 is "self-executing" and "does not implicate the Tenth Amendment." *Id. See also Equal Access Educ. v. Merten*, 305 F.Supp.2d 585, 606 (E.D. Va. 2004) (recognizing that Section 1623(a) impacts a postsecondary educational institution's ability to grant in-state tuition benefits to illegal aliens); *id.* at 607 ("IIRIRA . . . regulates, *inter alia*, alien eligibility for post-secondary education benefits on the basis of residence within a state."); *see also Murphy*, 584 U.S. at 475 (discussing *South Carolina v. Baker*, 485 U.S. 505 (1988), where statute simply had the "indirect effect" of pressuring states to take a certain action but did not order the states to enact or maintain an existing law).

And Section 1623(a) does not have any other constitutionally problematic features. The plain language of Section 1623(a) does not order state legislatures to do or not do anything. Section 1623(a) does not require Kansas to regulate in a particular area by enacting or repealing a particular law. *New York v. United States*, 505 U.S. 144 (1992) (holding that a federal law that required states to take title of nuclear waste or regulate according to instructions of Congress was inconsistent with the Tenth Amendment). Nor does it require states to enforce a federal regulatory scheme. *Printz v. United States*, 521 U.S. 898, 933 (1997) (holding that a federal law requiring state officers to conduct background checks on prospective handgun purchasers imposed an unconstitutional obligation). It does not issue any commands to state legislatures or any other organ of state government. *See Murphy*, 584 U.S. at 474. It just preempts conflicting state law.

Because KSAT's defenses are futile, the Court should deny KSAT's Motion and enter the consent judgment declaring that Section 76-731a is preempted and enjoining its enforcement.

## II.    KSAT Lacks Standing to Intervene in this Lawsuit.

Article III standing is a fundamental requirement for any party, including proposed intervenors, seeking relief in federal court. *United States v. Colorado & E. R.R. Co.*, 882 F.3d 1264,

7

1269 (10th Cir. 2018). Article III of the United States Constitution limits federal jurisdiction to actual cases and controversies, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which requires standing to sue. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Article III standing specifically requires that a party "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (citing *Lujan*, 504 U.S. at 560–61); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish injury in fact, a party must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560); *Laufer*, 22 F.4th at 876 (citations omitted).

"The same principle applies to intervenors of right." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). "The Supreme Court has held . . . that Article III's requirements apply to all intervenors, whether they intervene to assert a claim or defend an interest." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 912 (10th Cir. 2017) (citing *Wittman v. Personhuballah*, 578 U.S. 539, 541–545 (2016)). "To have standing, a litigant must seek relief for an injury that affects him in a 'personal and individual way.'" *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) (citing *Lujan*, 504 U.S. at 560 n.1). And "[h]e must possess a 'direct stake in the outcome' of the case." *Hollingsworth*, 570 U.S. at 705 (citing *Arizonans for Official English*, 520 U.S. at 64).

Further, "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester*, 581 U.S. at 440. KSAT seeks to intervene in this lawsuit to defend the legal validity of Section 76-731a. *See* Mot. at 2. No other Party to this case seeks that relief. Therefore, to enter this case, KSAT must establish that it has standing to participate in this litigation. *See Town of Chester*, 581 U.S. at 439 ("Although

the context is different, the rule is the same: For all relief sought, there must be a litigant with standing . . . ."). KSAT is unable to do so.

**A.      KSAT Lacks Associational Standing to Intervene.**

KSAT does not establish that its members have associational standing. To do so, KSAT must demonstrate, *inter alia*, that its members "would otherwise have standing to sue in their own right." *N. New Mexico Stockman's Ass'n v. United States Fish & Wildlife Serv.*, 30 F.4th 1210, 1219 (10th Cir. 2022) (citation and internal quotation marks omitted).

KSAT's Motion does not contain any evidence indicating that its purported members will be injured by the relief sought by Plaintiff. Instead, KSAT's Motion vaguely asserts, without support, that certain unspecified illegal aliens residing in Kansas may see "substantial increases of their education costs" (i.e., the same rates that U.S. citizens not residing in Kansas pay to attend the same institutions). *See* Mot. at 5–6. The unsupported assertions of potential harm, without more, fails to show the requisite injury in fact. *Cf. N. Mexico Off-Highway Vehicle All. v. U.S. Forest Serv.*, 645 F. App'x 795, 801 (10th Cir. 2016) ("The district court correctly found that the cursory averments in this affidavit were insufficient to establish a concrete and particularized injury that was either actual or imminent."); *Wittman*, 578 U.S. at 545–46; *see also Lujan*, 504 U.S. at 561; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[T]hreatened injury must be certainly impending to constitute injury in fact and . . . [a]llegations of possible future injury are not sufficient.") (citations and internal quotation marks omitted). KSAT does not provide evidence that its three alleged members attend Kansas universities, reside in Kansas, are charged in-state tuition, or are unlawfully present in this country.

In the absence of any evidence that KSAT members actually pay in-state tuition in Kansas, KSAT floats a different theory of injury—equally unsubstantiated—that three of its members may have to stop attending college or university if the cost of tuition changes. Specifically, the first

9

alleged member claims that he "*will almost certainly* drop out of his program if he is forced to pay" for tuition at the rate that U.S. citizens who do not reside in Kansas pay. Mot. at 5 (emphasis added). The second alleged member claims that she "*will likely* have to transfer to a program outside Kansas or defer completing her program." Mot. at 6 (emphasis added); *Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1257 (10th Cir. 2017) ("We think it at best speculative that" plaintiff will be "exposed" to harmful conduct "if she enrolls . . . as planned."); *Roberts v. Madigan*, 921 F.2d 1047, 1052 (10th Cir. 1990) (Plaintiffs could not demonstrate injury because "[t]here [wa]s no more than a speculative likelihood that either of these students will be in his class in the future."). The third and final member who attends community college, but who apparently "plans to transfer to Kansas State University," claims that she "*will likely* have to drop out of her program of [sic] is forced to pay" for tuition at the rate that U.S. citizens who do not reside in Kansas pay. Mot. at 6 (emphasis added). These guesswork-allegations identify hypothetical future injuries that by KSAT's own representations are anything but "certainly impending." *Clapper,* 568 U.S. at 409. Moreover, none of these allegations is supported by any sworn declarations or evidence; they are bare attorney assertions of potential future harm, which are insufficient. This lack of evidence warrants a denial of KSAT's Motion because it has not sufficiently demonstrated, beyond speculative allegations, that its individual members would have standing. *See* Mot. at 5–6.

Additionally, it is questionable whether a voluntary choice to potentially stop or not enter a postsecondary educational institution constitutes an injury in fact sufficient to confer standing to intervene in a lawsuit. *See* Mot. at 5–6 (alleging KSAT's member-students' plans for the future). If a person chooses not to attend college, that is not injury. Rather, it is a result of the exercise of that individual's judgment based on the relevant information available. "A plaintiff must allege

10

that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action." *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 688–89 (1973).

The unsupported, vague allegations of future potential harm contained in KSAT's Motion are insufficient to establish standing. Consequently, the Motion should be denied.

### B.    KSAT Lacks Organizational Standing to Intervene.

KSAT does not appear to invoke organizational standing to intervene in this litigation—but in any event, it lacks it. To establish organizational standing, KSAT must show that it has been injured. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). KSAT has not done so.

KSAT does not allege that it, as an organization, has suffered any injury. KSAT's Motion merely contains unsupported allegations about how its purported members' per-semester tuition rates may increase, which may influence those members' decisions to transfer, drop out, or defer completion of certain programs. *Compare* Mot. 5–6, *with Nat'l Collegiate Athletic Ass'n v. Califano*, 622 F.2d 1382, 1387 (10th Cir. 1980) ("[T]he challenged regulations can only be read to apply to the member colleges and not to the NCAA itself."). KSAT does not allege that it has suffered or will suffer any concrete harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 492–501 (2009) (organizations did not retain standing to challenge regulations absent a live dispute over the concrete application of those regulations).

KSAT's ostensible goal, which motivates its intention to participate in this lawsuit, is to promote, advocate for, and ensure "access to affordable higher education in Kansas, including maintaining regular tuition rates for certain students without lawful immigration status." Mot. at 5. But KSAT does not say how its purpose would be harmed by an adverse decision. KSAT remains free to promote and advocate for its preferred policy outcomes regardless of the outcome of this case. As a party seeking to invoke the jurisdiction of this Court, KSAT must show that it has

11

suffered some injury. *Lujan*, 504 U.S. at 561. But because KSAT has not asserted that it, as an organization, will suffer any injury, intervention based on a theory of organizational standing fails. The potential effects of this lawsuit on KSAT's members do not establish organizational standing. *Coleman*, 455 U.S. at 379.

Finally, this Court should not allow KSAT to assert an amorphous public interest in defense of the challenged preempted provisions. *See generally Hollingsworth*, 570 U.S. at 706 (rejecting an intervenor's claim of standing because its interest in vindicating "the constitutional validity of a generally applicable California law" constituted the kind of "generalized grievance" that "is insufficient to confer standing"); *see also id.* at 713. KSAT's asserted interests amount to nothing more than a legally impermissible value interest in the litigation. Yet, "Article III standing," the Supreme Court has stated, "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." *Id.* at 707 (internal citations and quotations omitted). Nor can proposed intervenors "attempt to invoke [the judicially cognizable interest] of someone else" if they do not have an independent interest of their own. *Id.* at 708. Accordingly, KSAT lacks organizational standing to intervene in this case.

### III.    KSAT is Not a Real Party in Interest and Lacks Capacity to be Sued.

The Court should deny KSAT's Motion because it is not a real party in interest. "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "A real party in interest is one who owns the substantive right to be enforced." *Tip Top Credit Union v. Cumis Ins. Soc., Inc.*, No. 84-1794-C, 1988 WL 383484, at *2 (D. Kan. Jan. 29, 1988) (citing *United States v. Aetna Casualty Co.*, 338 U.S. 366 (1949)). The Court "must look to Kansas law in determining whether" KSAT "is a real party in interest under Rule 17(a)." *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1153 (10th Cir. 1985). KSAT is not a real party in interest because it is not a juridical person under Kansas law. KSAT describes itself as "an unincorporated association

12

comprised of college students without lawful immigration status . . ." Mot. at 2. KSAT is not registered in any respect with the Kansas Secretary of State.[3] "[T]he general rule in Kansas, that 'in the absence of a statute to the contrary, an unincorporated association is not a legal entity and can neither sue nor be sued in the name of the association.'" *Hall v. Witteman*, No. 07-4128-SAC, 2008 WL 4490620, at *2 (D. Kan. Oct. 1, 2008), *aff'd*, 584 F.3d 859 (10th Cir. 2009) (quoting *Prime v. Beta Gamma Chapter of Pi Kappa Alpha*, 273 Kan. 828, 830, 47 P.3d 402, 405 (2002)); *see Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1339 (10th Cir. 1996) (stating that "a voluntary unincorporated association . . . is regarded under Kansas law as an aggregate of its members, and lacks capacity to sue or be sued in its own name"); *Crane Const. Co. v. Klaus Masonry*, 71 F. Supp. 2d 1138, 1139–40 (D. Kan. 1999) ("Under Kansas law, absent qualifying statutes otherwise, individuals and corporations are the only legal entities capable of suing or being sued.").

Because KSAT is an unincorporated association that lacks the capacity to be sued under Kansas law, it is not a real party in interest, and its Motion should be denied.

## IV.    KSAT Fails to Establish Entitlement to Intervene as of Right.

Independently, this Court should deny KSAT's Motion because it fails to satisfy the prerequisite requirements for intervention as of right. In this circuit, a party seeking intervention as of right under Rule 24(a)(2) must show (1) timeliness; (2) an interest relating to the property or transaction that is the subject of the action; (3) the potential impairment of that interest; and (4) inadequate representation by existing parties. *Kane Cnty., Utah v. United States*, 94 F.4th 1017, 1023 (10th Cir. 2024); *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017).

---

[3] The Kansas Secretary of State website displays "No Results Found" on a search of "Kansas Students for Affordable Tuition" as of July 10, 2026. *See* State of Kansas, Office of the Secretary of State, https://www.sos.ks.gov/eforms/BusinessEntity/Search.aspx.

KSAT bears the burden to show that it has an interest relating to the property or transaction that is the subject of the action. Fed. R. Civ. P. 24(a); *Kane Cnty.*, 94 F.4th at 1023. Similar to the reasons it lacks Article III standing, KSAT fails to satisfy this burden. KSAT does not provide any evidence or declarations that its members will suffer any harm (or whether its members reside in Kansas, receive in-state tuition, or are unlawfully present), and merely alleges potential, speculative, possible future harm. *See supra* § II. KSAT's agreement with the policy embodied by the statute and belief that the statute is constitutional, by itself, is not a legally protectable interest sufficient to justify intervention. And an attenuated economic interest, if any, is insufficient. KSAT does not adequately assert any rights, either statutory or contractual, that entitles it to certain tuition rates at public postsecondary institutions, nor can it. And in any case, any state law that is the basis for any such entitlement, such as the very challenged provisions in this matter, still must yield to federal law when expressly preempted as here. *See Arizona*, 567 U.S. at 399. KSAT has no interest in preserving an unconstitutional law. And because KSAT has no interest, its non-existent interest cannot be impaired. Accordingly, the Court should deny KSAT's motion to intervene as of right.

## V.      The Court Should Deny KSAT's Motion for Permissive Intervention.

Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely, and if the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015). In exercising its discretion, the Court must also consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(3); *Tri-State Generation*, 787 F.3d at 1074. For all of the foregoing reasons, permissive intervention is inappropriate. It is well within this Court's discretion to deny KSAT permissible intervention on KSAT's lack of

standing alone. When each of the deficiencies with KSAT's motion are tallied up, permissive intervention is unwarranted.

## CONCLUSION

The United States respectfully requests that this Court deny the Motion to Intervene (Dkt. No. 7), and grant the Joint Motion for Entry of Consent Judgment (Dkt. No. 3) and enter the specific relief sought therein.[4]

DATED: July 15, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDRA MCTAGUE
Senior Litigation Counsel
Enforcement & Affirmative Litigation Branch

Respectfully Submitted,

s/ Jackson M. Story
JACKSON M. STORY (FL 1032001)
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Phone: (202) 451-7304
Fax: (202) 514-8742
Email: jackson.m.story@usdoj.gov

RYAN A. KRIEGSHAUSER
United States Attorney, District of Kansas

*Attorneys for the United States*

---

[4] This Court should grant the Parties' Joint Motion because the consent judgment sought is fair, reasonable, adequate, and not contrary to law or the product of collusion. *See* Response Brief in Opposition to Governor Kelly's Motion to Intervene, Dkt. No. 17, at Argument § II.B.