**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF KANSAS,<br><br>Defendant. | Civil No. 5:26-cv-04066 |

**UNITED STATES' RESPONSE BRIEF IN OPPOSITION TO
PROPOSED INTERVENOR GOVERNOR KELLY'S MOTION TO DISMISS**

**INTRODUCTION**

Proposed Intervenor Governor Kelly's Motion (Dkt. Nos. 11, 12) ("MTD") attempts, through euphemisms and wordsmithing, to obscure the obvious: federal immigration law expressly preempts the challenged Kansas law. Federal law provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Federal law thus unequivocally preempts state laws that provide in-state tuition benefits to illegal aliens based on their residence within a state when such benefits are not available to all U.S. citizens. *See id.*; *United States v. Texas*, --- F.4th ---, No. 25-10898, 2026 WL 1983151 (5th Cir. July 9, 2026) ("*Texas*"). Yet, the State of Kansas, in a statute unambiguously entitled "Certain persons without lawful immigration status deemed residents for purpose of tuition and fees," makes clear that "a person without lawful immigration status" may be "deemed to be a resident of Kansas for the purpose of tuition and fees," and expressly excludes individuals who are eligible for in-state tuition in another state from receiving in-state tuition benefits in Kansas. Kan. Stat. Ann. §§ 76-731a(a), (b)(2), (c)(2). This law is expressly preempted by Section 1623(a).

Proposed Intervenor's attempt to highlight "education requirements" as a basis to award in-state tuition benefits misses the point and the plain text of Section 76-731a. Section 76-731a is explicitly based on residence, makes illegal aliens eligible for in-state tuition benefits based on their residence in Kansas, and renders U.S. citizens outside of Kansas ineligible for the same benefits. That ends the inquiry. Section 76-731a's "education requirements"—attend a *Kansas* high school for three years and graduate from a *Kansas* high school—only make matters worse as those criteria are "a proxy for residence." *Texas*, at \*9. "The Constitution deals with substance, not

1

shadows," and "[w]hat cannot be done directly cannot be done indirectly." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) (citation omitted). Section 1623 is agnostic about how a state defines residence. Kansas's choice to define residence in terms of graduation from a Kansas high school rather than in terms of domicile makes no practical difference under Section 1623(a) and does not nullify the federal preemption of state laws providing in-state tuition to unlawfully present aliens.

Proposed Intervenor alternatively argues that unlawful aliens are eligible for postsecondary education benefits as a class on the basis of residence if any citizen or national is eligible regardless of residence. That is not what the statute says or means. Rather, "Section 1623(a) preempts … the Challenged Provision[] *vis-à-vis* illegal aliens, barring states from conferring postsecondary education benefits on *any* illegal alien based on residence unless the same benefit is available to *all* U.S. citizens and nationals irrespective of residency." *Texas*, at *1 (emphasis added). That is not only the sole plausible reading of the text but also the only way the federal statute makes any practical sense. Proposed Intervenor's reading is contrary to the plain text of Section 1623(a) and would deprive the statute of essentially, and perhaps literally, all effect.

The challenged Kansas law falls within the sweep of Congress's unambiguous prohibition that the provision of in-state tuition benefits cannot stand when such benefits are denied to all U.S. citizens. This Court should not allow the State of Kansas to brazenly flout clearly expressed federal law. Accordingly, Proposed Intervenor Governor Kelly's Motion to Dismiss should be denied.

## BACKGROUND

### I.    Federal Law

In August of 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2268 (1996). Recognizing that

"[s]elf-sufficiency has been a basic principle of United States immigration law since this country's earliest immigration statutes," Congress declared that "aliens within the Nation's borders [should] not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations." 8 U.S.C. § 1601(2)(A). Congress further expressed that "the availability of public benefits [should] not constitute an incentive for immigration to the United States." *Id.* § 1601(2)(B). One month later, Congress passed, and President Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which further sought to disincentivize illegal immigration. *See* IIRIRA, Pub. L. No. 104-208, Div. C, tit. III, subtitle A, §§ 306, 308, 110 Stat. 3009–546, 3009–607-12, 3009–614-25; *see also* Memorandum for the Heads of Exec. Dep't on Deterring Illegal Immigration, 60 Fed. Reg. 7885 (Feb. 7, 1995). As relevant here, IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. The straightforward and unambiguous provision under IIRIRA that is central to this case is Section 1623(a), which provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a); *see also Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312 (5th Cir. 2023) (observing that statute imposes a "condition precedent" for unlawful aliens' eligibility for residence-based benefits). Section 1623(a)'s text expresses Congress' intent to prohibit illegal aliens from eligibility for postsecondary education benefits, such as in-state tuition, based on residence within a state unless U.S. citizens are also eligible, regardless of residency.

3

## II.    Kansas Law

In direct conflict with federal law, Kansas law permits an unlawfully present alien to qualify for reduced in-state tuition rates based on residency within Kansas but does not make U.S. citizens eligible for such benefits without regard to their residence. Like many states, Kansas provides a preferential tuition rate at its public postsecondary educational institutions to Kansas residents. *See* Dkt. No. 1 ("Complaint" or "Compl.") at ¶¶ 25, 26. Although tuition rates are set by each institution, Kansas law determines which students are eligible for resident tuition. Since 2004, Kansas has allowed unlawful alien residents of Kansas to benefit from reduced in-state tuition rates while denying that same benefit to U.S. citizens who are not residents. *See* Kan. Stat. Ann. § 76-731a. Section 76-731a, titled "Certain persons without lawful immigration status deemed residents for purpose of tuition and fees," establishes who qualifies for Kansas in-state tuition. Under Section 76-731a(a), "any individual who is enrolled or has been accepted for admission at a postsecondary educational institution [in Kansas] shall be deemed to be *a resident* of Kansas." *Id.* (emphasis added). Under Section 76-731a(b), an "individual" is defined as a person who

> (b)(2)(A) has attended an accredited Kansas high school for three or more years,
>
> B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and
>
> C) *in the case of a person without lawful immigration status*, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so . . .
>
> (c) The provisions of this section *shall not apply* to any individual who:
>
> (1) Has a valid student visa; or
>
> (2) at the time of enrollment, *is eligible to enroll in a public postsecondary educational institution located in another state* upon payment of fees and tuition required of residents of such state.

4

Kan. Stat. Ann § 76-731a (emphasis added). Notably, students between the ages of seven and seventeen, including those not lawfully present, must attend school in the district in which they reside. *See* Kan. Stat. Ann. §§ 72-3118, 72-3120 ("every parent . . . in the state of Kansas, who has control over . . . any child who has reached the age of seven years and is under the age of 18 years . . . shall require such child to be regularly enrolled in and attend continuously each school year" a public or private high school in Kansas); 72-3122 ("Any child who has attained the age of eligibility for school attendance may attend school in the district where: . . . The child lives if the child lives with a resident of the district and the resident is the parent . . . ."); Kan. Const., art. 6, § (b) ("No tuition shall be charged for attendance at any public school to pupils required by law to attend such school, except such fees or supplemental charges as may be authorized by law.").

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A claim survives a motion dismiss if the plaintiff pleads facts sufficient to raise a right to relief beyond mere speculation. *See id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Dismissal is a "harsh remedy . . . ." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023).

## ARGUMENT

Proposed Intervenor seeks to dismiss the Complaint by arguing that Section 76-731a is not preempted by Section 1623(a). For the reasons that follow, Proposed Intervenor's arguments fail. Section 76-731a's requirements are conditioned on residency in Kansas. By requiring students to be ineligible for resident tuition in another state, Section 76-731a(c)(2) requires a student to reside in Kansas to be eligible for resident tuition in Kansas. For students to qualify for resident tuition,

Section 76-731a(b) provides two additional residence-based requirements by mandating (i) three years of attendance at a Kansas accredited high school, and (ii) graduation from a Kansas high school or receipt of a GED from within Kansas. Accordingly, under Kansas law, the tuition rate for an illegal alien in Kansas who satisfies Section 76-731a's criteria is the same tuition rate as other Kansas residents. But a U.S. citizen who is not eligible for in-state tuition under Section 76-731a, due to residency requirements, is required to pay higher, nonresident tuition. Kansas thus makes illegal aliens eligible for in-state tuition while denying that same benefit to all U.S. citizens.

I.    **Section 1623(a) Expressly Preempts Kansas's Effort to Provide In-State Tuition to Illegal Aliens.**

On its face, Section 76-731a is residency-based and makes illegal aliens eligible for postsecondary education benefits while excluding U.S. citizens who have not resided in Kansas. As a result, it is expressly preempted by Section 1623(a). *See Texas*, at *3, *4 ("Under the Challenged Provisions '[s]o long as [illegal aliens] satisfy the statute's residency requirements, illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not.' . . . We agree with the district court that § 1623(a) 'bars such a disparity.'") (quoting *Young Conservatives*, 73 F.4th at 308).

The Complaint more than adequately alleges a viable claim of express preemption. Express preemption occurs when Congress, by statute, explicitly supersedes all state enactments in a particular area. *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 203–04 (1983). When a federal statute contains an express preemption provision, state law must give way to federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). When the federal statute contains an express preemption clause, the court does not indulge "any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579

6

U.S. 115, 125 (2016) (citation omitted). "[C]ongressional purpose is 'the ultimate touchstone'" in determining if a state law is preempted. *Malone v. White Motor Corp.*, 435 U.S. 497, 504 (1978). "[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990) (citations omitted); *see also Choate v. Champion Home Builders Co.*, 222 F.3d 788, 792 (10th Cir. 2000).

The federal statute at issue here, Section 1623(a), contains an unambiguous express preemption provision, stating "[n]otwithstanding any other provision of law," an alien not lawfully present in the U.S. "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." *Id.* "[T]he '[n]otwithstanding any other provision of law' language means that 'Section 1623(a) contains an express preemption clause.'" *United States v. Nebraska*, --- F. Supp. 3d ---- , No. 8:26CV172, 2026 WL 1584862, at *26 (D. Neb. June 3, 2026) ("*Nebraska*") (quoting *Young Conservatives*, 73 F.4th at 312); *see United States v. Texas*, 350 F.R.D. 74, 79–81 (N.D. Tex. 2025) (construing Section 1623(a) as an express preemption provision). Section 1623(a) mandates that U.S. citizens must be eligible for a benefit regardless of residency before any alien not lawfully present in the U.S. can receive that benefit[1] based on residency. The determination of preemption here is not complicated.

The Fifth Circuit has already held as much, stating that Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives*, 73 F.4th at 313; *see Texas*, at *1 ("Section 1623(a) preempts what we call

---

[1] It is indisputable that reduced in-state tuition rates are a "benefit" under Section 1623(a). *See, e.g.*, *Benefit*, Black's Law Dictionary (12th ed. 2024) ("advantage or privilege something gives"); *Benefit*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/benefit (last visited July 10, 2026) ("something that produces good or helpful results or effects or that promotes well-being"). A House conference committee report, commenting on the language that was ultimately enacted as § 1623, states that "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104-828, at 240 (1996).

7

the Challenged Provisions vis-à-vis illegal aliens, barring states from conferring postsecondary education benefits on any illegal alien based on residence unless the same benefit is available to all U.S. citizens and nationals irrespective of residency."), *id.* at *3–*9 ("Under the Challenged Provisions '[s]o long as [illegal aliens] satisfy the statute's residency requirements, illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not.' . . . § 1623(a) 'bars such a disparity.'") (quoting *Young Conservatives*, 73 F.4th at 308); *see also Equal Access Educ. v. Merten*, 305 F. Supp. 2d 585, 606 (E.D. Va. 2004) (under Section 1623(a) "aliens cannot receive in-state tuition unless out-of-state United States citizens receive this benefit"); *Foss v. Ariz. Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *3 (Ariz. Ct. App. Nov. 7, 2019) ("Section 1623 is directed at . . . curtailing the authority of educational institutions to grant in-state tuition benefits to undocumented aliens. . .").[2]

Moreover, since 2025, five other courts have enjoined or upheld injunctions against states with laws similar to Section 76-731a. *See Texas*, 350 F.R.D. at 79–81; *Texas*, at *1 (permanently enjoining Texas defendants from enforcing Texas Education Code §§ 54.051(m) and 54.052(a) because they violated the Supremacy Clause); *United States v. Oklahoma*, No. 25-CV-265-RAW-DES, 2025 WL 2815660 (E.D. Okla. Aug. 29, 2025) ((adopting Report and Recommendation) and (ECF 23 Order and Final Consent Judgment)); *see also Oklahoma*, No. 25-CV-265-RAW-DES, 2025 WL 2815662 at *1 (E.D. Okla. Aug. 7, 2025) (Report and Recommendation holding that 8 U.S.C. § 1623(a) expressly preempts Oklahoma laws providing that individuals "who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria"); *United States v. Ky. Council*

---

[2] In addition to the plain language of Section 1623(a), the title of 8 U.S.C. § 1623, "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," as well as other provisions of IIRIRA put Congress's intent beyond doubt. *Cf. id.* §§ 1601, 1601(2)(A), (B), (5), (6).

*on Postsecondary Educ.*, No. 3:25-cv-00028-GFVT, 2026 WL 880597, ECF 57, Opinion & Order, at 21 (E.D. Ky. Mar. 31, 2026); *Nebraska*, at *26 (holding that similar "statutes unquestionably conflict with § 1623(a) to the extent that they permit aliens unlawfully present in the United States to qualify for in-state tuition and state financial assistance 'on the basis of residence' in Nebraska while at the same time denying those postsecondary education benefits to United States citizens who do not meet the residency-based requirements of those statutes"). Accordingly, the Complaint states a viable express preemption claim and the MTD should be denied.

## II. Section 76-731a is Based on Residence in Kansas.

Section 76-731a makes in-state tuition benefits available to illegal aliens because they are expressly considered "residents" under the statute and nonresidents are expressly excluded from receiving such benefits. Additionally, the other criteria for determining eligibility for in-state tuition benefits in Kansas depend on proxies for residence.

### A. Section 76-731a is expressly based on residence in Kansas.

Proposed Intervenor attempts to avoid preemption by arguing that Section 76-731a makes illegal aliens eligible for in-state tuition benefits on a basis other than residency. *See* MTD at 5–7. That suggestion ignores the plain text of the first sentence of Section 76-731a which deems an "individual" to "be a *resident* of Kansas for the purpose" of in-state tuition. Kan. Stat. Ann. 76-731a(a) (emphasis added). Unsurprisingly, Section 76-731a, entitled "Certain persons without lawful immigration status deemed *residents* for purpose of tuition and fees," is expressly based on residence under Kansas law. Proposed Intervenor is wrong to say that the place "where the student lived" is irrelevant to an award of in-state tuition benefits, MTD at 5, it is expressly relevant. Section 1623(a) is agnostic on how a state determines who gets to pay resident tuition. Its plain meaning is simply that, when a state establishes a scheme under which residents who are U.S.

9

citizens are charged one price and those who live elsewhere are charged more, unlawfully present aliens cannot be eligible for the lower rate. Kansas decided to award resident tuition on the terms in Section 76-731a, which makes aliens who are "resident[s]" in Kansas eligible to pay a lower tuition rate. As a result, Section 76-731a is preempted.

Proposed Intervenor further argues that we should overlook the word "resident" in the text of Section 76-731a and instead focus on the word "deemed" in order to render the word "resident" a legal fiction. MTD at 6. Essentially, Proposed Intervenor says that the "resident" in Section 76-731a is not actually a resident but is only "deemed" a resident for purposes of in-state tuition benefits. *See id.* Putting aside the dubiousness of that distinction, it is indisputable that Kansas makes individuals eligible for in-state tuition benefits based on residence in Kansas. The students who ultimately receive tuition benefits receive them based on their residence in Kansas because the statute makes individuals who are eligible for in-state tuition benefits in other states ineligible for in-state tuition benefits in Kansas. *See* Kan. Stat. Ann. § 76-731a(c)(2); *see also infra* Argument § II.B. The Court should look at what Section 76-731a actually does (i.e., dictates eligibility for in-state tuition benefits based on residence) regardless of the word "deemed" in the statute.

Section 76-731a includes a residency requirement by expressly rendering "any individual" who is eligible for resident tuition in another state ineligible for Kansas in-state tuition. *See* Kan. Stat. Ann. 76-731a(c)(2). By excluding those who are eligible for in-state tuition benefits in another state, Section 76-731a includes a residency requirement, as eligibility for in-state tuition in a state results from residence in that state. This requirement excludes students who do not reside in Kansas from eligibility for Kansas in-state tuition, and is thus based on residence. As Proposed Intervenor recognizes, "[t]he Court's inquiry therefore ends with the statutory text." MTD at 7.

10

### B.    Section 76-731a relies on proxies for residence.

Alternatively, while Section 76-731a(a)'s express reliance on who is deemed a "resident" of Kansas for purposes of in-state tuition is sufficient, the definition of the term "individual" cements this conclusion by setting forth criteria that amount to proxies for residence within the state. *See Texas*, at *6 ("Section 1623(a) does not limit its preemptive effect to state-law residency determinations based on a single factor."); *Texas*, 350 F.R.D. at 81 ("[T]he fact that Texas law evaluates different factors to determine residency does not place [the laws] outside the purview of Section 1623(a)'s express preemption clause."). Proposed Intervenor describes the criteria in Section 76-731a as mere "educational requirements," not residential ones, MTD at 7, but high school attendance and diplomas are proxies for residency in Kansas. "[W]hat cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows,' and the prohibition . . . is 'levelled at the thing, not the name.'" *Students*, 600 U.S. at 230 (citation omitted).

Two of the requirements to be considered an "individual" under Section 76-731a are (i) attendance at a *Kansas* high school for at least three years and (ii) graduation from a *Kansas* high school or receipt of a GED in *Kansas*. *See* Kan. Stat. Ann. §§ 76-731a(b)(2). These are not mere "educational requirements" that render Section 1623(a) inapplicable, MTD at 7, these are proxies for residence in Kansas. *See Texas*, at *9 ("graduating from a high school in Texas" "is a proxy for residence"). Under Kansas law, students between the ages of seven and seventeen, including those not lawfully present, attend school in the district in which they *reside*. *See* Kan. Stat. Ann. §§ 72-3122, 72-3118, 72-3120 (compulsory school attendance based on parent's residence in Kansas). Thus, Section 76-731a grants in-state tuition based on proxies for residence.

The limiting principle on proxies for residence is clear. For example, eligibility for in-state tuition based on high school attendance and graduation anywhere in the U.S. would not be a proxy

11

for residence in Kansas. Kansas chose to provide in-state tuition based on high school attendance and graduation in Kansas, which reflects a common sense understanding of residence. Individuals seeking enrollment in Kansas colleges must have graduated from high school or attained the equivalent of a high school diploma, and Kansas could reasonably conclude that those who graduated from Kansas high schools should be treated as Kansas residents for purposes of resident tuition. A state could determine residency differently—using voter registration, tax filings, mailing address, presence, presence with intent to remain, etc.—but there is no indication that Congress intended to limit the reach of the federal statute based on which policy choices a state makes.

### III.    U.S. Citizens Who Do Not Reside in Kansas Are Not Eligible for In-State Tuition Benefits in Kansas.

Proposed Intervenor argues that because it can identify hypothetical individuals who do not reside in Kansas who may be eligible for in-state tuition in Kansas, Section 76-731a somehow does not make individuals (and aliens) eligible for in-state tuition benefits based on residence in Kansas. MTD at 3 n.1, 9–14. But the fact that nonresidents may receive in-state tuition benefits is irrelevant. First, the question in the federal statute is whether an alien is provided a benefit by the state "on the basis of residence." 8 U.S.C. § 1623(a). Kansas law treats aliens who graduated from high school in the state as residents. *See supra* Argument § II.B; Background § II.

Second, concerning Proposed Intervenor's unusual examples of individuals who would be eligible for Kansas in-state tuition benefits but reside outside of Kansas, Proposed Intervenor artificially limits Section1623 to *present* residence, but Section 1623(a) is not so limited. Proposed Intervenor's second and third hypothetical students include (i) a student who "move[d] to Colorado two weeks after graduat[ing], and then enroll[ed] at Kansas State University," and (ii) a student who "liv[ed] with non-resident military parents in Kansas" and, after attending and graduating from a Kansas high school, presumably moved with his parents who "le[ft] Kansas to live

12

elsewhere." MTD at 10. However, nothing in Section 1623(a)—"on the basis of residence"—requires in-state tuition to be provided based on an alien's *current* residence (or residence at any particular time). A state may make a choice about the timing of any residency requirement for in-state tuition. But there is no evidence that Congress intended to draw distinctions in federal law based on that choice. Instead, "on the basis of residence" means residence in the state at any time. Both individuals in the second and third examples, at some point, resided in Kansas and would be eligible for in-state tuition in Kansas based on their prior residence. *See* MTD at 10.

Under the first example, Proposed Intervenor admits that she would award in-state tuition benefits to an illegal alien who never resided in Kansas. *See id.* Notwithstanding that if this student was a U.S. citizen, he would not be eligible for this benefit, this example proves nothing because it applies the wrong test to Section 1623(a). That Kansas employs a definition of "resident" that sweeps in some individuals whom Proposed Intervenor consider nonresidents—whether that number is small or large—is irrelevant. As explained by the Fifth Circuit,

> If § 1623(a)'s 'a citizen or national' phrase could be satisfied by a narrow subset of persons, the 'unless' condition would not do meaningful work in constraining a state's provision of postsecondary education benefits to illegal aliens. Otherwise, an enterprising litigant could just point to some U.S. citizen or national made eligible under a narrow path while improperly denying in-state benefits to the rest of the citizenry.

*Texas*, at \*7. Indeed, Proposed Intervenor cites military members being eligible for in-state tuition benefits without regard to residence. MTD at 12. Those individuals are not provided a benefit on the basis of residence at all, although they receive the same benefit as residents do. But their existence, as with the first example student, does not nullify the whole federal scheme. Rather, the clause limiting the federal statute's reach to circumstances in which "a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident," 8 U.S.C. § 1623(a), has the more modest effect of confirming that the federal

statute does not compel unlawfully present aliens to be treated worse than similarly situated nonresident U.S. citizens. The relevant point is that the state is providing the benefit to aliens on the basis of residence—that is what in-state tuition is.

Proposed Intervenor relies on *United States v. Walz,* No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026). The United States has appealed that decision, which was wrongly decided, to the Eighth Circuit. And any reliance on but-for causation principles only underscores the point. There is no dispute here that Kansas seeks to provide in-state tuition benefits to unlawfully present aliens because it classifies them as resident students and makes students who are eligible for in-state tuition in other states ineligible for in-state tuition in Kansas. Proposed Intervenor concedes that, while aliens receive in state tuition benefits, not all U.S. citizens are eligible. MTD at 14 ("Certainly, not all Americans will qualify for the Haskell University exception or a reciprocal agreement" under Kansas law.). Therefore, because one alien is eligible for in state tuition in Kansas, all U.S. citizens must be eligible, but Proposed Intervenor concedes that they are not. As explained by the Fifth Circuit, "§ 1623(a) bars such a disparity." *See Texas*, at *4.

Thus, Kansas makes illegal aliens eligible for in-state tuition benefits based expressly on their residency in Kansas, as well as on proxies for residence, while denying that same benefit to U.S. citizens residing outside of Kansas. But "Section 1623(a)'s express federal preemption provision displaces any state-law tuition disparity benefiting illegal aliens." *Texas*, at *8.

## IV.    Proposed Intervenor Misinterprets Section 76-731a.

Proposed Intervenor's argument premised on Section 76-731a's reference to "a citizen or national," and in particular on the use of the word "a," which means "any or one," MTD at 11–12, is misplaced, and has been rejected. As explained by the Fifth Circuit,

> Section 1623(a) is a categorical prohibition whose reference to 'a citizen or national' naturally reads to include the plural, and contains no capacious escape hatch allowing a state to satisfy the 'unless' condition by identifying a single U.S.

14

citizen or national somewhere who can obtain the benefit *vis-à-vis* a limited exception.

*Texas*, at *7. Proposed Intervenor's contrary reading has no textual basis and would produce nonsensical results that would almost completely neuter Section 1623(a).[3] Congress could not have wanted to make unlawful aliens ineligible for state postsecondary education benefits based on state residence but wished to restore that eligibility if a single nonresident citizen were made eligible. *Cf.* H.R. Rep. No. 104-828, at 240 (1996) (Conf. Rep.) ("This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education.").

The meaning of the parallel structure in Section 1623(a) is straightforward: An unlawfully present alien is eligible for a benefit only to the same extent that an identically situated nonresident citizen is eligible for that benefit, and in no greater an amount, duration, and scope. The categorical eligibility for in-state tuition at issue here can stand only if the same benefit is available to all U.S. citizens irrespective of residence. *See Texas*, at *4. Section 1623(a) does not mean that if a state makes a single nonresident citizen eligible for in-state tuition it no longer applies and unlawful aliens are categorically eligible. *See Texas*, at *7 ("Eligibility for one U.S. citizen or national in a discrete circumstance cannot unlock preferential in-state tuition for all illegal aliens when other citizens or nationals are excluded from consideration."). This follows from § 1623(a)'s plain text and is the only reading that makes practical sense. The Court should reject Kansas's reading, which is contrary to the statute's text and results in a nonsensical statute that is entirely self-defeating.

## CONCLUSION

For these reasons, the Court should deny Proposed Intervenor's MTD (Dk. Nos. 11, 12).[4]

---

[3] "Congress does not ordinarily enact self-defeating statutes." *Exxon Mobil Corp. v. Corporación Cimex, S. A. (Cuba)*, 609 U.S. ----, 2026 WL 1791259, at *7 (U.S. June 23, 2026); *accord Quarles v. United States*, 587 U.S. 645, 654 (2019); *Abramski v. United States*, 573 U.S. 169, 181 (2014).

[4] Kansas argues that not all of its law should be preempted. MTD at 14. However, Kansas's other residence-based in-state tuition statute does not seem to provide in-state tuition benefits to illegal aliens and is omitted from the Complaint. Kan. Stat. Ann. 76-729. Thus, Kansas will be able to maintain its in-state tuition scheme, but not for illegal aliens.

DATED: July 23, 2026

STANLEY E. WOODWARD, JR.
Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ANNA EDWARDS
Counsel to the Associate Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDRA MCTAGUE
Senior Litigation Counsel
Enforcement & Affirmative Litigation Branch

Respectfully Submitted,

s/ Jackson M. Story
JACKSON M. STORY (FL 1032001)
Trial Attorney
U.S. Department of Justice, Civil Division
Enforcement & Affirmative Litigation Branch
P.O. Box 386
Washington, DC 20044-0386
Phone: (202) 451-7304
Fax: (202) 514-8742
Email: jackson.m.story@usdoj.gov

RYAN A. KRIEGSHAUSER
United States Attorney, District of Kansas

*Attorneys for the United States*

16