## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 25-cv-1691-DWD |
| | ) |
| STATE OF ILLINOIS, | ) |
| JB PRITZKER, | ) |
| KWAME RAOUL, | ) |
| BOARD OF TRUSTEES FOR | ) |
| SOUTHERN ILLINOIS UNIVERSITY, | ) |
| BOARD OF TRUSTEES OF REND | ) |
| LAKE COLLEGE, | ) |
| BOARD OF TRUSTEES OF | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| BOARD OF TRUSTEES OF CHICAGO | ) |
| STATE UNIVERSITY, | ) |
| BOARD OF TRUSTEES OF EASTERN | ) |
| ILLINOIS COLLEGE, | ) |
| BOARD OF TRUSTEES OF ILLINOIS | ) |
| STATE UNIVERSITY, | ) |
| BOARD OF TRUSTEES OF | ) |
| NORTHEASTERN ILLINOIS | ) |
| UNIVERSITY, | ) |
| ILLINOIS STUDENT ASSISTANCE | ) |
| COMMISSION, and | ) |
| ILLINOIS DREAM FUND | ) |
| COMISSION, | ) |
| | ) |
| Defendants. | |

### <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

This matter is before the Court on Defendants' Motion to Dismiss for Failure to State a Claim (Doc. 18) and the Cross Motion for Summary Judgment filed by the United States (Doc. 26). The Court heard oral argument on May 5, 2026. (Doc. 37). Having

reviewed the record in its entirety, including the *Amici Curiae* Brief filed by Hispanic Federation, Inc. and LatinoJustice PRLDEF, Inc (Doc. 29-1), as well as the parties' supplemental briefing and replies (Docs. 27, 33, 38, 39, 40-1, 43-1, 45, and 46), the Court rules as follows.

## I.   BACKGROUND

The United States challenges three Illinois' laws, arguing they violate 8 U.S.C. § 1623(a) by granting postsecondary education benefits to aliens not lawfully present in the United States on the basis of their residence in Illinois, without extending the same benefits to U.S. citizens regardless of residency. Specifically, the United States seeks declaratory and injunctive relief as to the following statutes, each of which is discussed in turn below:

1. The in-state tuition provisions for public universities and community colleges, originating in the 2003 Acevedo Act (Public Act 093-0007; "Original Acevedo Act" or "2003 Acevedo Act") and as amended by Public Act 103-0876, eff. July 1, 2026; ("2024 Acevedo Act");

2. The Illinois DREAM Act (Public Act 97-0233; "DREAM Act"); and

3. The Retention of Illinois Students and Equity Act (Public Act 101-21), as amended in 2025 by Public Act 104-164 (eff. Jan. 1, 2026) ("RISE Act").

### A. In-State Tuition Provisions – 2003 Acevedo Act and the 2024 Amendments

The 2003 Acevedo Act provides eligible students with access to in-state tuition at the state's public community colleges[1] and universities,[2] including to aliens, who are not

---

[1] *See* 110 ILCS 805/6-4a (Public Community Colleges Act).
[2] *See* 10 ILCS §§ 305/7e-5(a)(5) (University of Illinois), 520/8d5(a)(5) (Southern Illinois University), 660/5-88(a)(5) (Chicago State University), 665-10/88(a)(5) (Eastern Illinois University), 675/20-88(a)(5) (Illinois State University), 680/25-88(a)(5) (Northeastern Illinois University); 670/15-88(a)(5) (Governors State

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 3 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 3 of 27    Page ID
#514

lawfully present in the United States. Under the 2003 Act,[3] for tuition purposes, the

governing boards of public universities and community colleges were required to deem

an individual an Illinois resident if the individual met all the following conditions:

1. The individual resided with a parent or guardian while attending a public or private high school in Illinois;
2. The individual graduated from a public or private Illinois high school or received the equivalent of a high school diploma in Illinois;
3. The individual attended school in Illinois for at least three years as of the date of high school graduation or receipt of the equivalent diploma; and
4. In the case of an individual who is not a citizen or lawful permanent resident of the United States, the individual provided the institution with an affidavit stating that the individual will file an application to become a permanent resident of the United States at the earliest opportunity the individual is eligible to do so.[4]

*See* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88,

685/30-88, 690/35-88), and 805/6- 4a(a)(5).

In 2024, the Illinois General Assembly enacted Public Act 103-0876, amending the

in-state tuition provisions for all nine Illinois public universities.[5] The amended

---

University); 685/30-88(a)(5) (Northern Illinois University); and 690/35-88(a)(5) (Western Illinois University). As noted in the Complaint, Governors State University, Northern Illinois University, and Western Illinois University do not apply or enforce the residency-based distinctions created by these provisions. (Doc. 1, pg. 2, n. 1). Instead, they charge the same tuition rate to all U.S. citizens and nationals, regardless of state of residence. (*Id.*). Accordingly, as stated during oral argument, the boards of trustees for these universities are not named in the Complaint.

[3] At the time the instant complaint was filed, the 2003 Acevedo Act was in effect. As to Illinois public universities, the relevant 2003 versions of these Acevedo Act provisions applied until July 1, 2026. They were replaced by amended versions enacted in Public Act 103-876 (SB 461, signed in 2024), which took effect beginning July 1, 2026. As to Illinois public community colleges, the 2003 Acevedo Act provision (codified at 110 ILCS 805/6-4a) remained in effect without the July 1, 2026 sunset that applied to the university statutes.

[4] The 2003 Acevedo Act also contained a temporal limitation, but that limitation is no longer relevant after the 2026 changes described below.

[5] The 2024 Acevedo Act specifically amends the following sections (effective July 1, 2026):

1. 110 ILCS 305/7e-5 (University of Illinois)
2. 110 ILCS 520/8d-5 (Southern Illinois University)
3. 110 ILCS 660/5-88 (Chicago State University)
4. 110 ILCS 665/10-88 (Eastern Illinois University)
5. 110 ILCS 670/15-88 (Governors State University)

3

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 4 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 4 of 27    Page ID
#515

requirements create two alternative pathways under which a qualifying individual, other than one who holds a non-immigrant alien status that precludes an intent to permanently reside in the United States, must be charged tuition at the same rate as an Illinois resident.

Under the first pathway, an individual qualifies for tuition at the same rate as an Illinois resident if the individual meets all of the following requirements:

1. Attended a public or private high school in Illinois for at least two years before enrolling at the university;
2. Graduated from a public or private high school in Illinois or received the equivalent of a high school diploma in Illinois;
3. Attended high school while residing in Illinois and has not established residency outside Illinois before enrolling at the university; and
4. Agrees to swear and affirm to the university that the individual will file an application to become a permanent resident of the United States at the earliest opportunity, if the individual is eligible to do so and is not a citizen or lawful permanent resident of the United States.

*See* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88.

Under the second pathway, an individual qualifies for tuition at the same rate as an Illinois resident if the individual meets all of the following requirements:

1. Attended any of the following for at least two years and for a cumulative total of at least three years before enrolling at the university: (i) a public or private high school in Illinois; (ii) a public community college in an Illinois community college district organized under the Public Community College Act; or (iii) a combination of such institutions;

---

6. 110 ILCS 675/20-88 (Illinois State University)
7. 110 ILCS 680/25-88 (Northeastern Illinois University)
8. 110 ILCS 685/30-88 (Northern Illinois University)
9. 110 ILCS 690/35-88 (Western Illinois University).

*See* P.A. 103-876; *see also* the source notes to each of the above sections in the Illinois compiled statutes. The Act did not amend the parallel provision for public community colleges (110 ILCS 805/6-4a). As a result, community colleges continue to operate under the original 2003 Acevedo criteria, while public universities are subject to the new two-pathway framework beginning July 1, 2026.

4

Case 5:26-cv-04066-HLT-BGS   Document 24-2   Filed 07/27/26   Page 5 of 27
Case 3:25-cv-01691-DWD   Document 48   Filed 07/24/26   Page 5 of 27   Page ID
#516

2. At the time of university enrollment: (i) has graduated from a public or private high school in Illinois or received the equivalent of a high school diploma in Illinois; and (ii) has earned an associate degree from, or completed at least 60 credit hours of graded, transferable coursework at, a public community college in an Illinois community college district;
3. Attended one of the educational institutions referenced in the first bullet while residing in Illinois and has not established residency outside Illinois before enrolling at the university; and
4. Agrees to swear and affirm to the university that the individual will file an application to become a permanent resident of the United States at the earliest opportunity, if the individual is eligible to do so and is not a citizen or lawful permanent resident of the United States.

*See* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88.

## B. Illinois DREAM Act

The Illinois DREAM Act, Public Act 97-0233 enacted in 2011 and codified in relevant part at 110 ILCS 947/67, created the Illinois DREAM Fund, a privately funded scholarship program administered by the Illinois DREAM Fund Commission. To qualify for a DREAM Fund scholarship, a student must meet four criteria:

1. Have resided with a parent or guardian while attending a public or private high school in Illinois;
2. Have graduated from an Illinois high school or received the equivalent of a high school diploma in Illinois;
3. Have attended school in Illinois for at least three years prior to graduation or receipt of the equivalent; and
4. Have at least one parent who immigrated to the United States. The same legislation also made Illinois' 529 college savings and prepaid tuition programs available to individuals using an Individual Taxpayer Identification Number (ITIN) rather than a Social Security Number.

110 ILCS § 947/67(c).

## C. The RISE Act

Case 5:26-cv-04066-HLT-BGS   Document 24-2   Filed 07/27/26   Page 6 of 27
Case 3:25-cv-01691-DWD   Document 48   Filed 07/24/26   Page 6 of 27   Page ID
#517

In 2019, the Illinois General Assembly passed the RISE Act (Public Act 101-21). The Act was signed into law and codified at 110 ILCS 986/, with an effective date of January 1, 2020. In 2025, the Governor of Illinois signed into law Public Act 104-0164, which amends provisions of the RISE Act, effective January 1, 2026.

Section 5 of the Act sets forth the General Assembly's findings, including the following statement of state policy:

> The State of Illinois is committed to ensuring that all students who are residents of this State have meaningful and equitable access to higher educational opportunities notwithstanding the student's race, color, gender or gender identity, age, ancestry, marital status, military status, religion, pregnancy, national origin, disability status, sexual orientation, order of protection status, as defined under Section 1-103 of the Illinois Human Rights Act, or immigration status.

110 ILCS 986/5.

Section 10 defines the key term for eligibility: "In this Act, 'Illinois resident' includes any person who is deemed an Illinois resident for tuition purposes under State law." 110 ILCS 986/10.

Section 15(a), as amended, provides:

> A student who is an Illinois resident and who is not otherwise eligible for federal financial aid, including, but not limited to, a transgender student who is disqualified for failure to register for selective service or a noncitizen student who has not obtained lawful permanent residence, shall be eligible for financial aid and benefits as described in subsection (b).

110 ILCS 986/15(a).

Subsection (b), as amended, states that, notwithstanding any other provision of law to the contrary, a student who is an Illinois resident:

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 7 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 7 of 27    Page ID
#518

> (i) is eligible to apply or receive consideration for any student aid or benefit funded or administered by the State or any State agency, offered by a unit of local government, or administered by any public institution of higher learning, including, but not limited to, scholarships, grants, awards, stipends, room and board assistance, tuition waivers, or other financial or in-kind assistance and (ii) to ensure equity, success, and the retention of Illinois residents, may not be subject to any caps on grant assistance available under the Monetary Award Program other than those required by State law.

110 ILCS 986/15(b).

Subsection (c) directs that eligibility requirements "shall be interpreted to promote the broadest eligibility for students who are Illinois residents in accordance with State law or policy." 110 ILCS 986/15(c). Subsection (d) clarifies that the section does not modify academic-standing or income-eligibility criteria that otherwise apply to state financial aid programs. 110 ILCS 986/15(d). Finally, subsection (e) contains a legislative finding that Section 15 constitutes a State law within the meaning of 8 U.S.C. § 1621(d). 110 ILCS 986/15(e).

### D. House Bill 5093

In June 2026, the Illinois General Assembly passed House Bill 5093 (Illinois Public Act 104-0511), which was signed into law on June 26, 2026. The bill further amends the in-state tuition provisions contained in the governing acts of Illinois universities and colleges. House Bill 5093 modifies the eligibility criteria for residency-based tuition benefits and takes effect for the 2027-28 academic year.

### E. Pending Motions

Defendants have moved to dismiss the Complaint, contending that 8 U.S.C. § 1623(a) constitutes an unconstitutional exercise of federal power under the Tenth

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 8 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 8 of 27    Page ID
#519

Amendment's anti-commandeering doctrine. (Doc. 18). The United States opposes the motion and has filed a cross motion for summary judgment. (Doc. 26). It argues that it is entitled to judgment as a matter of law because the challenged Illinois laws condition eligibility for postsecondary education benefits on a student's residence in the State, yet those benefits are not available to U.S. citizens and nationals who reside outside Illinois. The United States therefore maintains that the laws are expressly preempted by § 1623(a). In reply, Defendants argue that the challenged laws comply with § 1623(a) and that, even if they do not, § 1623(a) is not a valid preemption provision.[6]

## II.    PRELIMINARY MATTER – MOOTNESS

A case must remain live at every stage of the litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

When a challenged statute expires by its own terms, is repealed, or is significantly amended, claims for declaratory and injunctive relief are ordinarily moot if the provision no longer has continuing legal effect and there is no reasonable expectation that the challenged conduct will recur in the same form. *FBI v. Fikre*, 601 U.S. 234, 241 (2024); *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003). Applying these standards, the Court finds as follows.

---

[6] LatinoJustice PRLDEF, Inc. and the Hispanic Federation, Inc. have filed an *Amici Curiae Brief* in support of Defendants. (Doc. 29-1).

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 9 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 9 of 27    Page ID
#520

### A. Moot Claims

Challenges to the original subsections of the in-state tuition provisions of the 2003 Acevedo Bill applicable to Illinois public universities (*see* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88) are moot. These subsections, by their own terms, applied only to tuition periods beginning before July 1, 2026. They expired on that date and no longer govern residency determinations or tuition charges for any academic period beginning on or after July 1, 2026. They therefore have no continuing legal effect. Because the old subsections have sunsetted, challenges to those provisions are dismissed as moot.

### B. The Remaining Claims are Not Moot

Challenges to the current the in-state tuition provisions, as amended by Public Act 103-0876, which are applicable to Illinois public universities (*see* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88), and challenges to the current in-state tuition provision applicable to Illinois public community colleges (110 ILCS 805/6-4a)) are not moot. These provisions govern in-state tuition eligibility for the 2026-27 academic year. They remain fully operative and have continuing legal effect. Declaratory and injunctive relief against their enforcement can still provide effective relief. Accordingly, these claims are not moot.

Challenges to the Illinois DREAM Act (Public Act 97-233, 2011), codified in relevant part at 110 ILCS § 947/67 are not moot.This statute has no sunset date. It remains

9

Case 5:26-cv-04066-HLT-BGS Document 24-2 Filed 07/27/26 Page 10 of 27
Case 3:25-cv-01691-DWD Document 48 Filed 07/24/26 Page 10 of 27 Page ID
#521

in full force and effect. The claims concerning the Illinois DREAM Act therefore are not moot.

Challenges to the RISE Act and its 2025 amendments (Public Act 101-0021, effective 2020, as amended by Public Act 104-0164, effective January 1, 2026), codified at 110 ILCS § 986/are not moot.These provisions remain operative and continue to govern eligibility for state financial aid and, under the 2025 amendments, benefits offered by units of local government.

**C. Effect of the 2026 Legislation (House Bill 5093)**

Although House Bill 5093 was signed into law on June 26, 2026, its substantive amendments to the criteria for in-state tuition classification do not take effect until the 2027-2028 academic year for public universities and beginning with the fall 2027 semester for community colleges. Until those provisions become operative, the current versions of the in-state tuition laws remain in full force and effect and continue to govern eligibility determinations for the current and upcoming academic periods.

The United States has not moved to amend the complaint to assert challenges to House Bill 5093. Accordingly, whether House Bill 5093 raises constitutional concerns is a question for another day. The Court resolves the legality of the statutes as they stand and operate today.

In summary, challenges to the original subsections of the in-state tuition provisions of the 2003 Acevedo Bill applicable to Illinois public universities are

Case 5:26-cv-04066-HLT-BGS   Document 24-2   Filed 07/27/26   Page 11 of 27
Case 3:25-cv-01691-DWD   Document 48   Filed 07/24/26   Page 11 of 27   Page ID
#522

**DISMISSED AS MOOT.** All other claims identified in Section B above remain live and will proceed on the merits.

### III.   CONSTITUTIONAL PRINCIPLES

At the heart of the parties' arguments is our federalist system of government, as such the Court begins by discussing relevant principles below.

### A.  Dual Sovereignty

The Constitution established a system of dual sovereignty between the federal government and the States. *Gregory v. Ashcroft,* 501 U.S. 452, 457, 111 S. Ct. 2395, 2439, 115 L. Ed. 2d 410 (1991); *Muprhy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018); *see also McHenry Cnty. V. Kwame Raoul*, 44 F.4th 581, 589 (7th Cir. 2022). "Although the States surrendered many of their powers to the new Federal Government, they retained 'a residuary and inviolable sovereignty,'" *Printz v. United States*, 521 U.S. 898, 918–19, 117 S. Ct. 2365, 2376, 138 L. Ed. 2d 914 (1997) (quoting The Federalist No. 39, at 245 (J. Madison)). This dual sovereignty is reflected in the Constitution, including Congress's enumerated powers under Article 1, § 8 and the Tenth Amendment's reservation of all non-delegated powers to the States. *Murphy*, 584 U.S. at 470-71. The Framers deliberately rejected the Articles of Confederation's model, in which the central government could act only through the States, and instead created concurrent sovereign authority exercised directly over the people. *Printz*, 521 U.S. at 919-20.  "Thus, both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'" *Murphy,* 584 U.S. at 470 (citation omitted).

11

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 12 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 12 of 27    Page ID
#523

"The great innovation of this design was that 'our citizens would have two political capacities, one state and one federal, each protected from incursion by the other[.]'" *Printz*, 521 U.S. at 920 (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 838, 115 S.Ct. 1842, 1872, 131 L.Ed.2d 881 (1995) (KENNEDY, J., concurring)). The separation of these spheres is one of the Constitution's structural protections of liberty: "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft*, 501 U.S. 452, 458, 111 S. Ct. 2395, 2400, 115 L. Ed. 2d 410 (1991). The Supremacy Clause, U.S. Const. art. VI, cl. 2, creates a "rule of decision" for this federalist system: "Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' " *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015) (quoting Art. VI, cl. 2). That rule "secures federal rights by according them priority whenever they come in conflict with state law." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989). But the Clause is not itself the "source of any federal rights." *Id.*

## B. Preemption Doctrine

The preemption doctrine stems from the Supremacy Clause. *McHenry Cnty. v. Kwame Raoul*, 44 F.4th 581, 587 (7th Cir. 2022). The Supreme Court has recognized "three different types of preemption – conflict, express, and field." *Murphy*, 138 S. Ct. at 1480. "All three, however, work in the same way: Congress enacts a law that imposes

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 13 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 13 of 27    Page ID
#524

restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *McHenry Cnty.*, 44 F. 4th at 587.

### C. Anticommandeering Doctrine

The anticommandeering doctrine is a limit on federal preemption rooted in the Tenth Amendment and the Constitution's structure of dual sovereignty. As the Supreme Court has explained: "[T]he Tenth Amendment confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S. 144, 157, 112 S. Ct. 2408, 2418, 120 L. Ed. 2d 120 (1992). One such limit is that "Congress may not simply 'commandee[r] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'" *Id.* at 161 (quoting *Hodel v. Virginia Surface Mining & Reclamation Assn., Inc.*, 452 U.S. 264, 288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981)). The doctrine is "the expression of a fundamental structural decision incorporated into the Constitution, i.e., the decision to withhold from Congress the power to issue orders directly to the States. *Murphy* 584 U.S. at 470. This is because "[t]he Constitution … 'confers upon Congress the power to regulate individuals, not States." *Murphy,* 584 U.S. at 472 (quoting *New York*, 505 U.S. at 166, 112 S.Ct. 2408). Further, "[t]he basic principle — that Congress cannot issue direct orders to state legislatures — applies" both when Congress attempts to "compel a State to enact legislation" and "prohibit[ ] a State from enacting new laws." *Id*. at 474–75, 138 S.Ct. 1461.

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 14 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 14 of 27    Page ID
#525

The anticommandeering principle serves several vital constitutional purposes. First, it is one of the Constitution's "structural protections of liberty," preserving the balance of power between the federal government and the States so as to reduce the risk of tyranny. *Printz*, 521 U.S. at 921 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 458 (1991)). Second, it promotes political accountability by ensuring that voters can identify which level of government is responsible for a particular policy choice. *New York*, 505 U.S. at 168-69; *Printz*, 521 U.S. at 929-30. Third, it prevents Congress from shifting the costs of federal regulation onto the States, forcing the federal government to weigh the benefits and burdens of its own programs. *Murphy*, 584 U.S. at 473.

### IV.    MOTION TO DISMISS

Defendants contend that 8 U.S.C. § 1623(a) is not a valid exercise of federal preemption authority but instead functions as an impermissible direct command to state legislatures, in violation of the anti-commandeering doctrine. For the reasons that follow, the Court disagrees and denies the motion to dismiss.

Section 1623(a) provides that an alien who is not lawfully present "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). By its plain terms, Section 1623(a) is an exercise of the federal government's exclusive authority "over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394, 132 S. Ct. 2492, 2498, 183 L. Ed. 2d

14

351 (2012).[7] It regulates the eligibility of *individuals*, specifically individuals who are not lawfully present. It does not dictate the content of state education policy or compel state officials to take any action. *See New York v. United States*, 505 U.S. 144, 166-68 (1992) (Congress may regulate individuals and preempt conflicting state law).

Under the statute, a state retains multiple choices in structuring its postsecondary education benefits. For instance, a state could decline to condition any such benefits on residence. Section 1623 does not appear to prohibit extending postsecondary tuition benefits to all U.S. citizens and nationals, thereby allowing the state to extend those same benefits to aliens not lawfully present. Or, a state could deny residence-based benefits to aliens not lawfully present while allowing them for citizens and nationals. Of course, which of these choices best serves Illinois remains a matter of policy well within the purview of the Illinois Legislature.

The restrictions of §1623(a) do not constitute commandeering under the Tenth Amendment. The anti-commandeering doctrine prohibits the federal government from dictating what state legislatures may or may not do or from compelling states to enact or enforce federal regulatory programs. *Murphy v. NCAA*, 584 U.S. 453, 470, 474 (2018). Section 1623(a) does none of these things. It does not dictate what state legislatures may or may not enact, and it does not compel states to administer or enforce any federal regulatory program. Unlike the statutes at issue in these cases, § 1623(a) operates as a

---

[7] "This authority rests, in part, on the National Government's constitutional power to 'establish an uniform Rule of Naturalization,' Art. I, § 8, cl. 4, and its inherent power as sovereign to control and conduct relations with foreign nations." *Arizona v. United States*, 567 U.S. 387, 394–95, 132 S. Ct. 2492, 2498, 183 L. Ed. 2d 351 (2012).

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 16 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 16 of 27    Page ID
#527

limit on the eligibility of private individuals for certain benefits and restricts any entities that might otherwise make such benefits available on a prohibited basis. Legislation that applies "evenhandedly" to regulate private conduct, "does not typically implicate the Tenth Amendment." *Haaland v. Brackeen,* 599 U.S. 255, 281–86, 143 S. Ct. 1609, 1632–35, 216 L. Ed. 2d 254 (2023). *See also Reno v. Condon*, 528 U.S. 141, 150-51, 120 S. Ct. 666, 672, 145 L. Ed. 2d 587 (2000) (statute prohibiting state DMVs from selling a driver's personal information without consent regulated states and other entities in their capacity as providers of services relating to individuals and did not constitute commandeering). As the Fifth Circuit has explained in construing the same provision, § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 313 (5th Cir. 2023). Critically, "§ 1623(a) doesn't impose *any* duty to grant the same benefits to U.S. citizens. . . . Its sole focus is on improper benefits for illegal aliens." *Id.* (emphasis supplied). The statute therefore functions as a limit on the eligibility of noncitizens rather than a command that states legislate or administer any particular program.

In their *Amici Brief*, LatinoJustice PRLDEF, Inc. and Hispanic Federation, Inc contend that § 1623(a) is unconstitutional because education is a core function of the state's power and should be respected as such. (Doc. 29-1, pg. 4). Education is a matter traditionally reserved to the States under the Tenth Amendment. First, neither the administration nor delivery of "education" services is curtailed or regulated by § 1623(a). Second, the federal government may validly regulate in areas of its enumerated authority

16

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 17 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 17 of 27    Page ID
#528

even when the regulation has incidental effects on state functions. *See Haaland,* 599 U.S. at 281-83.

Thus, despite Defendants' arguments to the contrary, the Court finds that Section 1623(a) is a valid preemption provision. It regulates the eligibility of private individuals for certain benefits in an area of federal authority. It does not commandeer state legislatures or officials. *See United States v. Texas,* — F.4th ––, 2026 WL 1983151, at *8 (5th Cir. July 9, 2026).

## V.    CROSS-MOTION FOR SUMMARY JUDGMENT

The Court now turns to the question of whether 8 U.S.C. § 1623(a) preempts (1) the current in-state tuition provisions as amended by Public Act 103-0876 (effective July 1, 2026); (2) the Illinois DREAM Act (Public Act 97-0233); and (3) the RISE Act as amended in 2025 (Public Act 101-0021, as amended by Public Act 104-0164).

8 U.S.C. § 1623 provides in relevant part:

> **§ 1623. Limitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits**
>
> **(a) In general**
> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623.

Express preemption occurs when a federal statute explicitly overrides state or local law. *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005). When a statute "contains an express pre-emption clause, we do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Commonwealth of Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (internal quotation omitted).

Although the Seventh Circuit has not directly addressed the issue, the Fifth Circuit has held that §1623(a) contains an express preemption clause. *Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304, 312 (5th Cir. 2023); *see also United States v. Texas*, — F.4th ––, 2026 WL 1983151 (5th Cir. July 9, 2026).

Giving the provision its plain and ordinary meaning, a state law is preempted if it (1) addresses "an alien who is not lawfully present in the United States"; (2) grants eligibility for a postsecondary education benefit "on the basis of residence within a State" to such aliens; and (3) does not also provide the same benefit eligibility "to a citizen or national of the United States" without regard to whether the citizen or national is a resident of the state. *See* 8 U.S.C. § 1623(a). In practical terms, § 1623(a) prohibits states from granting in-state tuition or other postsecondary education benefits to aliens not lawfully present on the basis of state residence unless the state extends the identical benefit to U.S. citizens without regard to their state of residence.

Defendants contend that the challenged statutes do not trigger preemption under 8 U.S.C. § 1623(a) because they do not grant eligibility "on the basis of residence within a State." Relying on the Immigration and Nationality Act ("INA"), they note that

18

Case 5:26-cv-04066-HLT-BGS   Document 24-2   Filed 07/27/26   Page 19 of 27
Case 3:25-cv-01691-DWD   Document 48   Filed 07/24/26   Page 19 of 27   Page ID
#530

"residence" is defined as the "place of general abode" or "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33). In contrast, when Illinois statutes use the terms "resident" or "residency," those terms are almost invariably interpreted to mean "domicile"; defined by Illinois law as physical presence coupled with the intent to remain permanently. Defendants argue that § 1623(a) is not implicated here because the benefits at issue are conferred on the basis of domicile under Illinois law rather than on "residence" as that term is defined in the INA.

Defendants cite *Fagiano v. Police Board of the City of Chicago*, 98 Ill. 2d 277, 456 N.E.2d 27 (1983), for the proposition that "resident" in the challenged statutes must be read as "domicile." The Court is not persuaded. *Fagiano* does not establish that Illinois courts invariably equate the two terms. To the contrary, the Illinois Supreme Court stressed that "residence," unlike "domicile," "does not … have a fixed and constant meaning" and that its meaning "must be ascertained from the purposes of the statute or ordinance." *Id.* at 282 (quoting Reese & Green, That Elusive Word, "Residence," 6 Vand. L. Rev. 561 (1953)). The Court explained that "laws requiring police officers or firemen to reside near or within a governmental unit" are intended to ensure rapid emergency response and to foster community identity. *Id.* at 284. In that context, the Court held that a reasonable person would understand "actually reside" within city limits to require individuals to "establish their principal residence, their domicile, in the city." *Id.* at 285. The decision therefore turned on legislative purpose and the practical demands of the particular statutory scheme.

19

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 20 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 20 of 27    Page ID
#531

In the instant case, the purposes of the challenged statutes are materially different. These laws extend postsecondary education benefits to students with significant ties to Illinois, regardless of immigration status. They do so through objective, statutory criteria rather than through a common-law factual inquiry into a student's subjective intent to remain in the State indefinitely.

The specific criteria enacted by the Illinois General Assembly control over any general common-law understanding of "residence." *See People v. Singleton*, 103 Ill. 2d 339, 345 (1984) ("settled principles of statutory construction call for the specific to control over the general"); *People ex rel. Siekmann v. Pennsylvania R.R. Co.*, 385 Ill. 350, 356 (1944). Here, the General Assembly supplied its own objective criteria for determining eligibility for postsecondary education benefits. Eligibility is therefore determined by the listed statutorily defined ties to Illinois.

The DREAM Act conditions eligibility on objective facts that include residing with a parent or guardian while attending high school in Illinois, attending an Illinois high school for at least three years, and graduating from an Illinois high school or receiving the equivalent of a high school diploma. Similarly, the RISE Act and the current in-state tuition provisions applicable to Illinois public universities under the 2024 Acevedo Act condition eligibility on attendance at and graduation from specified Illinois educational institutions while the individual was residing in Illinois and without having established residency outside Illinois prior to enrollment. In each case, the statutory criteria require a period of continuous residence in Illinois during the relevant educational period as a necessary condition for receiving the benefit. When a state law ties postsecondary

20

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 21 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 21 of 27    Page ID
#532

education benefits to high-school attendance or graduation in the state together with residence-related requirements (such as living with a parent or guardian in the state or residing in the state while attending high school), the benefit is still granted "on the basis of residence" for purposes of § 1623(a). *See United States v. Texas*, — F.4th ––, 2026 WL 1983151, at *5–6 (5th Cir. July 9, 2026) (holding that a comparable Texas provision granting residency, and thus in-state tuition, upon high-school graduation in the state together with residence requirements was preempted because residence was a necessary, but-for condition). These objective requirements demonstrate the student's "principal, actual dwelling place in fact" has been in Illinois. 8 U.S.C. § 1101(a)(33). By granting benefits on the basis of these criteria, these statutes confer eligibility "on the basis of residence within a State" within the meaning of 8 U.S.C. § 1623(a).

The same reasoning applies to the in-state tuition provision applicable to Illinois public community colleges. That statute provides that the board shall "deem an individual an Illinois resident, until the individual establishes a residence outside of this State, if" enumerated conditions are satisfied. 110 ILCS 805/6-4a(a). This deeming provision supplies the operative definition of "Illinois resident" for purposes of receiving the educational benefits and provides benefits "on the basis of residence within [Illinois]" within the meaning of 8 U.S.C. § 1623(a).

Even assuming arguendo that the challenged statutes confer benefits on the basis of "domicile" in Illinois, that does not remove them from § 1623(a)'s preemptive scope. Domicile is not an alternative to residence; it is a species of residence. The Seventh Circuit has described domicile as "the place where a person intends to live in the long run" and

21

Case 5:26-cv-04066-HLT-BGS   Document 24-2   Filed 07/27/26   Page 22 of 27
Case 3:25-cv-01691-DWD   Document 48   Filed 07/24/26   Page 22 of 27   Page ID
#533

"essentially a long-term residence." *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689, 692 (7th Cir. 2016). This understanding is longstanding. *See* e.g., *Texas v. Florida*, 306 U.S. 398, 424 (1939) (domicile requires "residence in fact, coupled with the purpose to make the place of residence one's home."); *Mitchell v. United States*, 88 U.S. 350, 352 (1874) ("a residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time."). *Comm'r v. Nubar*, 185 F.2d 584, 587 (4th Cir. 1950). ("'Residence' simply requires bodily presence as an inhabitant in a given place, while 'domicile' requires bodily presence in that place and also an intention to make it one's domicile.").

Section 1623(a) prohibits making aliens not lawfully present eligible for postsecondary benefits "on the basis of residence within a State." Because domicile necessarily includes actual residence, a benefit granted on the basis of domicile is still granted on the basis of residence within the state. A state cannot evade this prohibition by limiting eligibility to a narrower, intent-based subset of those who reside in the state. Such a construction would frustrate Congress's purpose in § 1623(a).

This conclusion is supported by the Fifth Circuit's recent decision in *United States v. Texas*, No. 25-10898, 2026 WL 1983151 (5th Cir. July 9, 2026).[8] There, the court held that Texas provisions permitting non-lawfully present aliens to qualify for in-state tuition by establishing residency through high school graduation in Texas plus residence requirements were expressly preempted by § 1623(a). The court rejected the argument

---

[8] *See also United States v. Nebraska*, No. 8:26CV172, 2026 WL 1584862 (D. Neb. June 3, 2026).

22

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 23 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 23 of 27    Page ID
#534

that the high-school-graduation component meant that residency was not "the basis" of the benefit for purposes of § 1623(a). It explained that the phrase "on the basis of" incorporates a but-for causation standard, and that residence remained a necessary condition for eligibility even when conjoined with other objective criteria. *Id.* at *5–*6. The court emphasized that § 1623(a) "does not limit its preemptive effect to state-law residency determinations based on a single factor." *Id.* at *6. The eligibility criteria in the challenged statutes operate in the same manner: residence is a necessary condition for the conferral of the benefits at issue.

Accordingly, the challenged Illinois statutes grant postsecondary education benefits to aliens not lawfully present on the basis of their residence within Illinois. They therefore satisfy the first two elements of express preemption under § 1623(a). The Court next considers the exception clause.

Defendants contend that the exception clause is satisfied so long as it is possible to identify at least one U.S. citizen who is not currently an Illinois resident yet remains eligible for the benefits under the challenged provisions. They posit the hypothetical of a student who was born in Illinois to parents domiciled in Illinois, attended and graduated from an Illinois high school, later moved to Missouri for college on a full scholarship and established residence there (while retaining Illinois domicile), and thus could still claim in-state tuition benefits in Illinois if she later pursued graduate studies here.

This argument is unpersuasive and was recently rejected by the Fifth Circuit on similar facts. *See United States v. Texas*, 2026 WL 1983151, at *6–*7. Section 1623(a) requires that the benefit be available to U.S. citizens "without regard to whether the citizen or

Case 5:26-cv-04066-HLT-BGS   Document 24-2   Filed 07/27/26   Page 24 of 27
Case 3:25-cv-01691-DWD   Document 48   Filed 07/24/26   Page 24 of 27   Page ID
#535

national is such a resident." This categorical condition precedent requires that the same benefit must be extended to citizens irrespective of their state of residence. The indefinite article "a" in the phrase "unless a citizen or national" is properly read to include the plural, consistent with the Dictionary Act, 1 U.S.C. § 1, the statutory context, and the anti-surplusage canon. *See United States v. Texas*, 2026 WL 1983151, at *6 (citing *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013)). Identifying one, or even a few, citizens who might still qualify because they retain lingering Illinois domicile ties traceable to the very residency-based criteria at issue does not satisfy the exception. It does not make the benefit available to U.S. citizens generally without regard to Illinois residency. Permitting a state to evade preemption by pointing to narrow, hypothetical exceptions of this kind would render the "unless" clause meaningless surplusage. As the Fifth Circuit observed, "if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal aliens must be ineligible to receive the same benefit based on residency." *Id.* at *7. Put simply, U.S. citizens or nationals must be treated no worse than illegal aliens.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 18) is **DENIED** and the United States' Cross Motion for Summary Judgment (Doc. 26) is **GRANTED** in **PART** as follows:

Challenges to the original subsections of the in-state tuition provisions enacted in Public Act 93-0007 (commonly known as the Acevedo Act) and applicable to Illinois

public universities (*see* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88) are **DISMISSED AS MOOT.**

The Court **DECLARES** that the in-state tuition provisions, as amended by Public Act 103-0876, which are applicable to Illinois public universities (*see* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88), as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are unconstitutional and invalid.

The Court **DECLARES** that the provision of Public Act 93-0007 (commonly known as the Acevedo Act) codified at 110 ILCS 805/6-4a of the Public Community College Act, as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and is unconstitutional and invalid.

The Court **DECLARES** that the Retention of Illinois Students and Equity (RISE) Act and its 2025 amendments (Public Act 101-0021, effective 2020, as amended by Public Act 104-0164, effective January 1, 2026) codified at 110 ILCS 986, as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and is unconstitutional and invalid

The Court **DECLARES** that the Illinois DREAM Act, 110 ILCS 947/67 (establishing the Illinois DREAM Fund Commission), as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and is unconstitutional and invalid.

With respect to any alien not lawfully present in the United States, Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are **PERMANENTLY ENJOINED** from enforcing:

25

Case 5:26-cv-04066-HLT-BGS    Document 24-2    Filed 07/27/26    Page 26 of 27
Case 3:25-cv-01691-DWD    Document 48    Filed 07/24/26    Page 26 of 27    Page ID
#537

1.  The in-state tuition provisions, as amended by Public Act 103-0876, which are applicable to Illinois public universities (*see* 110 ILCS 305/7e-5, 520/8d-5, 660/5-88, 665/10-88, 675/20-88, 680/25-88, 670/15-88, 685/30-88, and 690/35-88);

2.  The provision of Public Act 93-0007 (the Acevedo Act) codified at 110 ILCS 805/6-4a of the Public Community College Act;

3.  The Retention of Illinois Students and Equity (RISE) Act and its 2025 amendments (Public Act 101-0021, effective 2020, as amended by Public Act 104-0164, effective January 1, 2026) codified at 110 ILCS 986; and

4.  The Illinois DREAM Act, 110 ILCS 947/67 (establishing the Illinois DREAM Fund Commission).

The declaration and permanent injunction set forth herein apply only to the provisions specified above in the form in which they are presently in force as of the entry of this Order and specifically do not apply to House Bill 5093/Illinois Public Act 104-0511 which, although signed into law, does not take effect until 2027.

The injunctive relief granted herein is **STAYED** for a period of fourteen (14) days from the date of this Order to permit Defendants to seek a stay pending appeal. [9]

This Order is the final judgment of the Court and will be entered as a separate document pursuant to Federal Rule of Civil Procedure 58(a).

---

[9] At oral argument, Counsel for the Defendants observed that students not lawfully in the United States have come to rely on the tuition preferences that the State's laws have conferred upon them such that immediate imposition of injunctive relief would disrupt their financial plans for college in the 2026-2027 school year. Informally, Counsel for Defendants requests this Court delay the enforcement of any injunction to accommodate those students and the Universities that serve them because tuition has already been set for the upcoming school year. Given the findings above, this Court is not willing to delve into a policy making role by effectively allowing the Defendants to continue to violate federal law. The Illinois Legislature is free to address the hardships its preferential treatment has brought to citizens, nationals and those not lawfully within the United States.

The Clerk is **DIRECTED** to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated: July 24, 2026

DAVID W. DUGAN
United States District Judge