**UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF KANSAS,<br><br>Defendant,<br><br>and<br><br>KANSAS STUDENTS FOR AFFORDABLE TUITION,<br><br>Defendant-Intervenor. | Case No.: 5:26-cv-04066-HLT-BGS<br><br>**KANSAS STUDENTS FOR AFFORDABLE TUITION'S REPLY IN SUPPORT OF MOTION TO INTERVENE** |

Kansas Students for Affordable Tuition ("KanSAT") submits this reply brief in support of its Motion to Intervene. *See* Dkt. 7.

## I. INTRODUCTION

On the same day it was sued, Defendant the State of Kansas, through its Attorney General, circumvented its own political process and joined Plaintiff the United States of America in asking this Court to declare a duly enacted, two-decade-old Kansas statute (Kan. Stat. Ann. § 76-731a) unconstitutional and to enjoin its enforcement. *See* Dkt. 3. Now, the Parties ask this Court to shut the courthouse door behind them, excluding KanSAT—whose members will bear the immediate consequences of the Parties' collusive lawsuit—from participating and presenting adversarial briefing. *See* Dkts. 16, 18.

The Parties' opposition rests primarily on the faulty premise that intervention should be denied because they argue that Kan. Stat. Ann. § 76-731a is preempted. But that argument improperly conflates the Rule 24 intervention inquiry with the ultimate merits of the parties'

preemption dispute. Futility is not a recognized barrier to intervention in the Tenth Circuit, and the argument is circular because it presupposes the very merits question KanSAT seeks to litigate. Moreover, even if the challenged provision were preempted, that would call into question the constitutionality of 8 U.S.C § 1623(a) itself under the Tenth Amendment.

The United States' remaining arguments also do not preclude KanSAT's intervention. As a putative defendant that seeks only to defeat the relief the United States requests, KanSAT need not establish Article III standing. And even if it did, KanSAT possesses associational standing. Ultimately, none of the Parties' arguments can withstand scrutiny. KanSAT satisfies each element of intervention as of right, and permissive intervention is independently warranted.

## II. ARGUMENT[1]

### A. KanSAT Meets the Rule 24 Requirements for Intervention as of Right

To establish a right to intervention, a movant must show (1) timeliness, (2) an interest relating to the property or transaction which is the subject of the action, (3) that the interest may as a practical matter be impaired or impeded, and (4) that the interest is not adequately represented by the existing parties. *See United States v. Albert Inv. Co., Inc.*, 585 F.3d 1386, 1391 (10th Cir. 2009). Neither Party contests timeliness nor adequate representation. Thus, they concede those two elements.[2] That concession alone substantially narrows the issues before the Court. The remaining disputes concern only whether KanSAT possesses a protectable interest and whether the Court should prematurely resolve the merits under the guise of a futility analysis. The United States only

[1] The United States attempts to circumvent the page limits by incorporating content from another brief throughout its opposition. *See generally* Dkt. 18 (incorporating by reference its response to the Governor's motion). Such "incorporation by reference hinder[s] the Court's ability to review the merits of the substantive arguments and unfairly allow[s] plaintiff[] to avoid page limitations." *Series 17-03-615 v. Teva Pharms. USA, Inc.*, 785 F. Supp. 3d 904, 934 (D. Kan. 2025). KanSAT asks the Court to disregard those incorporations. *See Edelman Fin. Engines, LLC v. Mariner Wealth Advisors LLC*, No. 23-2515-HLT-BGS, 2025 WL 2374162, at *1 n.1 (D. Kan. Aug. 14, 2025) ("Many judges in this District have stricken briefs or disregarded the excess pages in this situation.").

[2] Kansas does not contest any of the Rule 24 elements, effectively conceding each.

presents a cursory challenge to KanSAT's interests. *See* Dkt. 18 at 13–14. But it largely repeats the same argument regarding standing that KanSAT addresses below. In addition, the United States also appears to posit that KanSAT's members do not have a legally protected interest in Kan. Stat. Ann. § 76-731a because the statute is unconstitutional. *See* Dkt. 18 at 14. That precise contention was squarely rejected in this jurisdiction long ago.

In *Day v. Sebelius*, 227 F.R.D. 668 (D. Kan. 2005), undocumented students similarly sought to intervene to defend Kan. Stat. Ann. § 76-731a against a preemption challenge. There, the plaintiff also argued that the intervenors did not have a legally protected interest because the statute was unconstitutional. *See id.* at 673. The court rejected that argument, deeming it "circular and thus wholly unpersuasive." *Id.* It further said that Kan. Stat. Ann. § 76-731a "is the law of the state of Kansas, and that law creates a right to in-state tuition for certain undocumented aliens. Unless *and* until it is ultimately decided that [Kan. Stat. Ann. § 76-731a] is unconstitutional, the law is in force and, as such, is sufficient to confer a legally protectable interest in the proposed intervenors." *Id.* at 673–74. The United States offers no reason to depart from that reasoning now, nor could it.

### B. KanSAT Does Not Need to Demonstrate Standing to Intervene as a Defendant

The United States erroneously contends that KanSAT's members—the very students who are the targets of its lawsuit—do not have standing to participate in this litigation. *See* Dkt. 18 at 7–12. Courts have rejected this exact argument in similar cases. For example, in *Day v. Sebelius*, the court held that "Rule 24 does not require a proposed intervenor to prove standing, but only that, as a practical matter, its interest could be impaired." 376 F.Supp.2d 1022, 1030 (D. Kan. 2005). In *United States of America v. Beshear et al.*, No. 3:25-cv-00028-GFVT (E.D. Ky. Nov. 19, 2025), the court held that "where the proposed intervenor seeks to intervene as a defendant, it need not independently demonstrate Article III standing." Dkt. 38 at 4 (citing *Va. House of Delegates v.*

*Bethune-Hill*, 587 U.S. 658, 663 (2019)). That applies here because KanSAT is not invoking the Court's jurisdiction. It is not proactively seeking any relief; it only seeks to preserve the status quo by defending an existing state law by denying the relief sought by the United States. *See* Dkt. 7-1 at 13–14; *see also Virginia v. Hicks*, 539 U.S. 113, 120 (2003) ("[I]t is the Commonwealth of Virginia, not Hicks, that has invoked the authority of the federal courts . . . .").

Further, courts have recognized that Rule 24 already incorporates a standing assessment, and that satisfying Rule 24(a) "will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000). The Tenth Circuit has signaled its agreement with this view. *See Kane Cnty. v. United States*, 928 F.3d 877, 888 n.14 (10th Cir. 2019) (citations omitted). Even if independent standing were required, KanSAT readily establishes it.

**a. KanSAT Maintains Associational Standing to Intervene**[3]

KanSAT establishes associational standing because its individual members would otherwise have standing to intervene in their own right, the interests it seeks to protect are germane to its purpose, and the participation of the individual members is not required. *See Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 756 (10th Cir. 2010) (citation omitted); *see also Sebelius*, 376 F.Supp.2d at 1030. KanSAT's members are the targets of the Parties' collusion and will directly bear the consequences of the lawsuit. As stated in its motion, KanSAT is comprised of students who are currently paying regular tuition rates based on the challenged provision. *See* Dkt. 7 at 5–6, 10. If this Court enjoins the challenged provision, KanSAT members will have to pay thousands of dollars more for their education or withdraw from their programs. *See id.* Either way they will face particularized injury.

[3] KanSAT is not seeking organizational standing, so it will not address arguments against that theory.

The United States faults KanSAT because its harm allegations are not in the form of affidavits, *see* Dkt. 18 at 10, but Rule 24 imposes no evidentiary requirement. To the contrary, motions to intervene are judged under a liberal pleading standard, and non-conclusory allegations are accepted as true. *See Lake Invs. Dev. Grp. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983). Any concerns regarding the factual circumstances of KanSAT's members may be addressed later in the proceedings, such as through *in camera* review of information as done in *Sebelius*, 376 F.Supp.2d at 1029. The United States also minimizes the injury by characterizing it as a "voluntary choice" to attend college. Dkt. 18 at 10–11. But voluntariness does not defeat standing. The question is whether an injury is concrete and particularized—not whether the person might have avoided it by abandoning the underlying activity altogether—especially when KanSAT's members have attended college for years and relied on a long-standing promise from Kansas that they would pay the same rate as their high school peers. *See Sebelius*, 227 F.R.D. at 673–74.

Finally, KanSAT, as an association that promotes and advocates for affordable higher education in Kansas, seeks to protect its members from increased tuition. *See* Dkt. 7 at 5. And participation of the individual members is not necessary in this case because individual circumstances do not alter or affect the central issue of preemption. Accordingly, KanSAT readily satisfies associational standing.

**b. KanSAT is a Proper Defendant**

Unincorporated associations may be sued in federal court—regardless of state law—to enforce "a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). The United States ignores subsection (b)(3)(A) and focuses on subsection (a)(1), which governs who may "prosecute" an action. *See* Dkt. 18 at 12. "That Rule, as its text displays, speaks to joinder of *plaintiffs,* not defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005)

(emphasis in original) (quoting Fed. R. Civ. P. 17(a)(1)); *see also Univ. of Texas at Austin v. Vratil*, 96 F.3d 1337, 1340 n.2 (10th Cir. 1996) ("The requirement of bringing suit in the name of the real party in interest properly applies only to plaintiffs, and differs from 'capacity to be sued' which is at issue here.") (internal citations omitted). KanSAT seeks to intervene not to prosecute this action but to defend it, asserting a defense grounded in the Tenth Amendment. *See* Dkt. 7-1 at 13–14; *see also Bond v. United States*, 564 U.S. 211, 220 (2011) ("[I]ndividual[s], in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines.").

To support its argument, the United States quotes certain case law while omitting the very next sentence that contradicts its position. For example, in *Hall v. Witteman*, after the quoted language provided by the United States, the court went on to say that "[t]he Federal Rules, however, allow voluntary unincorporated associations to be sued in their own name in federal court for the purpose of enforcing a federal right." No. 07-4128-SAC, 2008 WL 4490620 at *2 (D. Kan. Oct. 1, 2008) (citing Fed. R. Civ. P. 17(b)(3)(A)). Finally, the United States' reliance on language in *Crane Const. Co. v. Klaus Masonry*, is inapplicable because that case involved a lawsuit against an unincorporated association based on state contract claims. 71 F.Supp.2d 1138, 1139 (D. Kan. 1999) (citing to *Crane Const. Co. v. Klaus Masonry*, 71. F.Supp.2d 1125, 1126 (D. Kan. 1999)).

Accordingly, the United States provides no cognizable basis to deny KanSAT's intervention because it is an unincorporated association asserting federal-law defenses in a federal-court case.

### C. Futility is Not a Recognized Basis to Deny Intervention

The Parties' oppositions read as though this case arose in the Fifth Circuit. It did not. Tenth Circuit precedent controls, and neither Party cites a single Tenth Circuit decision recognizing "futility" as a ground to deny intervention. That is because none exists. To the contrary, courts in

this circuit have made clear that "[n]either subsection (a) nor (b) of Rule 24 takes into consideration the merits of the proposed claim or defense in intervention," and that any assessment of an intervenor's defenses "must focus" on whether they are "legally sufficient defenses," not whether the intervenor is likely to prevail on the merits of those defenses. *Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, No. CIV.A. 07-2418-DJW, 2008 WL 2066993, at *4 (D. Kan. May 14, 2008). The Parties therefore ask this Court to adopt an intervention rule that neither Rule 24 nor controlling Tenth Circuit authority recognizes.

Finding no support for their position in the Tenth Circuit, the Parties search for support in other circuits and rely on inapposite district court cases. For example, in *E.E.O.C. v. Century I, L.C.*, 142 F.R.D. 494, 496 (D. Kan. 1992), the court denied intervention because the proposed § 1981 and Civil Rights Act of 1991 claims were facially defective—the former precluded by Supreme Court precedent and the latter barred because the alleged injury predated the Act's effective date. In *Bradco*, the court *granted* intervention and held that the intervenor "alleged legally sufficient defenses such that allowing her to intervene would not be futile." 2008 WL 2066993 at *4. Although the court reasoned that it was proper to consider futility, it emphasized that, "in doing so, . . . its inquiry must focus on whether [the intervenor] ha[d] alleged legally sufficient defenses, and not whether she is likely to prevail on the merits of those defenses." *Id.* This distinction is significant because KanSAT seeks, among other things, to refute the United States' interpretations of Kan. Stat. Ann. § 76-731a and Section 1623(a), and present arguments regarding Tenth Amendment issues that Section 1623 presents. Those are legally sufficient defenses that have not been resolved by the Tenth Circuit.

The Parties devote a significant portion of their briefing to merits arguments, but that is improper in a response to a motion to intervene because it does not allow KanSAT to properly brief

the issues. Due to the limitations inherent in a reply brief, KanSAT is precluded from providing the full adversarial briefing that is necessary to develop the arguments before this Court decides the important issues presented to it. That is true even with the additional five pages. Indeed, the Parties devote dozens of pages to merits arguments while expecting KanSAT to respond within the confines of an intervention reply. Rule 24 does not contemplate resolving significant statutory and constitutional questions through such an abbreviated procedure.

The issues this case presents are being litigated across the country, with courts reaching opposing conclusions. *See, e.g., United States v. Walz*, No. 25-cv-2668, 2026 WL 851231 (D. Minn. Mar. 27, 2026); *United States v. Nebraska*, No. 8:26-cv-172, 2026 WL 1584862 (D. Neb. June 3, 2026). Even the Fifth Circuit decision the Parties heavily rely upon was a divided 2-1 ruling, drawing a dissent. *See United States v. Texas*, No. 25-10898, 2026 WL 1983151, at *20 (5th Cir. July 9, 2026) (Ramirez, J., dissenting) ("[Section] 1623(a) is not a valid preemption provision, so intervention was not futile because Appellants had a meritorious defense against the United States' express preemption claim."). Moreover, that very recent decision remains subject to possible further review. The existence of this ongoing disagreement underscores precisely why KanSAT's defenses cannot be fairly characterized as legally insufficient at the pleading stage.

Indeed, KanSAT seeks to present arguments, including those rooted in statutory construction principles, that demonstrate that Kan. Stat. Ann. § 76-731a complies with Section 1623(a). For example, despite deeming certain students to be residents, the statute does not extend regular tuition on the basis of residence. Instead, eligibility turns on non-residence criteria—principally attendance at and graduation from a Kansas high school. Other courts have adopted precisely this reading, which is more than sufficient to defeat any claim of futility. *See Martinez v. Regents of Univ. of Cal.*, 50 Cal. 4th 1277, 1291 (2010); *Walz*, 2026 WL 851231 at *909–10.

Assuming Kan. Stat. Ann. § 76-731a is prohibited by Section 1623(a), KanSAT intends to challenge Section 1623(a)'s constitutionality—namely, that it is not a valid preemption provision because it regulates state legislatures. Indeed, Section 1623(a) dictates what a state may or may not enact, effectively controlling its legislative authority in violation of the Tenth Amendment. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 474 (2018); *see also Printz v. United States*, 521 U.S. 898, 935 (1997) ("Congress cannot compel States to enact or enforce a federal regulatory program."). That reading, at a minimum, raises a serious constitutional question that counsels construing Section 1623(a) to avoid it—and confirms that KanSAT's defense is not futile.

Further, as the Kansas Governor's motion to intervene demonstrates, the Parties have colluded to circumvent Kansas' political process to strike down a duly enacted state law through a request for a consent judgment. Thus, this case presents an Article III issue that KanSAT will develop and present to the Court. KanSAT only describes these defenses to show what Rule 24 requires: that each is a legally sufficient, non-frivolous defense. *See Bradco*, 2008 WL 2066993, at *4. KanSAT will fully develop these arguments for merits briefing should the Court permit it to intervene. In short, each of KanSAT's defenses is legally sufficient and unsettled in this Circuit, which is all that Rule 24 requires. Supposed futility therefore provides no basis to deny intervention.

**D. Permissive Intervention is Warranted**

Only the United States presents any briefing regarding permissive intervention. And that briefing is a cursory argument that vaguely incorporates its other arguments and leans on its erroneous standing contention. *See* Dkt. 18 at 14–15. It does not address any of the conditions for permissive intervention. Thus, the Parties concede that KanSAT's motion is timely, its defenses share many questions of law and fact with the action, and that intervention will not unduly delay

or prejudice their rights. *See Forest Guardians v. U.S. Dep't of Interior*, No. CIV-02-1003 JB/WDS, 2004 WL 3426413, at *10 (D.N.M. Jan. 12, 2004). Accordingly, KanSAT respectfully requests that the Court grant it permissive intervention.

## III. CONCLUSION

For the foregoing reasons, KanSAT respectfully requests that the Court grant its motion to intervene as of right, or, in the alternative, permissive intervention.

Dated: July 29, 2026

Respectfully submitted,

/s/ Fernando Nuñez
Thomas A. Saenz (California Bar No. 159430)*
Fernando Nuñez (California Bar No. 327390)*
Luis L. Lozada (California Bar No. 344357)*
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
fnunez@maldef.org
llozada@maldef.org

*Attorneys for Kansas Students for Affordable Tuition*

**Pro Hac Vice*

/s/Jessica Swonger
Jessica Swonger #31215
Staff Attorney
**American Civil Liberties Union Foundation of Kansas**
P.O. Box 13048
Overland Park, KS 66282
Phone: (913) 314-2161
jswonger@aclukansas.org