IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**STATE OF KANSAS,**<br><br>**Defendant.** | **Case No. 5:26-cv-04066-HLT-BGS** |

**MEMORANDUM AND ORDER**

Plaintiff United States of America contends that K.S.A. 76-731a violates 8 U.S.C. § 1623(a) because the state statute extends eligibility for in-state tuition benefits to an unlawfully present alien while United States citizens and nationals from other states must pay higher tuition rates. Plaintiff argues that Kansas law must yield to federal law under the Supremacy Clause and asks the Court to permanently enjoin enforcement of K.S.A. 76-731a. Defendant State of Kansas agrees and jointly moves for entry of a consent judgment. Doc. 3. Kansas Governor Laura Kelly ("the Governor") and Kansas Students for Affordable Tuition ("KanSAT") move to intervene, and the Governor moves to dismiss. Docs. 4, 7, & 11.

Federal law preempts K.S.A. 76-731a if both of the following are true: (1) Kansas makes an unlawfully present alien eligible for a postsecondary education benefit on the basis of residence within Kansas; and (2) Kansas does not make United States citizens or nationals eligible for that same benefit without regard to their state residency. Both elements of this but-for test are met: K.S.A. 76-731a confers a postsecondary education benefit (e.g., in-state tuition) on an unlawfully present alien based on a state-defined residency checklist without making the same benefit generally available to United States citizens and nationals regardless of their residence. Federal

law therefore preempts K.S.A. 76-731a. The Court enters the consent judgment, denies the motions to intervene as futile, and denies the motion to dismiss as moot.[1]

## I. BACKGROUND

Federal immigration law includes 8 U.S.C. § 1623. This statute describes itself as imposing a "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits," and it states:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a) (emphasis added).

Plaintiff contends K.S.A. 76-731a violates § 1623 because it extends eligibility for in-state tuition benefits at Kansas postsecondary educational institutions to an unlawfully present alien while United States citizens and nationals from other states must pay higher tuition rates. K.S.A. 76-731a's heading is: "Certain persons without lawful immigration status deemed residents for purpose of tuition and fees." And the statute states:

> (a) Any individual who is enrolled or has been accepted for admission at a postsecondary educational institution as a postsecondary student shall be deemed to be a resident of Kansas for the purpose of tuition and fees for attendance at such postsecondary educational institution.

[1] KanSAT argues that it was unable to provide full adversarial briefing on the merits. Doc. 27 at 8. But KanSAT knew the joint motion for consent judgment was already pending at the time. And the Governor thereafter filed her motion to dismiss. Despite knowing K.S.A. 76-731a's validity was squarely before the Court via these motions, KanSAT chose not to join the Governor's motion to dismiss or file its own. In addition, both Plaintiff and Defendant addressed futility at length in their responses to KanSAT's motion to intervene. KanSAT asked to double the page limit for its reply brief, which the Court granted. Yet KanSAT still gave short shrift to the merits of Plaintiff's complaint in its reply. The issue is purely legal. KanSAT had adequate opportunities to address the merits and futility analysis and opted to focus instead on other matters. In any event, the Court addresses the three arguments (i.e., eligibility turns on non-residency criteria, Tenth Amendment and § 1623, and Article III case or controversy) put forward by KanSAT.

> (b) As used in this section:
>
> (1) "Postsecondary educational institution" has the meaning ascribed thereto in K.S.A. 74-3201b, and amendments thereto; and
>
> (2) "individual" means a person who (A) has attended an accredited Kansas high school for three or more years, (B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and (C) in the case of a person without lawful immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so or, in the case of a person with a legal, nonpermanent immigration status, has filed with the postsecondary educational institution an affidavit stating that such person has filed an application to begin the process for citizenship of the United States or will file such application as soon as such person is eligible to do so.
>
> (c) The provisions of this section shall not apply to any individual who:
>
> (1) Has a valid student visa; or
>
> (2) at the time of enrollment, is eligible to enroll in a public postsecondary educational institution located in another state upon payment of fees and tuition required of residents of such state.

K.S.A. 76-731a (emphasis added).

Plaintiff filed its complaint on June 24, 2026. Doc. 1. The complaint seeks to permanently enjoin Defendant from enforcing K.S.A. 76-731a. Plaintiff and Defendant promptly filed a joint motion for entry of a consent judgment wherein the parties agree that K.S.A. 76-731a "is preempted by 8 U.S.C. § 1623." Doc. 3 at 1. The parties ask the Court to "enter a final judgment declaring that [K.S.A. 76-731a] is preempted by 8 U.S.C. § 1623 and is therefore invalid" and to "enter a permanent injunction prohibiting the State of Kansas as well as its officers, agents, servants, employees, and attorneys, and those in active concert or participation with them, from enforcing [it]." *Id.* at 1-2.

The Governor filed a motion to intervene that night. Doc. 4. She asks to intervene "as a defendant in this case because the Kansas Attorney General fails to adequately represent [Defendant's] interests." *Id.* at 1. KanSAT filed a motion to intervene a few days later with an answer. Doc. 7. And the Governor filed her motion to dismiss on July 2, 2026. Doc. 11.

## II. ANALYSIS[2]

The substantive issue in this case is whether 8 U.S.C. § 1623 expressly preempts K.S.A. 76-731a.[3] Everyone agrees that the Kansas law is preempted if both of the following are true: (1) the Kansas law makes an unlawfully present alien eligible for a postsecondary education benefit on the basis of residence within Kansas; and (2) the Kansas law does not make United States citizens or nationals eligible for that same benefit without regard to residence. Determining whether K.S.A. 76-731a runs afoul of § 1623 is an exercise in statutory interpretation.

### A. On The Basis of Residence

The Court starts with K.S.A. 76-731a's text, which is where the parties focus their briefs on this issue. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997) (explaining that statutory interpretation begins with the language of the statute). Where statutory text is plain and

---

2 KanSAT challenges this Court's subject-matter jurisdiction. It contends that this case lacks a case or controversy because Plaintiff and Defendant agree. It is true that the Court lacks jurisdiction over suits without an Article III case or controversy. The Court has examined its own jurisdiction here and finds that this case does present a case or controversy. The Kansas statute is currently in effect, and Kansas public universities are arms of the state. *Brennan v. Univ. of Kan.*, 451 F.2d 1287, 1290 (10th Cir. 1971). There is a legitimate dispute over whether Kansas continues to enforce a law that is in conflict with federal law, and the federal government suffers injury by the law's enforcement. *See United States v. Windsor*, 570 U.S. 744, 756 (2013) ("The Government's position—agreeing with Windsor's legal contention but refusing to give it effect—meant that there was a justiciable controversy between the parties, despite what the claimant would find to be an inconsistency in that stance."). The Court has jurisdiction to resolve this dispute. *See United States v. Nebraska*, 2026 WL 1584862, at *20-*21 (D. Neb. 2026) (finding jurisdiction to enter consent decree under similar circumstances); *United States v. Ky. Council on Postsecondary Educ.*, 2026 WL 880597, at *3-*4 (E.D. Ky. 2026) (same).

3 The preemption doctrine stems from the Supremacy Clause of the United States Constitution and occurs in three contexts: conflict, express, and field. Here, § 1623 applies "[n]otwithstanding any other provision of law." 8 U.S.C. § 1623(a). This is an express preemption clause, so "we do not indulge any presumption against preemption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's preemptive intent." *United States v. Texas*, 181 F.4th 548, 559 (5th Cir. 2026) (citations and internal quotations omitted).

unambiguous, interpretation of the statute starts and ends there. *See id.*; *see also English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990) ("[W]hen Congress has made its intent known through explicit statutory language, the courts' task is an easy one.").

K.S.A. 76-731a(a) states:

> (a) Any individual who is enrolled or has been accepted for admission at a postsecondary educational institution as a postsecondary student shall be deemed to be a resident of Kansas for the purpose of tuition and fees for attendance at such postsecondary educational institution.

*Id.* (emphasis added). The statute then defines "individual" in the next subsection in a narrow and idiosyncratic manner:

> (b) As used in this section:
>
> …
>
> (2) "individual" means a person who (A) has attended an accredited Kansas high school for three or more years, (B) has either graduated from an accredited Kansas high school or has earned a general educational development (GED) certificate issued within Kansas, regardless of whether the person is or is not a citizen of the United States of America; and (C) in the case of a person without lawful immigration status, has filed with the postsecondary educational institution an affidavit stating that the person or the person's parents have filed an application to legalize such person's immigration status, or such person will file such an application as soon as such person is eligible to do so or, in the case of a person with a legal, nonpermanent immigration status, has filed with the postsecondary educational institution an affidavit stating that such person has filed an application to begin the process for citizenship of the United States or will file such application as soon as such person is eligible to do so.

*Id.* at 76-731a(b)(2) (emphasis added).

Read together, the plain language is that an "individual" is "deemed to be a resident" when certain criteria are satisfied, and then a benefit is conferred based on that legal conclusion. It does not matter that the statute defines "individual" rather than "resident" because the two work together. Instead, the key is that the legal conclusion one is a "resident" is not based on a single

fact. *See Vlandis v. Kline*, 412 U.S. 441 (1973) (recognizing that states are free to define "resident" as they see fit for tuition purposes so long as they comport with due process limits). Instead, the statute concludes one is a resident because the person satisfies a set of underlying facts (i.e., a checklist or criteria) that the State has decided is sufficient to prove the category.[4]

The Kansas statutory language does not leave room for confusion. It is straightforward: the only way to receive the postsecondary education benefit is by being a resident. Kansas lists criteria for one to be a resident. These criteria are not tied to living in a particular locality. Instead, the criteria relate to educational requirements. Had Kansas wanted a resident-free pathway to this in-state tuition benefit the statute could have read: "[a]ny individual who is enrolled or has been accepted for admission at a postsecondary educational institution as a postsecondary student shall pay resident tuition rates based on educational attainment." But it does not. Instead, the statute uses the deeming clause as the operative legal mechanism connecting the underlying facts to the benefit. *See United States v. Illinois*, 2026 WL 2137256, at *10 (S.D. Ill. 2026). The statutory pathway runs through the resident-status conclusion.[5] Stated differently, there is no way to get the benefit unless one satisfies the criteria and is, therefore, a resident.

The Governor resists the conclusion that certain unlawfully present aliens are eligible for the education benefit because of their status as Kansas residents. She gives three hypothetical situations to show that education, not residence, drives eligibility. But her hypotheticals largely sidestep the plain and unambiguous text of K.S.A. 76-731a and ask the Court to apply a definition

---

4 Other courts have recognized that the term "resident" or "residence" is not a term of "fixed legal definition." *See, e.g.*, *Kristensen v. McGrath*, 179 F.2d 796, 801 (D.C. Cir. 1949), aff'd, 340 U.S. 162 (1950). Rather, it has many meanings in the law determined by statutory context. *Kelm v. Carlson*, 473 F.2d 1267, 1271 (6th Cir. 1973).

5 Defendant puts it this way: "Kansas law classifies the illegal aliens in question as Kansas residents. And that legal residency classification entitles them to pay resident tuition rates. They therefore obtain resident tuition rates on the basis of residency." Doc. 20 at 3. Or, as Plaintiff explains, "Section 1623 is agnostic about how a state defines residence. Kansas's choice to define residence in terms of graduation from a Kansas high school rather than in terms of domicile makes no practical difference under Section 1623(a) . . . ." Doc. 23 at 3.

of "resident" that differs from K.S.A. 76-731a. The Governor, for example, offers this hypothetical:

> A student living in Kansas City, Missouri, could attend a private, but accredited Kansas high school for three years, graduate from that high school, apply to a Kansas postsecondary educational institution, and complete the required affidavit. If the student is undocumented and has no student visa, that student, although a resident of Missouri, would not be eligible to enroll in any Missouri, or other, public post-secondary educational institution because Missouri has no statute comparable to K.S.A. 76-731a.

Doc. 12 at 10. In this hypothetical, the student lives in Missouri. Yet K.S.A. 76-731a deems the student to be a Kansas resident and confers the education benefit (in-state tuition and fees) because of that deeming. The benefit is triggered by the legal conclusion that the student is a Kansas resident. The statute has chosen a set of facts (e.g., school attendance) that diverges from living in a particular locality, but the statute still pays the benefit because the student meets the set criteria and is thus a Kansas resident. The Governor cannot escape § 1623's "on the basis of residence" language by pointing to educational requirements when the state statute nevertheless uses those criteria to deem someone a resident and confer a benefit. The only way to escape that phrase is by not using a residency-based conferral mechanism at all. And K.S.A. 76-731a does the exact opposite.[6]

In sum, the Court finds that K.S.A. 76-731a makes an unlawfully present alien eligible for a postsecondary education benefit (e.g., in-state tuition) on the basis of residence within Kansas.

---

[6] The parties make much of the "deemed" language. But the outcome remains that entitlement to the benefit flows from one's status as a Kansas resident. And the use of this phrase appears consistent with the broader statutory scheme because it resolves any administrative residency determination that would otherwise need to be made. *See* K.S.A. 76-729(a) and K.S.A. 76-730.

A person who satisfies the criteria set forth in subsection (b)(2) is a resident as a matter of Kansas law, which is the legal determination that triggers the benefit.[7]

**B. Eligibility Without Regard to Residence**

The second requirement is also met. Under this prong, Kansas must make United States citizens or nationals eligible for the same benefit without regard to residence. The Governor highlights that some nonresident citizens can access in-state tuition through various mechanisms such as a fellow's discretionary award, armed-forces members, and reciprocity agreements. She focuses on the article "a" before "citizen or national" in § 1623 (i.e., "unless a citizen or national of the United States") to argue that only one example is necessary to avoid preemption. This argument fails for several reasons.

This requirement is couched in terms of a categorical prohibition: an unlawfully present alien shall not be eligible for the benefit "unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). In this context, the reference to "a citizen or national" naturally reads to include the plural. *See Texas*, 181 F.4th at 558; *Illinois*, 2026 WL 2137256, at *11. This natural reading is consistent with the Dictionary Act, which says that "words importing the singular include and apply to several persons, parties, or things," unless indicated otherwise by context. 1 U.S.C. § 1; *Texas*, 181 F.4th at 558-59.

Were the Court to accept that a single example (or even a small range of examples) is all that is required, the reading would eviscerate the prohibition, rendering it essentially toothless.

---

[7] The parties argue whether K.S.A. 76-731a creates a "proxy for residency." This is a red herring. Kansas specifically defines who is a resident for the purpose of the education benefit (e.g., in-state tuition and fees) to attend a Kansas postsecondary educational institution. No proxy is needed. Kansas lists requirements. If they are met, the individual is deemed to be a resident unless an exception applies. The Court need not consider the question of proxy because the plain language of K.S.A. 76-731a dictates the answer in this case.

Stated differently, such a reading would render 8 U.S.C. § 1623(a)'s "unless" clause surplusage. *See Texas*, 181 F.4th at 558-59; *Illinois*, 2026 WL 2137256, at *11. The "unless" clause of § 1623(a) states a condition precedent required before states can grant a residence-based postsecondary education benefit to an unlawfully present alien. Any other reading deprives the clause of meaningful impact. As the Fifth Circuit noted in rejecting a similar challenge, "if some U.S. citizens or nationals, regardless of residency, are ineligible for reduced in-state tuition rates, then all illegal aliens must be ineligible to receive the same benefit based on residency." *Texas*, 181 F.4th at 559.

The central problem here is that there are United States citizens and nationals who pay full nonresident tuition when an unlawfully present alien is eligible to pay a lower rate on the basis of residence. Stated differently, a United States citizen who is not a fellow, not in the military, and not covered by a reciprocity agreement (and who does not satisfy the residency requirements of K.S.A. 76-731a or otherwise count as a Kansas resident for purposes of tuition and fees) still pays full nonresident tuition while an unlawfully present alien who attended and graduated from a Kansas high school (and otherwise satisfies the criteria in K.S.A. 76-731a(b)(2)) pays the resident tuition rate. This is what 8 U.S.C. § 1623(a) prohibits.[8]

**C. Cases in Other Jurisdictions**

The Court is aware this issue is percolating through the court system. The Court's conclusion is consistent with outcomes reached by other courts. These cases are similar but not

[8] KanSAT raises a Tenth Amendment defense and alleges that Plaintiff asks the Court to commandeer state regulatory resources or allow the federal government to dictate state policy. Doc. 7-1 at 13. KanSAT argues that even if § 1623 prohibits K.S.A. 76-731a, § 1623 is unconstitutional because it regulates state legislatures. Doc. 27 at 9. But the plain language of § 1623 regulates private actors, not states. It provides that an alien who is not lawfully present in the United States shall not be eligible on the basis of residence for certain benefits. "Section 1623(a) is ordinary preemption legislation that 'denies permission,' not a command to, or direct regulation of, the states." *Texas*, 181 F.4th at 560 (citation omitted). It does not run afoul of the Tenth Amendment.

identical. *See, e.g.*, *Texas*, 181 F.4th 548; *Illinois*, 2026 WL 2137256; *Nebraska*, 2026 WL 1584862; *Ky. Council on Postsecondary Educ.*, 2026 WL 880597; *United States v. Oklahoma*, 2025 WL 2815662, at *1 (E.D. Okla. 2025), *report and recommendation adopted*, 2025 WL 2815660 (E.D. Okla. 2025). These cases examine the statutes of their own states, which do not mirror Kansas's statute. But much of the analysis is helpful though not binding.

The Governor points to a recent District of Minnesota case that she contends is on point. *United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026). The Court disagrees. *Walz* rejected a preemption argument to Minnesota's law offering in-state tuition to students without lawful immigration status. But the Minnesota statute lacks an express residency-deeming provision. This distinguishes Minnesota law from K.S.A. 76-731a and renders *Walz* largely irrelevant to the issue before the Court. Ultimately, like the other cases, the Kansas statute rises and falls on its own language.

## III. CONCLUSION

Both elements of the but-for test that all parties agree governs the preemption analysis are met. This means that K.S.A. 76-731a is preempted because it confers a postsecondary education benefit on an unlawfully present alien based on a state-defined residency conclusion without making that same benefit generally available to United States citizens and nationals regardless of their residence.[9]

---

[9] The Governor alternatively argues K.S.A. 76-731a is not wholly preempted because it also purports to provide a postsecondary education benefit to persons with legal, nonpermanent immigrant status if they file certain documentation. Even if the Governor is correct about the ability to change one's resident status, she has not addressed severability law or how the remainder of K.S.A. 76-731a would be complete in itself and capable of being executed in accord with legislative intent absent the majority of the statutory language. *See generally Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684-85 (1987); *see also Institutional S'holder Servs. Inc. v. Kobach*, 2026 WL 1815236, at *9 (D. Kan. 2026) (noting that the defendant did not meaningfully argue severance and did not propose what language would be cut or how the severed statute would function). The content of K.S.A. 76-731a would no longer preserve the statute's apparent legislative intent if the only remaining portion of the statute deals only with legal nonpermanent immigrants. The Court denies this request.

This outcome renders the motions to intervene of the Governor and KanSAT futile, and the Court denies them as such. The Court recognizes that the Tenth Circuit has not directly addressed whether a court should consider futility when deciding whether to allow plaintiff-side or defense-side intervention. KanSAT makes much of this hole in Tenth Circuit precedent. Doc. 27 at 6-9. But other circuits have considered and approved this approach. And proceeding with a futility analysis before a Fed. R. Civ. P. 24 analysis seems most in line with Fed. R. Civ. P. 1. *See, e.g.*, *Texas*, 181 F.4th at 553-54, n.8 (applying futility analysis and citing other Circuits that have approved doing so); *see also United States v. Capps*, 2024 WL 4679221, at *9 n.44 (D. Kan. 2024); 7C Charles Alan Wright et al., Federal Practice and Procedure § 1914, at 523-24 (3d ed. 2007) ("The proposed pleading must state a good claim for relief or a good defense."). Futility can also reasonably be considered part of the inquiry under Rule 24(a), i.e. that the moving party must claim "an interest relating to the property or transaction that is the subject of the action." Courts have recognized that this element requires the proposed intervenor to allege a legally sufficient claim (or, in this case, defense). *See Educ. Credit Mgmt. Corp. v. Bradco, Inc.*, 2008 WL 2066993, at *4 (D. Kan. 2008) (citing cases from the District of Columbia Circuit and the District of Columbia).

Intervention is futile because 8 U.S.C. § 1623 preempts K.S.A. 76-731a, and judgment in favor of Plaintiff is warranted for the reasons stated herein. The Court therefore need not even reach analysis under Fed. R. Civ. P. 24(a) or (b). *See Texas*, 181 F.4th at 554 (addressing futility analysis as a threshold matter). And because the Governor is denied leave to intervene, her motion to dismiss is denied as moot. She is not a party in the case.

THE COURT THEREFORE ORDERS that the joint motion for judgment (Doc. 3) is GRANTED. The Court will enter judgment by separate order and close the case.

THE COURT FURTHER ORDERS that the motions to intervene (Docs. 4, 7) are DENIED AS FUTILE and the motion to dismiss (Doc. 11) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: September 9, 2026

/s/ Holly L. Teeter
HOLLY L. TEETER
UNITED STATES DISTRICT JUDGE